## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

In Re: Kathleen Anne Dudley,                                    Case No.: 24-10034-j11
     Debtor.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Disciplinary Board of the Supreme Court**
**of the State of New Mexico,**
     **Petitioner/Plaintiff,**                          **Adversary No. 24-01023-j**

**v.**

                                                     **Demand for Trial-by-Jury**

**Charles Edward Lincoln, III,**
     **Respondent/Defendant.**

### DEFENDANT'S MOTION TO WITHDRAW THE REFERENCE UNDER
### 28 U.S.C. §157(d) and Rule 5011 of the
### FEDERAL RULES OF BANKRUPTCY PROCEDURE

Pursuant to Section 157(d) of Title 38 of the United States Code ("US Code") and Rule 5011 of the Federal Rules of Bankruptcy Procedure, Defendant Charles Edward Lincoln, III, by and through his undersigned counsel, moves the United States District Court for the District of New Mexico for an order withdrawing the reference to the Bankruptcy Court of Adversary Proceeding No. 24-01023-j in this Petition brought against him by the NM Disciplinary Board.

Under 28 U.S.C.A. § 157(d), mandates that the district court withdraw a proceeding if resolution of the proceeding requires consideration of both Title 11 (the Bankruptcy Code) and other laws of the United States regulating organizations or activities affecting interstate commerce. *Vieira v. AGM, II, LLC*, 366 B.R. 532 (USDC, D. South Carolina, 2007). Withdrawal of Reference ensures that Article III judges decide complex questions of federal law. *In re Ames Dept. Stores Inc*., 512 B.R. 736 (USDC, S.D. New York, 2014). Defendant's Motion to Withdraw must be decided before Plaintiff's Motion to Remand, so that all questions can be presented to a

1

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C., 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), SEC v. Jarkesy, 144 S.Ct. 2117 (June 27, 2024), and Loper Bright Enterprises v. Raimundo, 603 U.S.\_\_\_\_\_, 144 S.Ct. 2244 (June 28, 2024) in application and construction of 11 U.S.C. §110*

United States District Court prior to any substantive adjudication. Both cases 24-01011-j and 24-01023-j arise from Defendant's interactions with Kathleen Anne Dudley in U.S. Bankruptcy Court No. 24-10031-j11 and raise nearly identical claims. To these effectively identical lawsuits, Defendant pleads a set of identical defenses and claims, except for the questions of removal.

In support of his Motion to Withdraw the Reference, prior to adjudicating either the Petitioner/Plaintiff Board's Motion for Remand [Doc 5] filed 08/20/2024 with [Doc 12] Brief in Support filed 08/19/2024 (in this case 24-01023-j), or the Defendant's own Motion to Consolidate Adversary Complaint with (nearly identical (Removed State Court Petition) filed 08/20/24 as Doc 24 in the first filed Case 24-01011-j, Defendant respectfully states as follows.

## AN ARTICLE III COURT CAN AND SHOULD ADJUDICATE THE CONSTITUTIONAL AND CIVIL RIGHTS DIMENSIONS OF THIS CASE

1.      As Christine E. Long, Deputy Disciplinary Counsel for the Disciplinary Board of the Supreme Court has quite eloquently and forcefully stated just recently, in her Document 12, at 5-6, filed 09/19/24 this Court lacks the Constitutional ability to adjudicate the two related cases brought before it, first by US Trustee Lashinsky as Plaintiff (Case No. 24-01011-j), and this second by Defendant Charles Edward Lincoln, III's removal (Case No. 24-01023-j):

> 28 U.S.C. §1443 permits removal of certain civil rights cases to "district courts of the United States." As described below in this pleading, this right of removal is limited and confined to cases pertaining to racial equality. *Georgia v. Rachel*, 384 U.S. 780, 792 (1966). Respondent has not asserted deprivation of any rights of racial equality.....removal of a case involving civil rights to the Bankruptcy Court would still be inappropriate based on the constitutional limitations on the jurisdiction of bankruptcy courts expressed by the United States Supreme Court in *Stern v. Marshall*, 564 U.S. 462 (2011).
>
> In *Stern*, the Supreme Court held that even where a case was considered a core proceeding under 28 U.S.C. §157(b), the Bankruptcy Court's exercise of jurisdiction over state law matters unconstitutionally infringed on the authority

**2**

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C., 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), SEC v. Jarkesy, 144 S.Ct. 2117 (June 27, 2024), and Loper Bright Enterprises v. Raimundo, 603 U.S.____, 144 S.Ct. 2244 (June 28, 2024) in application and construction of 11 U.S.C. §110*

vested in Article III courts by the Constitution. *Stern*, 564 U.S. at 482. Article III of the Constitution vests the judicial power of the United States in a judiciary which is distinct from the legislative and executive branches. This separation of powers protects each branch as well as individuals. *Id.* at 483. Part of this protection stems from the insulation of Article III judges through the tenure and compensation guaranteed from their offices. *Id.* at 483-484. Congress cannot withdraw from the jurisdiction of Article III courts cases which from their nature were subject to suit "at the common law, or in equity, or admiralty." *Stern*, 564 U.S. at 484, *quoting* **Murray's Lesee v. Hoboken Land & Improvement Co.**, 18 How 272, 284 (1856). "The Constitution assigns that job - resolution of the 'mundane as well as the glamorous, matters of common law and statute as well as constitutional law, issues of fact as well as issues of law' - to the Judiciary." *Stern*, 564 U.S. at 484, *quoting* **Northern Pipeline Constr. Co. v. Marathon Pipeline Co.**, 458 U.S. 50, 86-87 (1982) (plurality opinion, n. 39).

Both *Stern* and *Northern Pipeline* provide that Congress cannot grant jurisdiction to bankruptcy judges to hear state law claims because they lack *the tenure and salary guarantees provided to Article III judges by the Constitution. Stern, 564 U.S. at 485; Northern Pipeline, 458 U.S. at 52, 87.* Just as Congress could not have withdrawn the state claims in *Stern* or **Northern Pipeline** from the jurisdiction of Article III courts, Congress' action in 28 U.S.C. §1443 cannot be read to allow removal of claims to bankruptcy courts because such removal would unconstitutionally infringe on authority granted to Article III courts under the Constitution. While the undersigned has been unable to find reported decisions to this effect (possibly because of the otherwise narrow application of§ 1443), this conclusion follows directly from the Court's decision in *Stern*. As in *Stern*, the disciplinary proceeding against Respondent is "a state law action independent of the federal bankruptcy law and not necessarily resolved by a ruling ... in bankruptcy." *See Stern*, 564 U.S. at 487.

Nor does this case fall within the narrow "public rights" exception to bankruptcy jurisdiction described in *Stern*. The public rights exception is limited "to cases in which the claim at issue derives from a federal regulatory scheme, or in which resolution of the claim by an expert government agency is deemed essential to a limited regulatory objective within the agency's discretion." *Id.* at 490. The public rights exception is inapplicable to removal of this state attorney disciplinary matter, with no federal regulatory scheme or expert governmental agency involved.

A facial reading of 28 U.S.C. §1443 permits removal to "district courts." Expanding the plain language of the statute to include removal to bankruptcy courts as well would make the removal statute unconstitutional because it would violate the integrity of Article III courts, and the separation of powers established by the Constitution. *As a result, even if Respondent had asserted the deprivation of racial equality rights, the Constitution still would not permit removal to bankruptcy court under 28 U.S.C. §1443.*

**3**

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C., 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), SEC v. Jarkesy, 144 S.Ct. 2117 (June 27, 2024), and Loper Bright Enterprises v. Raimundo, 603 U.S.\_\_\_\_, 144 S.Ct. 2244 (June 28, 2024) in application and construction of 11 U.S.C. §110*

Brief in Support of Objection to Removal, USBK, DNM, Case 24-01023-j, Doc 12, Filed 09/19/24 Entered 09/19/24 08:50:23 Pages 4-6 (***bold and italic emphases added here***).

## <u>THE COLOR-BLIND LANGUAGE of the CIVIL RIGHTS REMOVAL STATUTE PRECLUDES ANY RACE-BASED CONSTRUCTION and MUST APPLY HERE</u>

**2.**    The only even remotely material differences between the Complaint in Case 24-01011-j and the Petition in Case 24-01023-j is that the former was filed by the US Trustee on April 3, 2024, in this Bankruptcy Court, and the latter was filed, citing the former, as a "Copycat" Petition, on April 8, 2024, by the Disciplinary Board of the Supreme Court of New Mexico for adjudication before the Disciplinary Board of the Supreme Court of New Mexico, even though final decision would nominally be issued in the name of the Supreme Court of New Mexico.

**3.**    The primary difference between Plaintiff Ilene J. Lashinsky in 24-01011-j and the Disciplinary Board is that Ilene J. Lashinsky is a quasi-judicial administrative officer in Bankruptcy Court while the Disciplinary Board is a quasi-judicial group of administrative officers under the aegis of the New Mexico Supreme Court.

**4.**    Most, if not all, of the reasons which Deputy Disciplinary Counsel Christine E. Long raises against adjudication in bankruptcy court, in favor of the U.S. District Court, can also be raised against adjudication by the Disciplinary Board of the Supreme Court of the State of New Mexico.

**5.**    The major difference between the quasi-judicial administrative proceedings in these two courts is that the U.S. Bankruptcy Court is actually governed by an "accelerated and adjusted" set of rules based on the Federal Rules of Civil Procedure, in which a full range of defenses and counterclaims may be brought and decided, whereas proceedings by the Disciplinary Board before the Disciplinary Board do not allow for discovery, affirmative defenses, or counterclaims.

**4**

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C.,* <u>574 U.S. 494</u>, <u>135 S.Ct. 1101</u>, <u>191 L.Ed.2d 35</u> (2015), *SEC v. Jarkesy,* <u>144 S.Ct. 2117</u> (June 27, 2024), *and Loper Bright Enterprises v. Raimundo,* 603 U.S.\_\_\_\_, <u>144 S.Ct. 2244</u> (June 28, 2024) *in application and construction of* <u>11 U.S.C. §110</u>

6.      In short the Disciplinary Board's prosecution of Defendant before the Disciplinary Board will be severely deficient in the safeguards afforded to his constitutional rights or due process of law in any way, shape, or form, in any manner or sense.

7.      In her September 12 [Doc 12] brief for the Disciplinary Board in removed case 24-01023-j, which and legally treats precisely the same common nucleus of operative facts and law as Ms. Lashinsky's case, Ms. Christine E. Long recites the tired and worn-out racial artifice which the Supreme Court created 58 years ago, in 1966, in the middle of the Civil Right movement and Vietnam War protests, to avoid a flood of removal cases in **Georgia v. Rachel** (supra) and **Greenwood v. Peacock**, 384 U.S. 808.

8.      This Warren Court era construction of the Civil Rights Removal is utterly inconsistent with modern federal law concerning race-based statutory schemes, even those called "benign."

9.      Today's Supreme court has a vastly different view in regard to race having rejected affirmative action and raced based preferences.  In short, incongruous with the race-based view promoted by Lashinsky.

10.      Consistent with the Supreme Court's present view, upon withdrawal of the order of reference in this case, Defendant Charles Edward Lincoln will ask this court to plant the seed so that this "nation, conceived in liberty and dedicated to the proposition that all men are created equal…..shall have a new birth of freedom" meaning that to the degree that 28 U.S.C. §1443 Civil Rights Removal is limited to a race based construction those interpretations of the statute are overruled.

5

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C., 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), SEC v. Jarkesy, 144 S.Ct. 2117 (June 27, 2024), and Loper Bright Enterprises v. Raimundo, 603 U.S.\_\_\_\_\_, 144 S.Ct. 2244 (June 28, 2024) in application and construction of 11 U.S.C. §110*

11.     The treatment of 28 U.S.C. §1443 as an affirmative action program, in which race-based "positive discrimination" is allowed to rectify past wrongs, is utterly inconsistent with modern Supreme Court jurisprudence.  This is a job for an Article III Court, not Article I Bankruptcy.

## "RACIALLY POSITIVE" DISCRIMINATION BEEN RESTRICTED OR OVERRULED SINCE *BAKKE v. REGENTS OF THE UNIVERSITY OF CALIFORNIA* 438 U.S. 265 (1978)

12.     The degree to which "racially positive" discrimination or "affirmative action" has been restricted or overruled since ***Bakke*** in 1978 (438 U.S. 265, 98 S.Ct. 2733, June 23, 1978) developed, expanded, and then further gained power through several key Supreme Court cases which have consistently applied strict scrutiny to evaluate such programs. In recent decisions, the Supreme Court has reinforced that even purportedly benign or beneficial racial classifications must satisfy strict scrutiny to ensure they do not violate constitutional principles.

13.     The old 1966 Supreme Court decisions on this point are simply out of joint with time.

14.     **Application of Strict Scrutiny**: The Supreme Court has clarified that all affirmative action programs employing racial classifications must undergo strict scrutiny, regardless of their intentions. This progressive development of a "race-neutral" mandate for all laws and governmental policies manifested in cases including but not limited to ***Grutter v. Bollinger***, 539 U.S. 306, 123 S.Ct. 2325 (June 23, 2003), ***Fisher v. University of Texas at Austin***, 570 297, 133 S.Ct. 2411 (June 24, 2013), ***Fisher v. University of Texas at Austin***, 579 U.S. 365, 136 S.Ct. 2198 (June 23, 2016), and ***Students for Fair Admissions, Inc. v. President and Fellows of Harvard College***, 600 U.S. 181, 143 S.Ct. 2141 (June 29, 2023) where the court required that such programs be narrowly tailored to achieve the educational benefits of diversity without permanent reliance on racial classifications.

6

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C., 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), SEC v. Jarkesy, 144 S.Ct. 2117 (June 27, 2024), and Loper Bright Enterprises v. Raimundo, 603 U.S._____, 144 S.Ct. 2244 (June 28, 2024) in application and construction of 11 U.S.C. §110*

15.     Deputy Disciplinary Counsel Long supports "permanent reliance on racial classifications" to opposed removal of proceedings which afford no guarantee of equal protection whatsoever.

**16.     Race-based "positive discrimination" or "affirmative action" under <u>28 U.S.C. §1443</u> is anything but "narrowly tailored."**   The current construction of race-based removal is broad, heavy handed, and categorical, exactly the way Christine E. Long and the Disciplinary Board of the Supreme Court of New Mexico ask this Court to apply it: "ask no questions about other class-based inequality---it's not race, so be gone" (back to State Court for your summary execution).

17.     **Narrow Tailoring and Racial Considerations**: The Court has emphasized that affirmative action programs must demonstrate a compelling interest and be narrowly tailored to achieve that interest. They should not rely indefinitely on racial classifications, and there should be a clear endpoint to such considerations. The necessity to achieve diversity should be balanced against the potential perpetuity of racial relevance in admissions.

18.     **Challenge to Benign Racial Classifications**: The Supreme Court has been critical of arguments suggesting that some racial classifications are benign and thus should be exempt from strict scrutiny.   ***Regents of University of California v. Bakke***, <u>438 U.S. 265</u> (*supra*), ***Fisher v. University of Texas at Austin***, <u>570 U.S. 297</u> (also *supra*).

19.     Charles Edward Lincoln III denies that the discriminatory racial classification system for securing equal protection, built in 1966 into the ***Georgia v. Rachel*** and ***Greenwood v. Peacock*** applications and construction of <u>28 U.S.C. §1443</u>, are in any manner beneficial, but even if they were, the Supreme Court has held that all racial classifications, even those purportedly beneficial,

7

***Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C.***, <u>574 U.S. 494</u>, <u>135 S.Ct. 1101</u>, <u>191 L.Ed.2d 35</u> (2015), ***SEC v. Jarkesy***, <u>144 S.Ct. 2117</u> (June 27, 2024), ***and Loper Bright Enterprises v. Raimundo***, 603 U.S._____, <u>144 S.Ct. 2244</u> (June 28, 2024) ***in application and construction of <u>11 U.S.C. §110</u>***

must face the highest level of judicial review to ensure they do not perpetuate racial divisions or discrimination:

> '[B]enign' carries with it no independent meaning, but reflects only acceptance of the current generation's conclusion that a politically acceptable burden, imposed on particular citizens on the basis of race, is reasonable." See ***Metro Broadcasting***, 497 U.S., at 610, 110 S.Ct. 2997 (O'Connor, J., dissenting). It is for this reason that the Court has repeatedly held that strict scrutiny applies to *all* racial classifications, regardless of whether the government has benevolent motives. See, *e.g., Johnson,* 543 U.S., at 505, 125 S.Ct. 1141 ("We have insisted on strict scrutiny in every context, even for so-called 'benign' racial classifications"); ***Adarand***, 515 U.S., at 227, 115 S.Ct. 2097 ("[A]ll racial classifications, imposed by whatever federal, state, or local governmental actor, must be analyzed by a reviewing court under strict scrutiny"); ***J.A. Croson***, 488 U.S., at 500, 109 S.Ct. 706 ("Racial classifications are suspect, and that means that simple legislative assurances of good intention cannot suffice").

***Fisher v. Univ. of Texas at Austin***, 570 U.S. 297, 330, 133 S. Ct. 2411, 2430, 186 L. Ed. 2d 474 (2013).

20.     ONLY an Article III District Court Judge has the constitutional power to decide whether systemic race-based civil rights removal conforms to strict scrutiny and now, determine that it does not, even though it was invented NOT by Congress but by the Supreme Court out of a different time-setting.

21.     The denial of the right to Civil Rights Removal in this case would not be "benign" or harmless in any event: it would be devastating and brutal and expose the Defendant to the near complete denial of due process and equal protection safeguards inherent in a "professional, monopoly-based industry-insider controlled only quasi-judicial proceeding."

22.     **Recent Supreme Court Decisions Limit "Rational Basis" Race-Discrimination, including Civil Rights Removal**: The decision in ***Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*** (*supra*) applied strict scrutiny to Harvard's admissions policies

8

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C.,* 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), *SEC v. Jarkesy,* 144 S.Ct. 2117 (June 27, 2024), *and Loper Bright Enterprises v. Raimundo,* 603 U.S.____, 144 S.Ct. 2244 (June 28, 2024) *in application and construction of* 11 U.S.C. §110

and found them wanting, signifying a possible shift towards more stringent evaluation of race-based admissions policies under constitutional standards. This decision reversed a lower court's ruling that had previously upheld such policies.

23.    In summary, since 1978, the Supreme Court has increasingly required that any federal statutory scheme involving racial classifications, even those labeled as "benign" or beneficial to minorities, must satisfy strict scrutiny. This involves demonstrating a compelling governmental interest and ensuring that the racial classification is necessary and narrowly tailored to achieve that interest.  ***Fisher v. University of Texas at Austin***, 758 F.3d 633 (5th Circuit, 2014).

**24.    Furthermore, Defendant Charles Edward Lincoln, III, submits that 42 U.S.C. §2000d expressly outlawed race-based discrimination in civil rights removal by its language, "No person in the United States shall, on the grounds of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."**

**25.    All actions taken in Federal Court are federally funded and thus receive "Federal financial assistance"---the nature and duration of such assistance is part of the very definition of and distinction between Article III Constitutional Judges and Article I Statutory Judges such as preside in Bankruptcy Court.**

**26.    On this point, in short, Deputy Disciplinary Counsel Christine E. Long and the undersigned Defense Counsel for Charles Edward Lincoln, III, stand in total agreement.**

**27.    Among the cases which affirm application of strict scrutiny even to federal programs is *Adarand Constructors, Inc. v. Peña,* 515 U.S. 200, 224, 115 S.Ct. 2097, 132 L.Ed.2d 158**

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C.,* 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), *SEC v. Jarkesy,* 144 S.Ct. 2117 (June 27, 2024), *and Loper Bright Enterprises v. Raimundo,* 603 U.S._____, 144 S.Ct. 2244 (June 28, 2024) *in application and construction of* 11 U.S.C. §110

**(1995) ("[A]ny person, of whatever race, has the right to demand that any governmental actor subject to the Constitution justify any racial classification subjecting that person to unequal treatment under the strictest judicial scrutiny"); see *Richmond v. J.A. Croson Co.,* 488 U.S. 469, 493–494, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989); see *id.,* at 519, 109 S.Ct. 706 (KENNEDY, J., concurring in part and concurring in judgment) ("[A]ny racial preference must face the most rigorous scrutiny by the courts") and *Grutter v. Bollinger*, 539 U.S. 306, 388, 123 S. Ct. 2325, 2370, 156 L. Ed. 2d 304 (2003)**

### CIVIL RIGHTS REMOVAL BY THE WORDS OF THE STATUTE LETTER IS NEITHER RACIALLY DETERMINED NOR TIME-LIMITED

**28.**    Upon withdrawal of the order of reference, Defendant Charles Edward Lincoln, III, will ask the United States District Court to declare and adjudge that the plain language of 28 U.S.C. §1443 **excludes** any consideration of race or systemic racial bias whatsoever.

**29.**    Properly analyzed, fully considered, there is no doubt that civil rights removal was originally intended to apply and should, despite the Warren Court's limitations imposed, but applied to all cases like those filed by both US Trustee Lashinsky and the Disciplinary Board of the Supreme Court of New Mexico against Defendant Charles Edward Lincoln, III.

**30.**    Wherefore, I, the undersigned counsel, in good faith within the meaning of Rule 11(b), move and request that this Court extend, modify, or reverse existing law, or establish new law, relating to and regarding the availability of Civil Rights removal to oppressed classes of people defined by membership in classes neither defined nor relating to race.

**31.**    The original Congressional language of the civil rights removal statute, 28 U.S.C. §1443, could not be clearer or its face that "racial identity is not a factor":

10

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C.,* 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), *SEC v. Jarkesy,* 144 S.Ct. 2117 (June 27, 2024), *and Loper Bright Enterprises v. Raimundo,* 603 U.S.____, 144 S.Ct. 2244 (June 28, 2024) *in application and construction of* 11 U.S.C. §110

**28 U.S.C.A. § 1443**
**§ 1443. Civil rights cases**

Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

**(1)**    Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;

**(2)**    For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.

(June 25, 1948, c. 646, 62 Stat. 938.)

**32.**    This, the Civil Rights Removal statute, 28 U.S.C. §1443, on its face, makes no reference to race, color, creed, national origin, sex, or any other class-based or categorical limitation.

**33.**    Federal courts should give full effect and meaning to Congressional language, and should certainly not infer, much less should they presume and construe the meaning of statutes based on an inference or presumption, that Congress does not know the meaning of the phrases "any person", "any law", and "of all persons within the jurisdiction."

**34.**    ***"In construing a statute we are obliged to give effect, if possible, to every word Congress used."*** See e.g., ***Reiter v. Sonotone,*** 442 U.S. 330, 340, 99 S.Ct. 2326, 2331 (1979)(bold and italic emphasis added).

**35.**    To give full effect to every word that Congress used in 28 U.S.C. §1443 is something the Federal Courts frankly, since ***Greenwood v. Peacock*** 384 U.S. 808, 828, 83 S.Ct. 1800, 1812, 16 L.Ed.2d 944 (1966) and ***Georgia v. Rachel*** (supra) in 1966, have quite blindly refused to do.

**36.**    But in that neither the Supreme Court nor any Circuit Court of Appeals has actually declared 28 U.S.C. §1443(1) unconstitutional, the courts are obliged to listen to a removing party

11

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C., 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), SEC v. Jarkesy, 144 S.Ct. 2117 (June 27, 2024), and Loper Bright Enterprises v. Raimundo, 603 U.S.\_\_\_\_\_, 144 S.Ct. 2244 (June 28, 2024) in application and construction of 11 U.S.C. §110*

who proposes that the statute actually means what it says, rather than quite a bit less than it says (but "less" is how the courts and now the Disciplinary Board would prefer to construe this law).

37.     Accordingly, on behalf of the Defendant, Charles Edward Lincoln, III, who states that unlicensed participation in the discussion of law are subject to unconstitutional discrimination and unequal access to justice, I, as Defendant's undersigned attorney, ask this court to restore the majesty of Civil Rights Removal in the racially colorblind manner enacted by Congress, as an essential safety valve where state courts such as the Supreme Court of New Mexico have arrogated inordinate power to themselves for commercial and monopolistic purposes for their unconstitutional conduct and actions against individuals with unusual contractual relationships.

38.     Congress enacted 28 U.S.C. §1443(1) to protect "any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof" while

39.     28 U.S.C. §1443(2) apparently, facially, permits invocation of the protection of Federal Courts when a defendant is prosecuted or sued, "For any act under color of authority derived from any law providing for equal rights."

40.     42 U.S.C. §§1981-1982 are the two statutes which speak most directly to equal access to the Courts, and while these two statutes do expressly speak in the language of "the rights of white citizens", Defendant Charles Edward Lincoln, III, submits that the Disciplinary Board seeks to deny him the same rights as white citizens in 1868, when these statutes were first enacted, who were never limited by state or federal restrictions on their rights to discuss or frame discussions of the law or any other matters of social or political importance.

                                                                                              **12**

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C.,* 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), *SEC v. Jarkesy,* 144 S.Ct. 2117 (June 27, 2024), *and Loper Bright Enterprises v. Raimundo,* 603 U.S._____, 144 S.Ct. 2244 (June 28, 2024) *in application and construction of* 11 U.S.C. §110

41.    The Civil Rights removal statute thus appears to have been formulated as part of the system of "checks and balances" between state and federal power to ensure the protection of all fundamental rights enumerated and protected by implication under the Constitution of the United States.

42.    Civil Rights Removal is almost unique in the Judicial Code of the United States. Unlike almost every other provision permitting removal, an order granting a Motion to Remand to State Court is appealable, *as of right*; 28 U.S.C. §1447(d).

43.    The civil rights removal statute constitutes a narrow (but potentially very powerful, if applied according to the plain, non-racially discriminatory, letter of its language) exception to the rule that state court action may be removed to federal district court only if federal jurisdiction is evident on face of plaintiff's well-pleaded complaint. See, for example, ***Davis v. Glanton***, 107 F.3d 1044 (3rd Cir., 03-03-1997).

44.    Thus, the Civil Rights Removal Statute "***is specifically designed to extricate protected persons from state civil and criminal prosecution and provide instead a federal forum." Conrad v. Robinson***, 871 F.2d 612, 614 (6th Cir. 1989).

45.    Very clearly, Congress intended that "***where a state proceeding...is initiated in order to harass or intimidate a defendant for exercising his*** [or her] ***civil rights***..." such a person should be able to claim the safe harbor of a Federal Court. Harold S. Lewis, Jr. & Elizabeth J. Norman, ***Civil Rights Law and Practice*** (2nd ed. 2001), §5.50: p 467.

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C.*, 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), ***SEC v. Jarkesy***, 144 S.Ct. 2117 (June 27, 2024), ***and Loper Bright Enterprises v. Raimundo***, 603 U.S.____, 144 S.Ct. 2244 (June 28, 2024) ***in application and construction of*** 11 U.S.C. §110

**REMOVAL UNDER 28 U.S.C. §1443 - REMOVAL TIME LIMITS UNDER 28 U.S.C. §1452 ARE NOT JURISDICTIONAL - REMOVAL TIME LIMITS UNDER 28 U.S.C.§1446**

46.     As noted, Civil Rights Removal is unique in several regards, including the availability of review by appeal or otherwise under 28 U.S.C. §1447(d).

47.     Civil Rights removal is also nowhere constricted by limits on time, perhaps in recognition that the denial of Civil Rights is processual rather than event driven.

48.     Nevertheless, in her same [September 12 Doc 12] Brief in Support of Remand, at 4, Christine E. Long contends that Defendant's removal is untimely. But NOTHING in the Civil Rights Removal Statutes or any rules concerning civil rights removal specifies a specific time limitation or requirement, unlike the 30-day rule in 28 U.S.C. §1446(b)3) "standard" diversity or federal question removal (as cited by long on page 4 of Doc 12 in this case 24-01023-j), or in Rule 9027 in Bankruptcy Removal.

49.     Defendant has specifically objected to lack of service and of improper service, and NO PROOF OF FORMAL SERVICE EXISTS from the Disciplinary Board under New Mexico Rules.

50.     Under ALL New Mexico Rules, Proof of Service is required to be filed on the court docket. See NMRA, Rule 1-074, *Matter of Application No. 0436-A Into 3841 to Change Point of Diversion and Place and Purpose of Use of Surface Waters*, 101 N.M. 579 (1984). The requirement for filing proof of service is explicitly stated in multiple legal contexts:

51.     For appeals, as for example to the New Mexico Supreme Court, upon the filing of the notice of appeal and proof of service, the clerk of the district court shall docket the appeal in the district

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C., 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), SEC v. Jarkesy, 144 S.Ct. 2117 (June 27, 2024), and Loper Bright Enterprises v. Raimundo, 603 U.S._____, 144 S.Ct. 2244 (June 28, 2024) in application and construction of 11 U.S.C. §110*

court. See ***Ibid:*** NMRA, Rule 1-074, and ***Matter of Application No. 0436-A Into 3841 to Change Point of Diversion and Place and Purpose of Use of Surface Waters,*** 101 N.M. 579 (1984).

52.    Christine E. Long has also suggested that the Disciplinary Board may be a regulatory or police action and so "neither a criminal prosecution or a civil action." [Doc 12, page 4, Filed 9/19/24). Of course, this is shorthand for saying that it is either totally outside the realm of constitutional protection or else an administrative action subject to constitutional re-evaluation under both ***Loper Bright Enterprises v. Raimondo*** and ***SEC v. Jarkesy***.

53.    In New Mexico criminal procedures, the proof of service must be made by a certificate or affidavit, which should be filed with the clerk or endorsed on the relevant document. NMRA, Rule 5-103, ***Bourgeious v. Santa Fe Trail Stages,*** 43 N.M. 453 (1939).

54.    In civil actions, proof of service of the notice of appeal should be filed in the district court within thirty days after service is complete. Upon filing the proof of service and upon payment of the civil docket fee, the clerk of the district court shall docket the appeal. See ***Matter of Application No. 0436-A Into 3841 to Change Point of Diversion and Place and Purpose of Use of Surface Waters,*** 101 N.M. 579 (*supra*), and ***El Dorado Utilities, Inc. v. Galisteo Domestic Water Users Ass'n,*** 120 N.M. 165 (1995)).

55.    But in any event, timeliness of removal is NOT and has NEVER BEEN HELD to be jurisdictional[1]. Christine E. Long never asserts that any proof of service was ever filed anywhere.

---

1.    [1]***Rothner v. City of Chicago,*** 879 F.2d. 1402 (7th Cir. 1989); ***St. Louis Home Insulators v. Burroughs Corp***., 597 F.Supp. 98 (USDC E.D. Missouri, 1984); ***Perrin v. Walker***, 385 F.Supp. 945 (USDC E.D. Illinois, 1974). This means that these time limits can be waived or objections to timeliness can be estopped (***St. Louis Home Insulators, supra***). In a bankruptcy setting, in

**15**

***Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C.,*** 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), ***SEC v. Jarkesy***, 144 S.Ct. 2117 (June 27, 2024), ***and Loper Bright Enterprises v. Raimundo,*** 603 U.S._____, 144 S.Ct. 2244 (June 28, 2024) ***in application and construction of*** 11 U.S.C. §110

56.    Defendant herein submits that he has never been properly served, when formal service of process is required both by New Mexico and Federal Law to initiate timelines, and proof of service was never filed in the New Mexico Supreme Court docket in the case of ***In the Matter of Lincoln III***, Case Number S-1-SC-40372 Filed 04/08/2024.

57.    Defendant's Civil Rights Removal is timely, because there is no statutory or rule-based limitation on time, and even if his bankruptcy removal falls outside of Rule 9027 limits (exception for the final "not later than 180 days after relief" provision of 9027(a)(2), this defect cannot be deemed jurisdictional, in that the Disciplinary Board Petition is a "copycat" of Ilene J. Lashinsky's complaint.

58.    The US Trustee's Federal Complaint is in fact CITED on page 4 and paragraph 7 of Christine E. Long's Supreme Court Petition, and the New Mexico Disciplinary Board's case was filed a mere 5 days after the US Trustee's Complaint, which leads to an inference of intent to harass and persecute the defendant, and to subject him to precisely the same prosecution twice, in violation of all traditional notions of fair play and due process of law.

59.    These two cases were filed within 5 days of each other on identical grounds, and should be consolidated and heard together in US District Court, as Christine E. Long so forcefully argued in her own Document 12 Brief, filed September 19, 2024, as quoted extensively above.

---

***Caperton v. A.T. Massey Coal Co., Inc.,*** the court equitably tolled the procedural thirty-day time limit for removal due to the unusual circumstances of the case, recognizing it would be fundamentally unfair to allow plaintiffs to defeat an otherwise proper removal on purely procedural grounds. ***Caperton v. A.T. Massey Coal Co., Inc***., 251 B.R. 322 (USDC, S.D. West Virginia, 2000).

**16**

***Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C.,*** 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), ***SEC v. Jarkesy***, 144 S.Ct. 2117 (June 27, 2024), ***and Loper Bright Enterprises v. Raimundo,*** 603 U.S.____, 144 S.Ct. 2244 (June 28, 2024) ***in application and construction of*** 11 U.S.C. §110

## RELATIONSHIP BETWEEN 28 U.S.C. 1443(1) & 28 U.S.C. §2283

**60.**     As noted above, Civil Rights Removal stands as an obviously and expressly affirmed clear exception to the federal Anti-Injunction Act (28 U.S.C. §2283), as the legislative history of that act and civil rights injunctive powers of courts under 42 U.S.C. §§1983-1988(a) were analyzed together in ***Mitchum v. Foster***, 407 U.S. 225 at 233-242; 92 S.Ct. 2151, at 2156-2162; 32 L.Ed.2d 705 (1972).

**61.**     Congress chose to enact 42 U.S.C. §§1981-1982 at a time when the major perceived problems involving discrimination were racial, but Congress did not write any racial bias into the removal statute, U.S.C. §1443(1).

**62.**     A color-blind and entirely race-free construction of Congress' mandate in 28 U.S.C. §1443 is the only construction possibly consistent with the principles of equality embodied in the Equal Protection Clause of the Fourteenth Amendment.

**63.**     "The power to 'enforce' [the Equal Protection Clause] may at times also include the power to define situations which Congress determines threaten principles of equality and to adopt prophylactic rules to deal with those situations." ***City of Richmond v. J.A. Croson Company,*** 488 U.S. 469 at 490; 109 S. Ct. 706; 102 L.Ed.2d 854 (1989)(opinion of Justice Sandra Day O'Connor).

**64.**     In conclusion, reasons to allow this removal are to prevent manifest injustice and to protect the public from the tyranny of an economy managed by industry specialists in the field of law, so closely related to the CORE FIRST AMENDMENT FREEDOMS embodied in political speech.

### BANKRUPTCY PARTIES, PRINCIPLES, JURISDICTION AND VENUE

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C., 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), SEC v. Jarkesy, 144 S.Ct. 2117 (June 27, 2024), and Loper Bright Enterprises v. Raimundo, 603 U.S._____, 144 S.Ct. 2244 (June 28, 2024) in application and construction of 11 U.S.C. §110*

65.    Just as the foregoing discussion of removal under civil rights principles mandates withdrawal of the order of reference, based on the argument of the Deputy Disciplinary Counsel, U.S. Trustee Ilene J. Lashinsky has raised contradictory arguments in her own most recent filing.

66.    The Plaintiff Ilene J. Lashinsky is the United States Trustee and Defendant Charles Edward Lincoln, III, is a complete outsider, neither a debtor nor a creditor in Kathleen Anne Dudley's case.

67.    But the Disciplinary Board also purports to seek relief on behalf of Kathleen Anne Dudley.

68.    On the one hand, the U.S. Trustee argues:

> Defendant's argument is based on a misunderstanding of the phrase "a trustee in a case under title 11." "A trustee in a case under title 11" is a term of art which means the trustee of the bankruptcy estate. As one court explained:
>> That phrase has a technical meaning, one more limited than first appears. Section 586(a) of title 28 spells out the duties of a U.S. trustee. 28 U.S.C. § 586(a). One of those duties, though by no means the only one, is to 'serve as and perform the duties of a trustee in a case under title 11 when required under title 11.' 28 U.S.C. § 586(a)(2). In other words, a U.S. trustee may be required in a case to serve as trustee of the bankruptcy estate, or what is sometimes called the 'case trustee,' see, e.g., In re Tyrone F. Conner Corp., 140 B.R. 771, 779 (Bankr. E.D. Cal. 1992) and the Code authorizes him [or her] to do so, see 11 U.S.C. § 321(b)(1). In re South Beach Securities, Inc., 376 B.R. 881, 893 (Bankr. N.D. Ill. 2007), aff'd 421 B.R. 456 (N.D.Ill. 2009), aff'd 606 F.3d 366 (7th Cir. 2010).
> In this case, Plaintiff is not serving as a case trustee. Indeed, no case trustee was appointed in this case. Rather, Plaintiff is acting as an officer of the U.S. Government.

Case 24-01011-j Doc 29 Filed 09/13/24 Entered 09/13/24 10:01:35 Pages 6-7 of 8

69.    And yet Plaintiff Ilene J. Lashinsky speaks with forkèd tongue, and the Disciplinary Board joins her, in that the US Trustee's complaint and the Disciplinary Board's Petition BOTH seek damages payable to Kathleen A. Dudley, who has neither actually complained nor expressed any interest in complaining against Charles Edward Lincoln, III.

**18**

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C., 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), SEC v. Jarkesy, 144 S.Ct. 2117 (June 27, 2024), and Loper Bright Enterprises v. Raimundo, 603 U.S._____, 144 S.Ct. 2244 (June 28, 2024) in application and construction of 11 U.S.C. §110*

**70.**     Paragraphs 7-76 of Doc 1 in Case 24-01011-j Filed 04/03/24 refer ONLY to Kathleen A.

Dudley, but Paragraph 99 of Lashinsky's complaint states "PLAINTIFF IS A PERSON LIKELY

TO BE DAMAGED BY DEFENDANT'S UNAUTHORIZED PRACTICE OF LAW."

**71.**     Plaintiff apparently attempts to explain this odd assertion in ¶99 by citation to ***In re Graves***,

279 B.R. at 273 (9th Circuit BAP May 30, 2002).

**72.**     The ***Graves*** case actually NULLIFIED sanctions against a bankruptcy preparer for denial

of due process, but holds that "all the entities listed in 11 U.S.C. § 110(j), including the U.S. trustee,

"are 'injured in fact' by the defects in a bankruptcy proceeding that ensue when § 110 is violated

by a bankruptcy petition preparer".    See "Plaintiff's Response Brief on Threshold Issues" in

USBK, DNM, Case 24-01011-j Doc 29 Filed 09/13/24 Entered 09/13/24 10:01:35 Pages 5-6 of 8.

**73.**     Curiously, Plaintiff Ilene J. Lashinsky's complaint [Doc 1, filed April 3, 2024] does not

identify or describe even a single "defect in a bankruptcy proceeding" resulting from the

Defendant's allegedly improper actions or his role as a bankruptcy preparer.

**74.**     The constitutionality of 11 U.S.C. §110 both on its face and as applied to the Defendant in

this case poses questions suitable for an Article III judge in District Court.

### CIVIL ACTIONS REQUIRE AFFIRMATIVE DEFENSES AND RIGHT TO COUNTERCLAIM, BOTH of WHICH ARE ABSENT from DISCIPLINARY PROCEEDINGS

**75.**     Here in the 10th Circuit, ***Graves*** has been disagreed with and distinguished in ***Fulton v.***

***McVay***, 318 B.R. 546 (USDC D. Colorado, September 23, 2004).

**76.**     As noted, Christine E. Long has taken the position that Disciplinary Proceedings are neither

civil nor criminal and that somehow "a 'governmental unit' acting to enforce their 'police or

**19**

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the*
*Removed Petition against him for Article III adjudication, application, construction,*
*and interpretation of North Carolina Board of Dental Examiners v. F.T.C.,* 574 U.S. 494,
135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), *SEC v. Jarkesy,* 144 S.Ct. 2117 (June 27, 2024), *and Loper*
*Bright Enterprises v. Raimundo,* 603 U.S.____, 144 S.Ct. 2244 (June 28, 2024) *in application*
*and construction of* 11 U.S.C. §110

regulatory power" owe no obligations of due process of law, and basically exist outside of the realm of due process, altogether.  Case 24-01023-j Doc 12, Filed 09/19/24, Entered 09/19/24 Page 4 of 13.   But this is not the position of the Tenth Circuit in *Fulton*:

> Civil actions, generally, and adversary proceedings, specifically, have certain perquisites. They are commenced by the filing of a complaint, which must be personally served upon the defendant with a summons in order to create personal jurisdiction. Fed.R.Civ.P. 3 & 4; Fed. R. Bank. P. 7003 & 7004. The complaint must set forth a jurisdictional statement, a short and plain statement of the claim or claims, and a demand for judgment. Fed.R.Civ.P. 8; Fed. R. Bank. P. 7008. The defendant has an opportunity to file an answer or otherwise respond. Fed.R.Civ.P. 12; Fed. R. Bank. P. 7012. The litigants may engage in discovery. Fed.R.Civ.P. 16, 26–36; Fed. R. Bank. P. 7016, 7026–7036. Typically, the plaintiff bears the burden of proving its claims; the defendant has the burden of proving any affirmative defenses. At trial, the admission of evidence is subject to the Federal Rules of Evidence. Fed.R.Evid. 101; Fed. R. Bank. P. 9017. Any time in the process, should the litigants desire, they may compromise claims to their mutual satisfaction. The dispute is resolved by a neutral factfinder.

318 B.R. 546 @ 553 (2004).

**77.**    This statement of a civil action would be particularly threatening to the Petition/Plaintiff Disciplinary Board's modus operandi (Rules 17B-005 and 17-B-009(E) NMRA, as set cited and set forth in Christine E. Long's April 8, 2024 Petition and September 19, 2024 Brief in Support of Remand; these rules deny a Defendant the equal protection of the law by denying him an opportunity to raise affirmative defenses or a counterclaim or to conduct discovery.

**78.**    There are serious constitutional problems with regard to equal protections of the law in the New Mexico Disciplinary Procedures before the Disciplinary Board, and Defendant submits that he will be denied the equal protection of the laws before the Disciplinary Board so that constitutes one of those:

20

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C.,* 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), *SEC v. Jarkesy,* 144 S.Ct. 2117 (June 27, 2024), *and Loper Bright Enterprises v. Raimundo,* 603 U.S._____, 144 S.Ct. 2244 (June 28, 2024) *in application and construction of* 11 U.S.C. §110

> **. . . . rare situations where it can be clearly predicted by reason of operation of pervasive and explicit state or federal law that these rights will inevitably be denied by very act of bringing defendant to trial in state court. 28 U.S.C.A. § 1443(1).**

*Greenwood v. Peacock*, 384 U.S. 808, 828, 83 S.Ct. 1800, 1812, 16 L.Ed.2d 944 (1966).

79.     The Colorado District Court in ***Fulton*** pointed out that 11 U.S.C. §§110i and 110j *clearly afford Defendants under this statute with a right to a formal trial "a different, more customary litigation process… before the District Court."*

80.     In other words, the right to withdraw proceedings under 11 U.S.C. §110 to the District Court has been (effectively if not expressly) recognized and upheld in this Circuit.

81.     The key question in ***Fulton v. McKay*** was constitutional due process, and the lack of security for protection of rights in Disciplinary Proceedings is blatant in the rules and constitutes a grounds for federal equitable intervention or even injunction, and certainly civil rights removal.

82.     But there are several grounds for withdrawal of the order of reference at play here.

83.     ***In re Graves*** also held that a bankruptcy preparer was not entitled to a trial-by-jury ON MATTERS OF INJUNCTIVE RELIEF, but Counts 1-3 of Plaintiff Ilene J. Lashinsky's complaint expressly seek monetary damages and/or administrative penalties.

84.     Defendant submits that ***SEC v. Jarkesy*** requires modification and revision of the law on this point.  144 S.Ct. 2117 (June 27, 2024).

85.     The Supreme Court in ***Jarkesy*** found, with direct and controlling impact on this case: (1) Monetary penalties at issue were legal remedy, indicated that claims were subject to Seventh Amendment right to jury trial in suits at common law; (2)  close relationship between claims and common-law fraud indicated claims were legal in nature for purposes of the Seventh Amendment;

**21**

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C.,* 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), *SEC v. Jarkesy,* 144 S.Ct. 2117 (June 27, 2024), *and Loper Bright Enterprises v. Raimundo,* 603 U.S._____, 144 S.Ct. 2244 (June 28, 2024) *in application and construction of* 11 U.S.C. §110

(3) "public rights" exception to adjudication by Article III courts under Seventh Amendment did not apply to claims.

86.    Defendant asserts that he is entitled to a trial-by-jury, and that his challenge to the constitutionality of 11 U.S.C. §110 not merely warrants but requires withdrawal of the order of reference in this case:

> The right to **trial** by jury is "of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right" has always been and "should be scrutinized with the utmost care." *Dimick v. Schiedt*, 293 U.S. 474, 486, 55 S.Ct. 296, 79 L.Ed. 603 (1935). Commentators recognized the right as "the glory of the English law," 3 W. Blackstone, Commentaries on the Laws of England 379 (8th ed. 1778) (Blackstone), and it was prized by the American colonists. When the English began evading American juries by siphoning adjudications to juryless admiralty, vice admiralty, and chancery courts, Americans condemned Parliament for "subvert[ing] the rights and liberties of the colonists." Resolutions of the Stamp Act Congress, Art. VIII (Oct. 19, 1765), reprinted in Sources of Our Liberties 270, 271 (R. Perry & J. Cooper eds. 1959). Representatives gathered at the First Continental Congress demanded that Parliament respect the "great and inestimable privilege of being tried by their peers of the vicinage, according to the [common] law." 1 Journals of the Continental Congress, 1774–1789, p. 69 (Oct. 14, 1774) (W. Ford ed. 1904). And when the English continued to try Americans without juries, the Founders cited the practice as a justification for severing our ties to England. See Declaration of Independence ¶20; see generally *Erlinger v. United States*, 602 U. S. ——, —— – ——, 144 S.Ct. 1840, —— L.Ed.2d —— (2024).
>
> In the Revolution's aftermath, perhaps the "most success[ful]" critique leveled against the proposed Constitution was its "want of a ... provision for the **trial** by jury in civil cases." The Federalist No. 83, p. 495 (C. Rossiter ed. 1961) (A. Hamilton) (emphasis deleted). The Framers promptly adopted the Seventh Amendment to fix that flaw. In so doing, they "embedded" the right in the Constitution, securing it "against the passing demands of expediency or convenience." *Reid v. Covert*, 354 U.S. 1, 10, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957) (plurality opinion). Since then, "every encroachment upon it has been watched with great jealousy**."** *Parsons v. Bedford*, 3 Pet. 433, 28 U.S. 433, 7 L.Ed. 732 (1830).
>
> By its text, the Seventh Amendment guarantees that in "[s]uits at common law, ... the right of **trial** by jury shall be preserved." In construing this language, we have noted that the right is not limited to the "common-law forms of action recognized" when the Seventh Amendment was ratified. *Curtis v. Loether*, 415 U.S. 189, 193,

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C., 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), SEC v. Jarkesy, 144 S.Ct. 2117 (June 27, 2024), and Loper Bright Enterprises v. Raimundo, 603 U.S._____, 144 S.Ct. 2244 (June 28, 2024) in application and construction of 11 U.S.C. §110*

94 S.Ct. 1005, 39 L.Ed.2d 260 (1974). As Justice Story explained, the Framers used the term "common law" in the Amendment "in contradistinction to equity, and admiralty, and maritime jurisprudence." **Parsons,** 3 Pet. at 446. The Amendment therefore "embrace[s] all suits which are not of equity or admiralty jurisdiction, whatever may be the peculiar form which they may assume." *Id*., at 447.

The Seventh Amendment extends to a particular statutory claim if the claim is "legal in nature." **Granfinanciera v. Nordberg**, 492 U.S. at 53, 109 S.Ct. 2782. As we made clear in **Tull**, whether that claim is statutory is immaterial to this analysis. See 481 U.S. at 414–415, 417–425, 107 S.Ct. 1831. In that case, the Government sued a real **\*2129** estate developer for civil penalties in federal court. The developer responded by invoking his right to a jury **trial**. Although the cause of action arose under the Clean Water Act, the Court surveyed early cases to show that the statutory nature of the claim was not legally relevant. "Actions by the Government to recover civil penalties under statutory provisions," we explained, "historically ha[d] been viewed as [a] type of action in debt requiring **trial** by jury." *Id*., at 418–419, 107 S.Ct. 1831. To determine whether a suit is legal in nature, we directed courts to consider the cause of action and the remedy it provides. Since some causes of action sound in both law and equity, we concluded that the remedy was the "more important" consideration. *Id.*, at 421, 107 S.Ct. 1831 (brackets and internal quotation marks omitted); see *id*., at 418–421, 107 S.Ct. 1831.

**Securities and Exchange Commission v. Jarkesy**, 144 S.Ct. 2117 @2128-2129.

## IS KATHLEEN A. DUDLEY A DEBTOR OR AN INVOLUNTARY PLAINTIFF?

**87.**    In Count 1 of the US Trustee's April 3, 2024 Complaint, Plaintiff Lashinsky's paragraphs 119-120 state hat "Defendant's Scheme was fraudulent, unfair, and/or deceptive" and that "Defendant's efforts to convince the Debtor pursue the Scheme were fraudulent, unfair, and/or deceptive."

**88.**    Although based on all the same factual allegations, such statements are absent from the Disciplinary Board's Petition for Injunctive Relief, which appears to rely on "industry insider" bias against persons in the position of the Defendant in this case.

**89.**    The circular "procedural" statement of the Disciplinary Board's Petition are found in Paragraph 17 "It is anticipated that this matter will be prosecuted by Deputy Disciplinary Counsel,

**23**

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C.,* 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), *SEC v. Jarkesy,* 144 S.Ct. 2117 *(June 27, 2024), and Loper Bright Enterprises v. Raimundo,* 603 U.S.____, 144 S.Ct. 2244 *(June 28, 2024) in application and construction of* 11 U.S.C. §110

Christine E. Long, and then, in the unmarked "WHEREFORE" paragraph on page 5 is that the Supreme Court should "refer this matter to the Disciplinary Board for Appointment of a hearing officer to hear evidence and make findings of fact and conclusions of law, and recommendations to the Disciplinary Board."

**90.**    This completely circular prosecution, ostensibly for the benefit of Kathleen Anne Dudley, is in fact merely an industry insider monopolistic ploy.

**91.**    NOWHERE in the Disciplinary Board's Petition are there any allegations of actual injury to Kathleen Anne Dudley or any misconduct other than "unauthorized practice of law" against the Defendant.

**92.**    A careful comparison of the Disciplinary Board's Petition and Ilene J. Lashinsky's complaint is instructive (the latter constitutes a subset of the former):

**93.**    Lashinsky's above quoted allegations are followed by ¶124, "Pursuant to 11 U.S.C. § 110(i)(1)(A), the UST requests that this Court enter **a money judgment against Defendant and in favor of Debtor for** Debtor's actual damages, in an amount to be determined by this Court."

**94.**    In Court 2, ¶126 of Lashinsky's complaint, the US Trustee likewise asks, "Pursuant to 11 U.S.C. § 110(i)(1)(B), the UST requests that this Court enter **a money judgment against Defendant and in favor of Debtor** for the greater of (i) $2,000.00 or (ii) twice the amount Debtor paid Defendant for his services."

**95.**    In Court 3, ¶129, Lashinsky prays, "Pursuant to 11 U.S.C. § 110(h)(3)(B), the UST requests that this Court **enter a judgment against Defendant ordering that he turn over to Debtor all fees paid by Debtor within thirty (30) days of entry**.

**24**

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C., 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), SEC v. Jarkesy, 144 S.Ct. 2117 (June 27, 2024), and Loper Bright Enterprises v. Raimundo, 603 U.S.____, 144 S.Ct. 2244 (June 28, 2024) in application and construction of 11 U.S.C. §110*

Here again, Lashinsky's Complaint and the Disciplinary Board's Petition have both effectively made Kathleen A. Dudley into an INVOLUNTARY PLAINTIFF without following the procedures for doing so under Rule 19 of the Federal Rules of Civil Procedure.

96.     The US Trustee in her Complaint and the Disciplinary Board in its Petition are bitg effectively acting as ATTORNEYs FOR THE DEBTOR who has not overtly authorized or expressed any interest in the case (or at least has never been cited or quoted to do so).

97.     Thus, the issues involved in this case are clearly not traditional bankruptcy-related issues, although arising, albeit only tangentially, from the Chapter 11 Bankruptcy filed by Debtor Kathleen Anne Dudley, who first filed and then voluntarily dismissed her own voluntary Petition for Chapter 11 Bankruptcy.

98.     The US Trustee seeks both legal and equitable remedies, but she does so under a statute, 11 U.S.C. §110, which is subject to severe constitutional challenge.  The US Trustee's Complaint is duplicated by a shorter, less detailed, and more parochial Petition filed by the Disciplinary Board of the Supreme Court of New Mexico.  Defendant has removed the latter and requested consolidation with the former.

99.     The United States Bankruptcy and District Courts for the District of New Mexico have jurisdiction over this Defendant's Motion to Withdraw Reference pursuant to 28 U.S.C. §§1334(b) and 157 and the Standing Order of Reference, entered March 19, 1992, from the United States District Court for the District of New Mexico to the United States Bankruptcy Court for the District of New Mexico.

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C.,* 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), *SEC v. Jarkesy,* 144 S.Ct. 2117 (June 27, 2024), *and Loper Bright Enterprises v. Raimundo,* 603 U.S.____, 144 S.Ct. 2244 (June 28, 2024) *in application and construction of 11 U.S.C. §110*

## CORE PROCEEDINGS -  LEGAL AND EQUITABLE RELIEF

**100.**     In ¶5 on page 2 of 18 in Ilene Lashinsky's Complaint for Sanctions and Injunctive Relief, Plaintiff asserts that "this is a core proceeding under 28 U.S.C. 157(b).  Three of the counts of Plaintiff's six counts (Counts 1-3) seek damages or "sanctions", and thus "legal" in nature, while three counts are equitable (Counts 4-6), seeking injunctive relief, albeit irreconcilably contradictory and possibly unconstitutional injunctive relief, contrary to recent developments in antitrust and administrative law.

**101.**     If Ilene J. Lashinsky's Complaint constitutes a "core proceeding" then so does Christine E. Long's copycat petition filed five days later.

**102.**     Defendant will move this court to declare and adjudge whether the definition of "Core Bankruptcy Proceedings" can constitutionally or lawfully include a statutory state sponsored restraint of trade by bankruptcy industry participants, such as the Plaintiff Trustee, in a special bankruptcy industry-specific court presided over by a career industry participant judge.

**103.**     Defendant will also move this court to declare and adjudge that the Plaintiff's standing, prosecution, resolution, and ultimately the final disposition of all counts of Plaintiff's Complaint, depends on the application and construction of two cases to 11 U.S.C. §110, namely: *North Carolina Board of Dental Examiners v. F.T.C.*, 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015) *and Loper Bright Enterprises v. Raimundo,* 603 U.S.____, 144 S.Ct. 2244, 2024 WL 3208369 (June 28, 2024).

**104.**     Defendant demands a trial-by-jury of all legal claims for "sanctions" (i.e. punitive damages) and asks the Court to declare and adjudge that imposition of either compensatory or

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C., 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), SEC v. Jarkesy, 144 S.Ct. 2117 (June 27, 2024), and Loper Bright Enterprises v. Raimundo, 603 U.S.____, 144 S.Ct. 2244 (June 28, 2024) in application and construction of 11 U.S.C. §110*

"quasi-criminal" or administrative punitive damages, without any "sovereign" governmental supervision whatsoever gives rise to entitlement to a trial-by-jury.

105.    These issues and questions have never been applied or tried in any court in relation to the authority of a U.S. Trustee to bring a "Complaint for Sanctions and Injunctive Relief" under 11 U.S.C. §110.

### BOTH THE JURY DEMAND AND NEED TO INTERPRET NOVEL QUESTIONS OF LAW MILITATE IN FAVOR OF WITHDRAWAL

106.    The statutory relief and legal predicates for the relief herein requested are 28 U.S.C. §157(d), Bankruptcy Rule 5011(a) and Local Rule 5011-(https://nmb.uscourts.gov/5011-1).

107.    28 U.S.C. §157(d) also specifies that the district court must withdraw a proceeding if it determines that the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

108.    **Bankruptcy Rule 5011(a)**: This rule requires that a motion for withdrawal of a case or proceeding shall be heard by the district court. *In re American Community Services, Inc*., 86 B.R. 681 (1988). The procedure involves initially filing the withdrawal motion with the bankruptcy court and applying for a transmittal order, which is then forwarded to the district court. *54th & Harper v. Southmark Corp*., 82 B.R. 590 (1988).

109.    Defendant Charles Edward Lincoln, III, files this motion to be reviewed together with his previously filed Motion to Dismiss Plaintiff's Complaint and Motion to Consolidate Cases.

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C., 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), SEC v. Jarkesy, 144 S.Ct. 2117 (June 27, 2024), and Loper Bright Enterprises v. Raimundo, 603 U.S.____, 144 S.Ct. 2244 (June 28, 2024) in application and construction of 11 U.S.C. §110*

## BACKGROUND and NATURE OF THE CASE

**110.**    Defendant Charles Edward Lincoln, III, holds a Ph.D. from the Harvard Graduate School of Arts & Sciences (1990) and a J.D. from the Law School of the University of Chicago (1992).

**111.**    Defendant also worked as a judicial extern for the late Honorable Stephen Reinhardt of the United States Court of Appeals for the Ninth Circuit (in Los Angeles 1987-1988), and as a judicial law clerk for the late Honorable Kenneth L. Ryskamp of the United States District Court for the Southern District of Florida (West Palm Beach, 1992-1993).

**112.**    Formerly licensed in California, Florida, and Texas, Defendant is now disbarred and subject to certain injunctive sanctions in Texas and Louisiana.

**113.**    Defendant assisted Debtor Kathleen Anne Dudley in January and February of this year (2024) with the use of Westlaw for legal research and wrote for her a successful 7052 motion which he did not sign.

**114.**    11 U.S. Code § 110 is entitled "Penalty for persons who negligently or fraudulently prepare bankruptcy petitions."

**115.**    Nothing in Plaintiff's complaint suggests that Lincoln either negligently or fraudulently did anything for Kathleen Anne Dudley, except for the presumptive conclusions in Plaintiff's complaint described in Defendant's Motion to Dismiss.

**116.**    The U.S. Trustee has also sued Defendant Lincoln for unauthorized practice of law under New Mexico State Statutes §§36-2-27 and 36-2-28.1 (Count 6, @pages 16-18 of Lashinsky's Complaint) and for multiple violations of 11 U.S.C. §§110 (Counts 1-5, @pages 12-16).

**28**

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C., 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), SEC v. Jarkesy, 144 S.Ct. 2117 (June 27, 2024), and Loper Bright Enterprises v. Raimundo, 603 U.S.____, 144 S.Ct. 2244 (June 28, 2024) in application and construction of 11 U.S.C. §110*

117.    The New Mexico Disciplinary Board Petition is shorter and basically a "subset" of Ilene J. Lashinsky's complaint.  The two should be consolidated.

118.    Within Ilene J. Lashinsky's Complaint alone, Count 6 precisely duplicates the case brought in the New Mexico Supreme Court (*The Disciplinary Board v. Charles Edward Lincoln, III*, S-1-SC-40372, filed April 8, 2024).

119.     The U.S. Trustee and Disciplinary Board both plainly seek a broad injunction and sanctions against "the unauthorized practice of law"---without ever providing a constitutionally valid definition of this phrase (see ***In re Dissolving the Commission on the Unauthorized Practice of Law***, 242 P.3d 1282, 2010 MT 82, 356 Mont 109 (Supreme Court of Montana, April 20, 2010).

120.    Defendant which would prevent the Defendant from working in law, especially bankruptcy law, apparently without territorial limits of any kind; Defendant submits that the Complaint is both overbroad and inherently contradictory, but specifically that the U.S. Trustee's policies of enforcement violate Sherman Act Antitrust Law as set forth in *North Carolina Board of Dental Examiners v. FTC, supra* by failure to provide for "sovereign entity" government supervision by non-industry participants.

121.    Further, Defendant submits that Courts 4-6 of Plaintiff Ilene J. Lashinsky's complaint constitutes and all portions of Petitioner/Plaintiff Disciplinary Board's Petition also constitute a prior restraint (i.e. censorship) of his First and Ninth Amendment rights to freedom of expression and freedom of association.

**29**

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C.,* 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), *SEC v. Jarkesy,* 144 S.Ct. 2117 (June 27, 2024), *and Loper Bright Enterprises v. Raimundo,* 603 U.S.____, 144 S.Ct. 2244 (June 28, 2024) *in application and construction of* 11 U.S.C. §110

Case 24-01023-j    Doc 13    Filed 09/26/24    Entered 09/26/24 10:46:04 Page 29 of 51

**AS APPLIED BY THE U.S. TRUSTEE IN THIS CASE,
11 U.S.C. §110 CONSTITUTES A RESTRAINT ON INTERSTATE COMMERCE IN
VIOLATION OF THE SHERMAN ACT AND *PARKER* DOCTRINE OF STATE ACTION
EXCEPTION, and as APPLIED BY THE DISCIPLINARY BOARD IN THE STATE
CASE, SO DOES CHRISTINE E. LONG'S PETITION**

**PART I: THE U.S. TRUSTEE IS AN INDUSTRY PARTICIPANT NO SOVEREIGN
IMMUNITY, EVEN THOUGH SHE POSSESSES "QUASI-JUDICIAL IMMUNITY
FROM SUIT**

**122.**    Defendant Charles Edward Lincoln, III, contemporaneously and together with this Motion
to Withdraw the Reference to Bankruptcy Court, has filed a Motion to Dismiss on grounds that the
U.S. Trustee's application and construction of 11 U.S.C. §110 constitutes a violation of the antitrust
laws of the United States, while masquerading as false consumer protection.

**123.**    The United States Trustee's office in Bankruptcy is not considered a "sovereign entity" in
the context of sovereign immunity under the Bankruptcy Code[2].

**124.**    For this reason, Defendant Charles Edward Lincoln, III, will, upon withdrawal of the
reference, file either a counterclaim in the United States District Court for the District of New
Mexico to declare 11 U.S.C. §110, either facially (on account of providing no supervision by any
non-industry involved "sovereign" government entity), or as applied to him by the US Trustee
Ilene J. Lashinsky and the Disciplinary Board of the Supreme Court of the State of New Mexico
BOTH to be unlawful under the *Parker* State action doctrine[3].

**125.**    All these reasons support withdrawal of the order of reference.

---

[2]    *In re Sann*, 546 B.R. 840 (D. Montana, 2016), *U.S. v. Nordic Village Inc.,* 503 U.S. 30,
112 S.Ct. 1011, 117 L.Ed.2d 181 (1992)**,** *Miller v. United States*, 71 F.4th 1247 (10th Cir. [Utah],
2023), *Balser v. Dept. of Justice, Office of U.S. Trustee*, 327 F.3d 903 (9th Cir. [Wash.], 2003).
[3]    *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943).

**30**

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the
Removed Petition against him for Article III adjudication, application, construction,
and interpretation of North Carolina Board of Dental Examiners v. F.T.C.,* 574 U.S. 494,
135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), *SEC v. Jarkesy*, 144 S.Ct. 2117 (June 27, 2024), *and Loper
Bright Enterprises v. Raimundo,* 603 U.S._____, 144 S.Ct. 2244 (June 28, 2024) *in application
and construction of 11 U.S.C. §110*

**126.**    In fact, the term "governmental unit" as defined in the Bankruptcy Code, 11 U.S.C. §101, includes various entities such as the United States, states, territories, municipalities, and certain departments, agencies, or instrumentalities of the United States, but explicitly excludes a United States trustee while serving as a trustee in a bankruptcy case[4].

**127.**    This exclusion indicates that while many government-related entities are considered "governmental units" for the purposes of the Bankruptcy Code, United States Trustees, when acting within their role in bankruptcy cases, are specifically carved out from this definition.

**128.**    Sovereign immunity, which is a legal doctrine that prevents the government or its subdivisions, departments, and agencies from being sued without its consent, is abrogated for governmental units under specific sections of the Bankruptcy Code.

**129.**    However, given that United States Trustees are excluded from the definition of "governmental units" in this context, United States Trustees do not benefit from sovereign immunity in the same manner that other government entities do when involved in bankruptcy proceedings even though the U.S. Trustee may have "quasi-judicial" immunity for her quasi-judicial acts as an administrator of bankruptcy proceedings.

---

[4]    ***Miller v. United States,*** [10[th] Circuit] *supra*; ***Balser v. Department of Justice, Office of U.S. Trustee***, [9[th] Circuit] *supra*, ***Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin,*** 599 U.S. 382. 143 S.Ct. 1689, 216 L.Ed.2d 342 (2023), ***In re Coughlin***, 33 F.4th 600 (1st Cir. [Mass], 2022).

31

***Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C.***, 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), ***SEC v. Jarkesy***, 144 S.Ct. 2117 (June 27, 2024), ***and Loper Bright Enterprises v. Raimundo,*** 603 U.S.____, 144 S.Ct. 2244 (June 28, 2024) ***in application and construction of*** 11 U.S.C. §110

**130.** The significance of the difference between sovereign entity immunity and quasi-judicial immunity for this case depends entirely on how the court, the United States District Court, will apply and interpret *North Carolina Board of Dental Examiners v. FTC.*

## PART II: 11 U.S.C. §110 SERVES NO PURPOSE EXCEPT TO SUPPRESS LEGITIMATE COMPETITION IN INTERSTATE COMMERCE

**131.** In ¶99 of her April 3, 2024 Complaint, Plaintiff Ilene J. Lashinsky asserts: "Plaintiff is a person likely to be damaged by Defendant's unauthorized practice of law." Plaintiff's admission on this point is critical. It is a very strange allegation of "likelihood of injury"---and utterly unsupported by any factual allegations WHATASOEVER.

**132.** Defendant submits that this is the essential fear and ultimate purpose of the Disciplinary Board of the Supreme Court of New Mexico as well.

**133.** Deputy Disciplinary Counsel Christine E. Long and Plaintiff Ilene J. Lashinsky are both attorneys-at-law, specialists respectively, in bankruptcy law and "disciplinary proceedings" (i.e. industry insiders maintaining their monopoly).

**134.** Ilene J. Lashinsky specializes the administration of bankruptcy cases, and is thus an "industry insider" (within the meaning of *North Carolina Board of Dental Examiners)* not subject to active (or in fact, any kind of) supervision of her anticompetitive litigation in the implementation of 11 U.S.C. §110; but the Disciplinary Board has no "non-monopolistic" purpose whatsoever.

**135.** If 11 U.S.C. §110 or the New Mexico statutes had any legitimate purpose, it might be to provide a remedy fir "negligent or fraudulent" bankruptcy preparer services, but there are no allegations of any such negligence, or any omissions or wrongs committed by Lincoln, whatsoever, aside from the same UNDEFINED "Unauthorized Practice of Law"---see 242 P.3d 1282 (*supra*).

**32**

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C.,* 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), *SEC v. Jarkesy,* 144 S.Ct. 2117 (June 27, 2024), *and Loper Bright Enterprises v. Raimundo,* 603 U.S.____, 144 S.Ct. 2244 (June 28, 2024) *in application and construction of 11 U.S.C. §110*

**136.**    In his Motion to Dismiss, Defendant Charles Edward Lincoln, III, submits that the "anti-ghost writing" requirements of the statute as applied and implemented in this case, accusing Lincoln of "failing to put his name and address[5]" and/or social security number on certain documents in fact serve no such purpose and is constitutionally irrational and conflicts with other laws regarding the privacy of social security numbers in court papers.

**137.**    This is an issue which reflects the anti-competitive purposes of 11 U.S.C. §110 without having any connection to "consumer protection."

**138.**    The U.S. Trustee's complaint is replete with conclusory allegations, such as "The unauthorized practice of law is fraudulent, and unfair, and/or deceptive conduct." Doc 1 @ ¶115[6].

**139.**    Defendant Charles Edward Lincoln, III, alleges that, like the phrase, "the unauthorize practice of law" itself, as employed and applied in both the Disciplinary Board's April 8 Petition and the US Trustee's complaint, 11 U.S.C. §110 is both unconstitutionally overbroad and void for vagueness as quoted in ¶106 of Ilene J. Lashinsky's Complaint when and where it states:

> 11 U.S.C. §110(i)(1) provides that if a bankruptcy petition preparer ("BPP") "violates section 110 or commits any act that the court finds to be fraudulent, unfair, or deceptive . . . the court shall order the bankruptcy petition preparer to pay to the debtor" the debtor's actual damages and the greater of $2,000 or twice the amount the debtor paid the BPP for their services.

---

**5**    **Defendant's "offenses"** include Defendant's failure to "put his name and address on…." certain documents in Count I. ¶¶107, 108, Case 24-01011-j Doc 1 Filed 04/03/24 Entered 04/03/24 16:23:13 Pages 12-13 of 18.    "Defendant violated 11 U.S.C. § 110(c) by failing to put his social security number on the 7052 Motion." Is alleged in ¶111, and "Upon information and belief, Defendant may have violated 11 U.S.C. § 110(c) by failing to put his social security number on other documents he prepared for filing in connection with the Bankruptcy Case." In ¶112, Complaint, Case 24-01011-j Doc 1 Filed 04/03/24 Entered 04/03/24 16:23:13 Page 13 of 18.
**6**    At page 13 of 18 of the Adversary Complaint filed in Case 24-01011-j Doc 1 Filed 04/03/24 Entered 04/03/24 16:23:13.

**33**

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C.,* 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), *SEC v. Jarkesy,* 144 S.Ct. 2117 (June 27, 2024), *and Loper Bright Enterprises v. Raimundo,* 603 U.S.____, 144 S.Ct. 2244 (June 28, 2024) *in application and construction of* 11 U.S.C. §110

**140.**    This paragraph alone illustrates the unconstitutional, legal absurdity of the complaint and litigation process against Defendant because it grants and allows infinite discretion to a Court and a U.S. Trustee to define "any act" as "fraudulent, unfair, or deceptive."

**141.**    Defendant has separately moved to dismiss all charges of fraud brought by Lashinsky in this case against him as facially insufficient under Rule 9(b) for lack of pleading in particularity.

**142.**    The language of 11 U.S.C. §110(i)l) ¶106 serves no legitimate purpose of consumer protection, and merely empowers the U.S. Trustee and U.S. Bankruptcy Court to use the power of the courts and by oppressive litigation to enforce an illegal monopoly and restraint on trade in interstate commerce without any supervision whatsoever.

**143.**    The nearest thing to an allegation to what might constitute actual "fraud" against Defendant appears in ¶76 of Ilene J. Lashinsky's complaint, where she states, ambiguously and without anything remotely resembling the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure, "Upon information and belief, Defendant misrepresented his experience and/or education to Defendant[7]."

---

7    At page 8 of 18 of the Adversary Complaint filed in Case 24-01011-j Doc 1 Filed 04/03/24 Entered 04/03/24 16:23:13. Naturally, Defendant, a graduate of Tulane University (Phi Beta Kappa Magna cum Laude, 1980), Harvard University Graduate School of Arts & Sciences (M.A. 1982, Ph.D. 1990) and the Law School of the University of Chicago (1992), as well as a former judicial extern in the 9th Circuit and Judicial Law Clerk in the Southern District of Florida, submits that he had absolutely no need to exaggerate or in any way misrepresent his experience and/or education to the Defendant or anyone else.

**34**

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C.,* 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), *SEC v. Jarkesy,* 144 S.Ct. 2117 (June 27, 2024), *and Loper Bright Enterprises v. Raimundo,* 603 U.S._____, 144 S.Ct. 2244 (June 28, 2024) *in application and construction of* 11 U.S.C. §110

**PART III: Merger of issues:** ***Loper Bright Enterprises v. Raimundo*** **with** ***North Carolina Board of Dental Examiners v. FTC*** **and** ***SEC v. Jarkesy***

**144.**    Like Ilene J. Lashinsky, Christine E. Long has brought her suit for an injunction to prevent Charles Edward Lincoln III from acting as a "bankruptcy preparer" or otherwise engaging in the "unauthorized practice of law."

**145.**    But they are both also acting as attorney seeking legal damages for an involuntary plaintiff.

**146.**    It appears that the application and construction of such terms "bankruptcy preparer" and otherwise engaging in the "unauthorized practice of law;" are entirely left to Ilene J. Lashinsky's construction and interpretation as a non-sovereign industry participant, and one can reasonably infer and assume that the U.S. Bankruptcy Court will probably agree with and/or defer to her views.

**147.**     In fact, the ONLY perceptible "supervision" to which U.S. Trustee Ilene J. Lashinsky appears to have been subjected in this case was reflected in Judge Robert H. Jacobvitz April 4, 2024, Order [Case 24-10034-j11 Doc 38 Filed 04/04/24 Entered 04/04/24 09:41:56] that Kathleen Dudley's bankruptcy case would remain open for purpose of filing and prosecuting this suit against Defendant Charles Edward Lincoln, III.

**148.**    There is no evidence of any substantive supervision of the Disciplinary Board on the part of the New Mexico Supreme Court or any other branch of the state government of New Mexico.

**149.**    The Judge of the Bankruptcy Court, himself might well be deemed a "market participant" in the bankruptcy preparation business.  A brief exploration on Google that officers of this

35

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C.,* 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), *SEC v. Jarkesy,* 144 S.Ct. 2117 (June 27, 2024), *and Loper Bright Enterprises v. Raimundo,* 603 U.S._____, 144 S.Ct. 2244 (June 28, 2024) *in application and construction of* 11 U.S.C. §110

honorable court both in bankruptcy seminars and is currently campaigning for reappointment to the bankruptcy bench.

**150.**    The United States Trustee system is funded by the federal treasury **through special fees collected in bankruptcy cases** and is under the (rather casual, and highly discretionary) supervision of the United States Attorney General[8].

**151.**    Despite these connections to the federal government, the explicit exclusion of United States Trustees from the definition of "governmental units" in the context of sovereign immunity delineates a clear boundary regarding their status and the applicability of sovereign immunity.

**152.**    11 U.S.C. §110 does not even purport to make the U.S. Trustee any more "sovereign" than in any other bankruptcy function he or she might undertake, and this means she may be liable for her unsupervised anti-competitive actions against Defendant in this case; or at the very least, that her lawsuit should be declared null and void.

**153.**    Viewed in the light most favorable to the constitutionality of the statute, 11 U.S.C. §110 is an exercise of the federal power to regulate interstate commerce[9], but it is fundamentally an imposition on freedom of speech, freedom of association, and the freedom to petition.

**154.**    As repeatedly stated throughout this Motion to Withdraw, both Cristine E, Long, all members of the Disciplinary Board of the Supreme Court of the State of New Mexico, U.S. Trustee

---

**8**        *In re Sann*, 546 B.R. 840 (D. Montana, 2016), *Balser v. Department of Justice, Office of U.S. Trustee*, 327 F.3d 903 (9th Circuit, 2003), 28 U.S.C.A. § 581.

**9**        See, e.g. **"*North Carolina State Board of Dental Examiners v. FTC: aligning antitrust laws with commerce clause jurisprudence through a natural shift of state-federal balance of power*."**  Marie Forney, Indiana Law Journal, 92 Ind. L.J. 365 (Winter 2016).

**36**

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C.,* 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), ***SEC v. Jarkesy**, 144 S.Ct. 2117* (June 27, 2024), *and Loper Bright Enterprises v. Raimundo,* 603 U.S.____, 144 S.Ct. 2244 (June 28, 2024) *in application and construction of* 11 U.S.C. §110

Ilene J. Lashinsky and her attorney Dan White are all attorneys paid in part by their participation in litigation, and they are thus all "active market participants" in the practice of law in both the State and Federal Bars of New Mexico.

155.    Like Ilene J. Lashinsky, Deputy Disciplinary Counsel Christine E. Long is also an attorney paid expressly to suppress non-attorney competition for members of the State Bar of New Mexico, and the purposes of the Disciplinary Counsel in filing its complaint are expressly monopolistic.

**156.**    The Supreme Court of the United States, in ***North Carolina Board of Dental Examiners v. F.T.C.***, 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), held that active market participants do not receive Parker state-action immunity from federal antitrust laws unless their actions are actively supervised by the political branches of government, i.e. the U.S. Congress.

157.    Defendant Charles Edward Lincoln, III, thus intends to file a Motion to Dismiss Plaintiff's Complaint for violations of the Antitrust Laws.

158.    Defendant also intends to file a counterclaim to declare 11 U.S.C. §110 itself and New Mexico State Statutes §§36-2-27 and 36-2-28.1 to be in violation and inconsistent with the antitrust laws of the United States of America, especially the Sherman Act, 15 U.S.C. §1 et seq..

159.    Defendant Charles Edward Lincoln, III, submits that there is a vast market for non-state bar free competition for legal analysis and research in the United States, and that suppression of this market by the internally and inherently contradictory "Catch-22" type relief sought in the Plaintiff's Complaint for Sanctions and Injunctive Relief under both State and Federal Laws, in this complaint filed in a District where Defendant does not live, and has not lived at any time during the past forty-seven years (since the summer of 1977, to be precise, when Defendant

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C., 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), SEC v. Jarkesy, 144 S.Ct. 2117 (June 27, 2024), and Loper Bright Enterprises v. Raimundo, 603 U.S._____, 144 S.Ct. 2244 (June 28, 2024) in application and construction of 11 U.S.C. §110*

participated in an archaeological field school at Eastern New Mexico State University in Portales, when he worked in the Puerco River Valley, and at Salmon and Aztec Ruins in San Juan County, under the late Dr. Cynthia Irwin-Williams).

**160.**   The United States Department of Justice, Antitrust Division, and Federal Trade Commission (FTC), have for the past thirty years actively supported the deregulation of the practice of law, as expressed in about a large number of cases, amicus briefs, opinion letters, and occasional litigation.

**161.**   Defendant Charles Edward Lincoln proposes to introduce all this material and its authors.

**162.**   One of the most recent of such letters from the US DOJ Antitrust Division, dated February 14, 2023, and addressed to the North Carolina General Assembly (Signed by Deputy Assistant Attorney General, Antitrust Division), states (in part) as follows:

> Federal antitrust prohibitions have existed in statutes dating back to 1890. But states, including North Carolina, have maintained *constitutional* prohibitions on monopoly power since the very beginning of our republic. North Carolina's Constitution, adopted in December 1776, makes clear that "monopolies are contrary to the genius of a free state and shall not be allowed."[5] And the North Carolina Supreme Court has reaffirmed that professional licensing restrictions cannot constitute "the creation of a monopoly or special privileges" and instead must be "an exercise of the [state's] police power for the protection of the public against incompetents and impostors."[6] Simply put, justifications for restraints on the delivery of legal services must be rooted in the protection of the public and not in the protection of lawyers from competition.[7]
>
> Because of the importance of legal services to consumers, our economy, and our democracy, the regulation of the practice of law has been an area of interest for the Antitrust Division for decades. The Division has long argued that consumers generally benefit from competition between lawyers and non-lawyers in the provision of a wide range of services.[8]
>
> Although the "practice of law" is largely regulated at the state level, the United States Supreme Court has made clear that federal antitrust law generally applies to the legal profession. [9] Consistent with these principles, the Antitrust Division has brought its own enforcement actions under the federal antitrust laws and obtained

**38**

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C.,* 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), *SEC v. Jarkesy,* 144 S.Ct. 2117 (June 27, 2024), *and Loper Bright Enterprises v. Raimundo,* 603 U.S._____, 144 S.Ct. 2244 (June 28, 2024) *in application and construction of* 11 U.S.C. §110

injunctions against unreasonable restraints in the marketplace for legal services, including unreasonable restraints on competition between lawyers and non-lawyers.[10] The Division has also obtained injunctions against anticompetitive restrictions imposed on the delivery of legal services and anticompetitive activities by bar associations.[11] And the Division regularly files statements of interest and amicus briefs in litigation by other parties.[12]

The Division also regularly shares its expertise by evaluating the likely competitive effects of restrictions on the practice of law in in public comments and in letters responding to requests from relevant stakeholders, including state legislatures, federal agencies, bar associations, and international organizations.

163.    In this same letter, the Deputy Assistant Attorney General Goodlander Provides the following partial list of references to the DOJ and FTC contributions in this field in a series of footnotes:

[8] *See, e.g.,* Letter from the Fed. Trade Comm'n and the U.S. Dep't of Justice to the Task Force of the Model Definition of the Practice of Law, American Bar Ass'n, *Comments on the American Bar Association's Proposed Model Definition of the Practice of Law* (Dec. 20, 2002), https://www.justice.gov/sites/default/files/atr/legacy/2008/03/26/200604.pdf (reaffirming that consumers generally benefit from lawyer-non-lawyer competition); Letter from the Fed. Trade Comm'n and the U.S. Dep't of Justice to the Kansas Bar Ass'n, *Comments on Proposed Definition of the Practice of Law* (Feb. 4, 2005), https://www.justice.gov/atr/comments-kansas-bar-associations-proposed-definition-practice-law (same); Letter from the Fed. Trade Comm'n and the U.S. Dep't of Justice to the Montana Supreme Court, *Comments on Proposed Revisions to the Rules on the Unauthorized Practice of Law* (Apr. 17, 2009), https://www.justice.gov/atr/comments-proposed-revisions-rules-unauthorized-practice-law (same).

[9]  *See Goldfarb v. Virginia State Bar,* 421 U.S. 773, 791 (1975) (holding that activities of state and county bars were not exempt from the Sherman Act on the grounds that "[t]he fact that the State Bar is a state agency for some limited purposes does not create an antitrust shield that allows it to foster anticompetitive practices for the benefit of its members"); *see also Palmer v. BRG of Georgia, Inc.,* 498 U.S. 46 (1990) (*per curiam*) (holding that a market allocation agreement between competing providers of bar review courses violated the Sherman Act).

[10] *See, e.g.*, *United States v. N.Y. County Lawyers Ass'n*, No. 80 Civ. 6129 (S.D.N.Y. 1981) (prohibiting county bar association from restricting the trust and estate services that corporate fiduciaries could provide in competition with attorneys); *United States v. Allen County Bar Ass'n*, Civ. No. F-79-0042 (N.D. Ind. 1980)

**39**

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C.,* 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), **SEC v. Jarkesy,** 144 S.Ct. 2117 (June 27, 2024), **and Loper Bright Enterprises v. Raimundo,** 603 U.S._____, 144 S.Ct. 2244 (June 28, 2024) **in application and construction of** 11 U.S.C. §110

(enjoining county bar association that had restrained title insurance companies from competing in the business of certifying titles); *United States v. County Bar Ass'n*, No. 80-112-S (M.D. Ala. 1980).

[11] *See United States v. Am. Bar Ass'n,* 934 F. Supp. 435, 435 (D.D.C. 1996); *Nat'l Society of Prof'l Engineers v. United States,* 435 U.S. 679 (1978); *United States v. Am. Inst. of Architects,* 1990-2 Trade Cas. (CCH) i/69,256 (D.D.C. 1990); *United States v. Soc'y of Authors' Reps.,* 1982-83 Trade Cas. (CCH) i/ 65,210 (S.D.N.Y. 1982). [12] *See, e.g.*, Brief *Amicus Curiae* of the United States of America and the FTC in *In Re William E. Paplauskas, Jr.*, No. SU-2018-161-M.P. (Sept. 17, 2018); Brief *Amicus Curiae* of the United States of America and the FTC in On Review of ULP Advisory Opinion 2003-2 (July 28, 2003); Brief *Amicus Curiae* of the United States of America in Support of Movants Kentucky Land Title Ass'n *et al.* in *Ky. Land Title Ass'n v. Ky. Bar Ass'n,* No. 2000-SC- 000207-KB (Feb. 29, 2000).

[13] *See, e.g.*, Comment of the Antitrust Division of the Department of Justice, Docket Nos. PTO-P-2022-0027- 0001, PTO-P-2022-0032-0001 (Jan. 31, 2023), https://www.justice.gov/atr/page/file/1567941/download; Submission of the United States to the Competition Committee of the Organisation for Economic Cooperation and Development, *Disruptive Innovations in Legal Services* (June 13, 2016); Letters from the Justice Department and the FTC to the Committee on the Judiciary of the New York State Assembly (Apr. 27, 2007 and June 21, 2006); Letter from the Justice Department and the FTC to the Task Force to Define the Practice of Law in Massachusetts, Massachusetts Bar Ass'n (Dec. 16, 2004). For the Division's letters regarding the practice of law, *see* U.S. DEP'T OF JUSTICE, (last updated Jan. 9, 2023).

[14] Letter from the Fed. Trade Comm'n and the U.S. Dep't of Justice to the Hawaii State Judiciary, *Comments on Proposed Definition of the Practice of Law* (Jan. 25, 2008), https://www.justice.gov/atr/comments-proposed- definition-practice-law.

[15] *See FTC v. Indiana Fed'n of Dentists*, 476 U.S. 447, 459 (1986).

[16] *See, e.g.,* Letter from the Fed. Trade Comm'n and the U.S. Dep't of Justice to the Task Force of the Model Definition of the Practice of Law, American Bar Ass'n*, Comments on the American Bar Association's Proposed Model Definition of the Practice of Law* (Dec. 20, 2002), https://www.justice.gov/sites/default/files/atr/legacy/2008/03/26/200604.pdf (reaffirming that consumers generally benefit from lawyer-non-lawyer competition in the provision of certain legal-related services); Letter from the Fed. Trade Comm'n and the U.S. Dep't of Justice to the Kansas Bar Ass'n*, Comments on Kansas Bar Association's Proposed Definition of the Practice of Law* (Feb. 4, 2005), https://www.justice.gov/atr/comments-kansas-bar-associations-proposed-definition-practice-law (same); Letter from the Fed. Trade Comm'n and the U.S. Dep't of Justice to the Montana Supreme Court*, Comments on Proposed Revisions to the Rules on the Unauthorized Practice of Law* (Apr. 17, 2009),

**40**

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C.,* 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), *SEC v. Jarkesy,* 144 S.Ct. 2117 (June 27, 2024), *and Loper Bright Enterprises v. Raimundo,* 603 U.S.____, 144 S.Ct. 2244 (June 28, 2024) *in application and construction of* 11 U.S.C. §110

https://www.justice.gov/atr/comments-proposed-revisions-rules-unauthorized-practice-law (same).

[17] *See* Fed. Trade Comm'n and U.S. Dep't of Justice, Letter to the Honorable Bill Cook re: HB 436 (June 10, 2016), https://www.justice.gov/atr/file/866666/download.

[18] *See* N.C. Gen. Stat. Ann. § 84-2.2

[19] *See* INSTITUTE FOR THE ADVANCEMENT OF THE AMERICAN LEGAL SYSTEM, THE LANDSCAPE OF ALLIED LEGAL PROFESSIONAL PROGRAMS IN THE UNITED STATES (Nov. 2022), https://iaals.du.edu/sites/default/files/documents/publications/landscape_allied_legal_professionals.pdf

**164.** Upon withdrawal of the Order of Reference, in the United States District Court, Defendant Charles Edward Lincoln, III, proposes in his counterclaim for deregulation of the practice of law, and the inconsistency of 11 USC §110 with Federal Antitrust Laws, to present the full panoply of these opinion letters and call attorneys for the Antitrust Division and FTC to testify regarding such matters as raised in these letters, including but not limited to the case of Jerry O'Neil in Montana.

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C., 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), SEC v. Jarkesy, 144 S.Ct. 2117 (June 27, 2024), and Loper Bright Enterprises v. Raimundo, 603 U.S._____, 144 S.Ct. 2244 (June 28, 2024) in application and construction of 11 U.S.C. §110*

## RELIEF REQUESTED AND THE BASIS THEREFOR

**165.**    By this Motion, Movant Defendant Charles Edward Lincoln, III, seeks entry of an order, pursuant to 28 U.S.C. Section 157(d), Bankruptcy Rule 5011 and local bankruptcy rule 5011-1, withdrawing the reference to the Bankruptcy Court of the Petitioner/Plaintiff Disciplinary Board's Petition for Injunctive Relief for the Unauthorized Practice of Law (which cites Ilene J. Lashinsky's Complaint for Sanctions and Injunctive Relief Under 11 U.S.C.§110 and Injunctive Relief Under NMSA §§362-2-27 and 36-2-28.1 at page 4, paragraph 7) as a key element of the relief nominally sought in the Supreme Court of New Mexico (but in fact sought by the Disciplinary Board in proceedings to be held before the Disciplinary Board).

**166.**    Because the April 3 Complaint filed in the U.S. Bankruptcy Court and the April 8 Petition filed in the Supreme Court are identical, they should be consolidated and withdrawn together to the United States District Court for Article III adjudication and the resolution of important constitutional questions regarding new and important developments in the Supreme Court's treatment of federal administrative, antitrust, bankruptcy and civil rights law.

**167.**    Federal district courts have original and exclusive jurisdiction of civil cases under Title 11 and original but not exclusive jurisdiction of proceedings arising under Title 11 or arising in or related to cases under Title 11 (28 U.S.C. § 1334(a) and (b)). District courts can refer these cases and proceedings to the bankruptcy court within that district (28 U.S.C. § 157(a)).

**168.**    The United States District Court for the District of New Mexico ("**District Court**") exercised the authority granted by Section 157(a) and entered an order dated March 19, 1992 ("**Order of Reference**"), referring all cases under Title 11 or proceedings arising in related to cases

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C.,* 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), *SEC v. Jarkesy,* 144 S.Ct. 2117 (June 27, 2024), *and Loper Bright Enterprises v. Raimundo,* 603 U.S.____, 144 S.Ct. 2244 (June 28, 2024) *in application and construction of 11 U.S.C. §110*

under Title 11 to the United States Bankruptcy Court for the District of New Mexico ("**Bankruptcy Court**").   Defendant Charles Edward Lincoln proposes to withdraw this order in his two cases.

### *Mandatory Withdrawal of the Reference*

**169.**    On a motion of a party, the District Court shall withdraw the reference of the proceeding to the Bankruptcy Court if the District Court determines that resolution of the proceeding requires consideration of both bankruptcy and other non-bankruptcy federal laws that regulate organizations or activities affecting interstate commerce (28 U.S.C. § 157(d); see *SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff)*, 486 B.R. 579, 582 (S.D.N.Y. 2013)).

**170.**    In this case, Plaintiff seeks to enforce 11 U.S.C. 110, together with certain New Mexico statutes relating to the unauthorized practice of law, solely for monopolistic, anti-competitive purposes, essentially, because Defendant was "too effective" in supporting Ms. Kathleen Anne Dudley in an unusual strategy which provided her with an unusual advantage in her New Mexico State Court litigation.

**171.**    Consideration of the antitrust statutes and evolving jurisprudence of administrative authority and deference, especially to non-sovereign administrators such as the U.S. Trustee, is now and will be absolutely essential to Defendant's Motion to Dismiss, Answer and Counterclaims to the Plaintiff's Complaint.

**172.**    As must be required for Mandatory Withdrawal of the Reference, consideration of these non-bankruptcy statutes and laws is substantial and material because it will force the court not

**43**

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C.,* 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), *SEC v. Jarkesy,* 144 S.Ct. 2117 (June 27, 2024), *and Loper Bright Enterprises v. Raimundo,* 603 U.S.____, 144 S.Ct. 2244 (June 28, 2024) *in application and construction of* 11 U.S.C. §110

merely to apply but to interpret and implement recent holdings which have altered the non-bankruptcy law[10].

173.    Defendant in this case seeks to challenge 11 U.S.C. §110 and the same New Mexico Statutes as violative of the Sherman Act, 15 U.S.C. §§1 et seq., and other antitrust laws and doctrines, as applied and construed by *North Carolina Board of Dental Examiners v. F.T.C.,* 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015).

174.    Defendant Charles Edward Lincoln's defense to Ilene J. Lashinsky's complaint rests upon premises of antitrust and administrative law that regulate organizations or activities affecting interstate commerce by prohibiting anticompetitive enforcement of laws under false color of "consumer protection".

### SUMMARY OF GROUNDS FOR WITHDRAWAL OF REFERENCE

175.    For all the above and foregoing reasons, resolution of the Disciplinary Board's quasi-judicial, quasi-administrative complaint, filed by Christine E. Long, like Plaintiff Ilene J. Lashinsky's Complaint in the first-filed adversary complaint requires substantial and material consideration and interpretation of the state regulation of legal and political speech and association,

---

[10]    See *City of N.Y. v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991); *Facebook, Inc. v. Vachani*, 577 B.R. 838, 846 (N.D. Cal. 2017); *Picard v. HSBC Bank PLC*, 450 B.R. 406, 409 (S.D.N.Y. 2011); *Pension Benefit Guar. Corp. v. Continental Airlines, Inc. (In re Continental Airlines)*, 138 B.R. 442 (D. Del. 1992); see also *Matter of Vicars Ins. Agency, Inc.*, 96 F.3d 949, 954 (7th Cir. 1996) (taking the view that mandatory withdrawal is warranted if the non-bankruptcy issues "require the interpretation, as opposed to mere application of the [non-bankruptcy law]"). In this case, the construction of non-bankruptcy law under *North Carolina State Board of Dental Examiners v. FTC* and *Loper Bright Enterprises v. Raimundo* require the interpretation of major new developments in non-bankruptcy law of great and significant national importance.

**44**

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C.,* 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), *SEC v. Jarkesy*, 144 S.Ct. 2117 (June 27, 2024), *and Loper Bright Enterprises v. Raimundo,* 603 U.S.____, 144 S.Ct. 2244 (June 28, 2024) *in application and construction of* 11 U.S.C. §110

in light, of recent major shifts in the constitutional treatment and analysis of administrative and antitrust law, therefore, mandatory withdrawal of the reference to the Bankruptcy Court is required.

176.    The Defendant's Answer and Counterclaim is premised upon federal First Amendment Constitutional and Antitrust laws, that regulate (and make illegal) all organizations or activities affecting interstate commerce by prohibiting contracts and combinations in the form of trusts or otherwise in restraint of trade or commerce among the several States or with foreign nations, including but not limited to governmental organizations and laws which seek to create monopolistic practices without ACTIVE legislative supervision under the so-called "Parker Doctrine." *North Carolina Board of Dental Examiners v. F.T.C.,* 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015); *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943).

177.    Resolution of the Petitioner/Plaintiff Disciplinary Board's claims/causes of action in her Complaint for Sanctions and Injunctive Relief thus requires substantial and material consideration and interpretation of both bankruptcy and Antitrust, as well as Constitutional, First and Ninth Amendment Laws, and therefore, mandatory withdrawal of the reference to the Bankruptcy Court is required.

**In the alternative, Defendant hereby moves for**
***Discretionary Withdrawal of the Reference***

178.    Additionally, the district court may permissively withdraw any case or proceeding on its own motion or on timely motion of any party, for cause shown*. **In re Premiere Holdings of Texas, L.P.**,* 277 B.R. 332 (2002), *Vieira v. AGM, II, LLC*, 366 B.R. 532 (2007)(supra).

179.    Among other things, the U.S. District Court should decide whether, as a matter of federal law, the practice of law, or the "unauthorized practice of law" can be constitutionally defined.

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C., 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), SEC v. Jarkesy, 144 S.Ct. 2117 (June 27, 2024), and Loper Bright Enterprises v. Raimundo, 603 U.S.____, 144 S.Ct. 2244 (June 28, 2024) in application and construction of 11 U.S.C. §110*

**180.**    If the District Court determines that mandatory withdrawal of the reference is not warranted, cause exists to withdraw the reference of Petitioner/Plaintiff Disciplinary Board's aforementioned Petition for Injunctive Relief for the Unauthorized Practice of Law

**181.**    The District Court can withdraw the reference, in whole or in part, of any case or proceeding, on the District Court's own motion or on a timely motion of a party for cause (28 U.S.C. § 157(d)).

**182.**    Cause is not defined, but can be established if withdrawal of the reference of the adversary action is requested timely.

**183.**    (See *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101 (2d Cir. 1993), cert dismissed, 511 U.S. 1026 (1994); *In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990); *Holber v. Portnoy (In re Portnoy)*, 2017 WL 3141186, at *2 (E.D. Pa. July 24, 2017)).

**184.**    Here, cause exists because Defendant has filed this Motion as his first substantive motion in the case in a timely and expeditious matter.

**185.**    The Deputy Counsel Christine E. Long, on behalf of the Petitioner/Plaintiff Disciplinary Board only filed her Complaint on April 8, 2024, and Defendant's undersigned counsel entered his appearance in this case on July 1, 2024, with pro hac vice status approved finally on July 10, 2024.

**186.**    In addition, very few issues have been adjudicated either in this Removed case or in its first filed companion case filed by US Trustee Ilene J. Lashinsky; in fact, the only adjudications that have taken place were the order granting the 7052 Motion which forms part of the Plaintiff's complaint, and Judge Robert H. Jacobvitz' Order of April 4, 2024, dismissing Kathleen Anne

**46**

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C.*, 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), *SEC v. Jarkesy*, 144 S.Ct. 2117 (June 27, 2024), *and Loper Bright Enterprises v. Raimundo*, 603 U.S._____, 144 S.Ct. 2244 (June 28, 2024) *in application and construction of* 11 U.S.C. §110

Dudley's Chapter 11 Bankruptcy case and ordering the prosecution of this adversary action against Defendant Charles Edward Lincoln, III.

187.    These factors weigh heavily in favor of withdrawal because the bankruptcy case is relatively new/few issues have been adjudicated/few opinions have been rendered/few orders have been entered, and everything that has happened centers around Robert H. Jacobvitz' and Ilene J. Lashinsky's interest in proceeding against Charles Edward Lincoln, III.

188.    As a result, even if the Court determines that mandatory withdrawal of the reference is not required, good cause exists to warrant discretionary withdrawal of the reference.

### CONCLUSION AND PRAYER FOR RELIEF

189.    The conditions which must be met before mandatory withdrawal is appropriate are three-fold. First, the person seeking withdrawal must be a party to the proceeding.

190.    Movant herein, Charles Edward Lincoln, III is the sole defendant in two closely related, nearly identical cases arising from the identical set of facts and nearly identical set of allegations.

191.    Defendant has moved for consolidation of these two cases in Bankruptcy Court, but it is Christine E. Long, counsel for the second case brought by the Disciplinary Board and removed from the (nominal) jurisdiction of the Supreme Court of New Mexico (in fact, the Disciplinary Board sits as judge, jury, and executioner), whose arguments confirm agreement that (even only the rules of the District of New Mexico, that require Bankruptcy related removals go FIRST to Bankruptcy Court), ONLY AN ARTICLE III JUDGE CAN HERE THE IMPORTANT NON-BANKRUPTCY FEDERAL QUESTIONS WHICH THIS CASE SO CLEARLY RAISES.

**47**

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C.,* 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), *SEC v. Jarkesy,* 144 S.Ct. 2117 (June 27, 2024), *and Loper Bright Enterprises v. Raimundo,* 603 U.S._____, 144 S.Ct. 2244 (June 28, 2024) *in application and construction of* 11 U.S.C. §110

Case 24-01023-j    Doc 13    Filed 09/26/24    Entered 09/26/24 10:46:04 Page 47 of 51

**192.** Second, the motion to withdraw the reference must be timely filed (this motion is filed at the beginning of the adversary proceeding, nothing substantive having been ruled on except the undersigned counsel's appearance pro hac vice); and

**193.** The second requirement of timeliness is fulfilled because this motion to withdraw the reference has been filed immediately after the filing of the Adversary Proceeding.

**194.** Third, resolution of the proceeding must require consideration of both the Bankruptcy Code and non-bankruptcy federal statutes regulating interstate commerce. *In re Baldwin-United Corp.,* 57 B.R. 751, 14 Bankr. Ct. Dec. (CRR) 361 (S.D. Ohio 1985).

**195.** The third requirement is that resolution of the proceeding requires consideration of both bankruptcy law and non-bankruptcy federal laws regulating interstate commerce and competition.

**196.** This has been the focal subject of Defendant's argument above.

**197.** Most courts have held this requires that the proceeding "could not be resolved without 'substantial and material consideration' of the non-bankruptcy federal law. *In re Vicars Ins. Agency Inc.,* 96 F.3d 949, 952 (7th Cir. 1996).

**198.** Defendant Charles Edward Lincoln, III, thus submits that this gravamen is satisfied here where multiple issues in federal law constitute the full scope of his defense in both cases.

**199.** The most important Federal questions to be resolved in this case arise from (1) the enumerates and fundamental rights (*Carolene Products,* Footnote 4) implications of regulating the speech and association concerning the law, especially in light of DOJ-Antitrust Division and FTC national policy statements, (2) the problem of civil rights removal and whether it should be treated as a race-based affirmative action program or applied and construed according to the plain letter

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C.,* 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), *SEC v. Jarkesy,* 144 S.Ct. 2117 (June 27, 2024), *and Loper Bright Enterprises v. Raimundo,* 603 U.S.____, 144 S.Ct. 2244 (June 28, 2024) *in application and construction of* 11 U.S.C. §110

of the law, (3) the application and construction of **Parker** Doctrine state-action exemption to antitrust laws for the expressive and communicative aspects of the practice of law and right to petition, (4) the identity, role, and function of the US Trustee in Bankruptcy after **Loper Bright Enterprises v. Raimondo** and (5) the availability of a trial-by-jury after a complaint for monetary administrative sanctions, after **SEC v. Jarkesy.**

**200.**    WHEREFORE, for the reasons set forth herein, Defendant Charles Edward Lincoln, III, respectfully requests that this Court enter an order, substantially in the form attached hereto, granting the relief requested in this Motion and withdrawing the reference of the Petition for Injunctive Relief for the Unauthorized Practice of Law against Charles Edward Lincoln, III, to the Bankruptcy Court and further referring both Defendant's Motion to Consolidate and the Plaintiff's Motion to Remand to U.S. District Court for mandatory, exclusive determination..

**201.**    Defendant and Movant Charles Edward Lincoln, III, asks, moves, and prays this Court to grant this present motion to withdraw the reference in Bankruptcy and direct that the Bankruptcy Court Clerk transfer all pleadings related to these proceedings to the Clerk for the District Court.

I certify my electronic signature below.

Respectfully submitted,

Monday, September 23, 2024

By: **_/s/ Yancey N. Burnett/s/_**
**Yancey N. Burnett (BURNY5696)**
**Attorney for the Defendant**
**Charles Edward Lincoln, III**
**27154A Pollard Road**
**Daphne, Alabama 36526**
**Telephone: (251) 662-7500**
**Cell Phone: (251) 721-3179**
**Email: ynburnett@yahoo.com**

49

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C.,* 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), *SEC v. Jarkesy,* 144 S.Ct. 2117 (June 27, 2024), *and Loper Bright Enterprises v. Raimundo,* 603 U.S.____, 144 S.Ct. 2244 (June 28, 2024) *in application and construction of* 11 U.S.C. §110

## CERTIFICATE OF SERVICE

I certify that on Monday, September 23, 2024, I served a true and correct copy of the above-and-foregoing Defendant Charles Edward Lincoln, III's, Motion to Withdraw the Reference in bankruptcy, with Reservation of Rights, on each of the following:

Daniel A. White, Trial Attorney, at dan.white@usdoj.gov
Mary L. Johnson (USTP), at Mary.L.Johnson@usdoj.gov
and
Christine E. Long, Deputy Disciplinary Counsel, clong@nmdisboard.org

Monday,
September 23, 2024

**By: _/s/ Yancey N. Burnett/s/_**
**Yancey N. Burnett (BURNY5696)**
**Attorney for the Defendant**
**Charles Edward Lincoln, III**
**27154A Pollard Road**
**Daphne, Alabama 36526**
**Telephone: (251) 662-7500**
**Cell Phone: (251) 721-3179**
**Email: ynburnett@yahoo.com**

**50**

***Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C.,*** 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), ***SEC v. Jarkesy***, 144 S.Ct. 2117 (June 27, 2024), ***and Loper Bright Enterprises v. Raimundo,*** 603 U.S.____, 144 S.Ct. 2244 (June 28, 2024) ***in application and construction of*** 11 U.S.C. §110

**51**

*Defendant's Motion to Withdraw the Reference in Bankruptcy in order to challenge the Removed Petition against him for Article III adjudication, application, construction, and interpretation of North Carolina Board of Dental Examiners v. F.T.C.,* 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015), *SEC v. Jarkesy,* 144 S.Ct. 2117 (June 27, 2024), *and Loper Bright Enterprises v. Raimundo,* 603 U.S._____, 144 S.Ct. 2244 (June 28, 2024) *in application and construction of 11 U.S.C. §110*