# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

In Re: Kathleen Anne Dudley,                                  Case No.: 24-10034-j11
      Debtor.

**************************************************************************

**Disciplinary Board of the Supreme Court**
**of the State of New Mexico,**                    **United States Bankruptcy Court**
    **Petitioner/Plaintiff,**                      **Adversary No. 24-01023-j**

**v.**                                             **United States District Court Case**
                                                   **No. 24-cv-00962-DHU-GBW**

**Charles Edward Lincoln, III,**
    **Respondent/Defendant.**

## PRELIMINARY OBJECTIONS TO [JULY 1, DOCUMENT 5] PROPOSED FINDINGS AND RECOMMENDED DISPOSITION:
### DEMAND FOR EVIDENTIARY HEARING AND JURISDICTIONAL DISCOVERY

**1.**    Substantial discovery regarding jurisdictional predicates should be allowed on all issues in this case prior to any ruling either on the Plaintiff's Motion to Remand, and because such discovery concerns primarily non-bankruptcy Federal law, it should be conducted in District Court. The sole "bankruptcy related" question here is whether the U.S. Trustee's complaint for injunction and administrative sanctions under 11 U.S.C. §110 is really a **"core" bankruptcy proceeding** or not[1].

---

[1]    Defendant originally filed a "Request for Hearing" on November 1, 2024 [Document 19 in case 1-24-ap-01023-j (2024)]. Defendant had prepared a corrected and amended version of this Motion, including cross-filing in 1-24-cv-00962-DHU-GBW on November 4, 2024, but his former counsel, Mr. Yancey Neal Burnet, simply failed to file it (and then moved to withdraw as counsel on November 26 and December 16, 2024, then July 8 and finally July 15, 2025

    Since the Chief Magistrate Judge either did not review or ignored Document 19 in his July 1, 2025, Proposed Findings and Recommended, Defendant's present Motion incorporates that original motion [Document 19] as Exhibit A.

    The procedural context of this case has now changed in light of the significant errors and misunderstandings in Chief Magistrate Judge Gregory B. Wormuth's July 1, 2025, "Proposed Findings and Recommended Disposition," subject to, and without waiving, his rights to file further objections on Wednesday, July 30, 2025, and even to amend and supplement those objections afterwards.

*Defendant Charles Edward Lincoln's Preliminary Objections to [July 1, Document 5] Proposed Findings and Recommended Disposition with Demand for Evidentiary Hearing and Motion for 120 Days to Conduct Jurisdictional Discovery*

2.      As Chief Magistrate Judge Gregory B. Wormuth very correctly noted:

**…the controversy Defendant has attempted to remove to Bankruptcy Court is neither core nor non-core—it is not a bankruptcy matter at all.**

District Court Case 1:24-cv-00962-DHU-GBW, Document 5, Filed 07/01/25, Page 6-7 of 8, BK Court Case 24-01023-j, Doc 25, Filed 07/08/25, Entered 07/08/25 11:05:40 Page 6-7 of 8

3.      While Defendant fundamentally agrees with the Court on this one isolated point, but OBJECTS that the Court appears otherwise completely to have missed the entire historical context of the Disciplinary Board's Petition, which was to mirror and emulate a Bankruptcy Adversarial Proceeding based on the U.S. Trustee's contention that this IS a core bankruptcy proceeding.

4.      Defendant OBJECTS that filing this case first in Bankruptcy Court and then filing a Motion to Withdraw the reference was a matter of necessity, not frivolity.

5.      Defendant removed these proceedings stating:

**The primary and ultimate purposes of removal in this case is to coordinate and consolidate two closely related cases arising from the same common nucleus of operative fact and law, first filed in the U.S. Bankruptcy Court for the District of New Mexico, and then this present case filed by a group of legal industry insiders denominated as "the Disciplinary Board" in the Supreme Court of New Mexico.**

---

The Court does not, at present, appear to be taking Defendant's contentions in this case at all seriously.

Because the Court in its "Proposed Findings" ignored Defendant's November 1, 2024 Request for Hearing, [Document 19 in Bankruptcy Court, the Court on July 1 made the following unwarranted inference that the SOLE subject of the Defendant's Motion to Withdraw was the Plaintiff's Motion for Remand:

Second, the [only?] motion Defendant seeks to put before the District Court is the remand motion. The ruling on that matter will not resolve any matter beyond whether Defendant's attempt to remove the state disciplinary petition to the United States Bankruptcy Court was proper.

District Court Case 1:24-cv-00962-DHU-GBW, Document 5, Filed 07/01/25, Page 7 of 8, BK Court Case 24-01023-j, Doc 25, Filed 07/08/25, Entered 07/08/25 11:05:40 Page 7 of 8

**2**

*Defendant Charles Edward Lincoln's Preliminary Objections to [July 1, Document 5] Proposed Findings and Recommended Disposition with Demand for Evidentiary Hearing and Motion for 120 Days to Conduct Jurisdictional Discovery*

Charles Edward Lincoln, III, Notice of Removal Case 24-01023-j, Doc 1, Filed 08/09/24, Entered 08/09/24, 09:24:07, Pages 1-2 of 8

6.      **This litigation originated in US Bankruptcy Court by the filing of US Trustee Ilene J. Lashinsky's Complaint and Amended Complaint insistently alleging a "core" matter of bankruptcy concern (Case 24-ap-01011-j, UST Original Complaint, Doc 1, §5, page 2 of 18, Filed & Entered 04/03/24, "this is a core proceeding under 28 U.S.C. §157(b)," restated in the UST's Amended Complaint, Doc 60, Filed & Entered 03/03/25, 10:06:43 Page 2 of 17, ¶5).**

7.      The Disciplinary Board's Petition filed April 8, 2024, which Defendant has removed to this Court, where it has been frozen ever since, was a mere copycat of Ilene J. Lashinsky's Complaint.

8.      The Disciplinary Board's April 8, 2024, Petition does not add one single fact or legal contention but entirely duplicates the April 3, 2024, Complaint with one exception: the Disciplinary Board omits any reference to 11 U.S.C. §110 or the phrase "bankruptcy preparer."

9.      Thus, it is manifestly unjust to require two trials in two forums (more properly "fora").

10.     Consolidation normally requires a second filed action be consolidated with the first.

**OBJECTION: DEMAND FOR EVIDENTIARY HEARING & DISCOVERY**

11.     **Prior to ruling on his Motion to Withdraw the Order of Reference, or his opposition to Plaintiff's Motion to Remand, Defendant Charles Edward Lincoln, III, moves and requests that this Court order and schedule an evidentiary hearing and also enter a scheduling order to permit jurisdictional discovery prior to any hearing on remand, in part on the grounds that no discovery will be allowed upon remand[2] to the Disciplinary Board,**

---

[2]      **DEFENDANT SEPERATELY OBJECTS THAT HIS COURT FAILED TO TAKE NOTICE OF HIS DISABILITY DUE TO THE WITHDRAWAL OF COUNSEL, AND THE**

*Defendant Charles Edward Lincoln's Preliminary Objections to [July 1, Document 5] Proposed Findings and Recommended Disposition with Demand for Evidentiary Hearing and Motion for 120 Days to Conduct Jurisdictional Discovery*

3

**COURT'S LONG DELAY IN ALLOWING ANY SUBSTITUTION---even including Defendant's Motion to Proceed Pro se/In Propria Persona.**

To reiterate: this motion was originally prepared for filing (and an earlier draft filed and entered November 1, 2024, see Exhibit A) in Bankruptcy Adversary proceeding 24-ap-01023-j on November 4, 2024, when Defendant was represented by his former counsel Mr. Yancey Neal Burnett. Mr. Burnett never filed the corrected Motion but instead moved to withdraw as counsel on November 26, 2024 [Doc 21], amending his Motion to Withdraw on December 16, 2024 [Doc 23]. This Motion was never granted, so that Yancey Neal Burnett was still counsel of record on July 8, 2025, when this Court entered a "COPY of Proposed Findings and Recommended Disposition" on the Bankruptcy Docket, after filing the same July 1, 2025, in 24-cv-00962-DHU-GBW. Mr. Burnett neither informed Defendant Lincoln nor Lincoln's counsel Michael L. Tusken in the original ("parallel source") case 24-ap-01011-j.

This is extremely important aspect of the procedural history of this case, which effectively froze Defendant Lincoln unable to move (literally, unable to file any motion or pleading at all), operated as a DE FACTO STAY OF PROCEEDINGS---and it was **DENIAL OF DUE PROCESS** that the Magistrate FAILED TO GIVE NOTICE that he was taking the matter under consideration. Furthermore, Judge Jacobvitz in Bankruptcy had imposed a special but carefully monitored court-ordered stay of proceedings in 24-ap-01011-j [see Docs 21, 27, 28, 36, 38, 40, 55, and 81]. Defendant Charles Edward Lincoln, III, while effectively unrepresented, reasonably assumed that Cases 24-ap-01023-j, 24-cv-00949-DHU-KK and the present case 24-cv-00962-DHU-GBW were also stayed by extension or implication.

The Honorable Gregory W. Wormuth absolutely ignored this "frozen in time" status of case 24-cv-00962-DHU-GBW (frozen by a combination of Court orders and inability to file due to the status of counsel) when he wrote his "Proposed Findings and Recommended Disposition:"

> Unsurprisingly, the State Disciplinary Board objects to the removal of their disciplinary proceeding to federal court and has filed a Motion to Remand. *Id., doc. 5.* With additional briefing as ordered by the Bankruptcy Court, the remand motion is fully briefed. *Id., docs. 12, 18.* Despite having affirmatively sought out the jurisdiction of the United States Bankruptcy Court for his state disciplinary matter, Defendant now "moves the United States District Court for the District of New Mexico for an order withdrawing the reference to the Bankruptcy Court of Adversary Proceeding No. 24- 1023-j in this Petition brought against him by the NM Disciplinary Board." *Id., doc. 13* at 1. In short, Defendant argues that the United States District Court for the District of New Mexico should rule on the remand motion rather than permitting the Bankruptcy Court to resolve it.

Case 24-01023-j Doc 25, Filed 07/08/25, Entered 07/08/25 11:05:40 Page 3 of 8
Case 1:24-cv-00962-DHU-GBW, Document 5, Filed 07/01/25, Page 3 of 8

This paragraph, and others in his proposed findings, suggested that the ONLY issue in the case was whether to remand based on Civil Rights Removal or not.

*Defendant Charles Edward Lincoln's Preliminary Objections to [July 1, Document 5] Proposed Findings and Recommended Disposition with Demand for Evidentiary Hearing and Motion for 120 Days to Conduct Jurisdictional Discovery*

**either as to Bankruptcy or Civil Rights issues, and both Due Process of Law and Equal Protection under the laws will effectively be nullified and denied.**

### OBJECTION TO DISREGARD OF PLAINTIFF'S DEFAULT/FAILURE TO RESPOND TO MOTION TO WITHDRAW

12.     As a preliminary matter, as the Court has recognized in Chief Magistrate Judge Wormuth's Findings and Recommended Disposition (Case No. 24-cv-00962 DHU-GBW Document 5, Filed 07/01/25, Pages 1 of 8, Footnote 1), the Petitioner/Plaintiff Disciplinary Board has still not responded to the Defendant's [Doc 14] Motion to Withdraw the Order of Reference in this case filed September 26, 2024.

13.     Defendant objects to the highly tone of prejudicial favoritism shown [in the July 1, 2025, Document 5 "Proposed Findings and Recommended Disposition"] to the Disciplinary Board of the Supreme Court of New Mexico on the pretext that "the Motion implicates the internal administration of court matters." (Document 5, Footnote, 1, Supra).

14.     Defendant is not sure how or why this Disciplinary Proceeding, or Defendant's Defense and potential counterclaims to it, implicates the internal administration of court matters." Accordingly, Defendant OBJECTS and MOVES for CLARIFICATION of this POINT.

---

But in fact, Defendant Charles Edward Lincoln, III, had, as already stated, moved to withdraw the ENTIRE DISCIPLINARY CASE TO DISTRICT COURT, on the grounds that the combination of the US Trustee's Complaint and the Disciplinary Board's Petition was itself A CONCERTED INSIDER ORCHESTRATED MONOPOLISTIC ATTEMPT TO SUPPRESS COMPETITION WITH THE STATE CONTROLLED AND STATE CENSORED BAR. Chief Magistrate Judge Wormuth also ignored the substance of Bankruptcy Removal and the identical subject-matter of 24-ap-01011-j and 24-ap-01023-j in Bankruptcy Court, and the just need for consolidation.

*Defendant Charles Edward Lincoln's Preliminary Objections to [July 1, Document 5] Proposed Findings and Recommended Disposition with Demand for Evidentiary Hearing and Motion for 120 Days to Conduct Jurisdictional Discovery*

15.     Dripping with unwarranted sarcasm, and obviously not realizing (either that or ignoring, and refusing to acknowledge) how this case started at all, the Chief Magistrate Judge writes:

> Finally, it would be curious to permit the litigant who attempted to remove a matter to the United States Bankruptcy Court to then move it to another court. ***See In re Orion Pictures Corp.,*** 4 F.3d 1095, 1101 (2d Cir. 1993) ("prevention of forum shopping" is another consideration for discretionary withdrawal).

District Court Case 1:24-cv-00962-DHU-GBW, Document 5, Filed 07/01/25, Page 7 of 8, BK Court Case 24-01023-j, Doc 25, Filed 07/08/25, Entered 07/08/25 11:05:40 Page 7 of 8

16.     Accordingly, Defendant OBJECTS TO THE DISREGARD OF PLAINTIFF'S PROCEDURAL DEFAULT and so reiterates his contention that the motion to withdraw the order of reference should be granted forthwith and this entire case, including this motion to remand, should be referred to the United States District Court for further briefing, and to supervise the jurisdictional discovery sought herein below.

17.     On August 29, 2024, the Bankruptcy Court (Judge Robert H. Jacobvitz] entered its "Order Resulting from Scheduling Conference" [Doc 10, page 2 of 3, @17:27:28] that same day, whose third and final numbered paragraph read:

> **Deadline to Request an Evidentiary Hearing. If either party wishes to present evidence on the Motion for Remand and/or Abstention, the deadline to file a request for evidentiary hearing is November 1, 2024. If such a request is made, the Court will enter a scheduling order setting a final evidentiary hearing and related deadlines. If no request for evidentiary hearing is made timely, the Court will consider the Motion for Remand and/or Abstention under advisement.**

18.     Removal and withdrawal of the order of reference in the two nearly identical cases filed in two different courts against Charles Edward Lincoln, III, (24-ap-01011-j and 24-ap-01023-j) both depend on the evaluation of issues arising under Federal Civil Rights law (especially 14th

*Defendant Charles Edward Lincoln's Preliminary Objections to [July 1, Document 5] Proposed Findings and Recommended Disposition with Demand for Evidentiary Hearing and Motion for 120 Days to Conduct Jurisdictional Discovery*

Amendment Equal Protection and due process guarantees) including but not limited to the right to raise a defense and counterclaim to a complaint which is "neither civil nor criminal."

19.     Paragraph 2 of the Bankruptcy Court's (Judge Jacobvitz') same "Order Resulting" [Doc 10, page 2] filed August 29, 2024, mandated briefing "at a minimum":

> **a) Whether 28 U.S.C. § 1443 applies to removal of actions to the bankruptcy court;**
> **b) Whether 28 U.S.C. § 1443 is limited to civil rights issues that relate to racial equality or is broader, and, if broader, whether it is broad enough to cover the issues raised in this removed adversary proceeding; and**
> **c) Whether the exception to removal contained in 28 U.S.C. § 1452(a) for "civil action[s] by a governmental unit to enforce such governmental unit's police or regulatory power" applies to the removal resulting in commencement of this adversary proceeding.**

**20.**     Each of these three required issues addresses matters requiring jurisdictional discovery, in particular, starting with discovery concerning the nature and structure of the disciplinary board, and its record of protecting individual rights and civil liberties, which relate to factors arising under this court's order for briefing, starting with Doc 10, paragraph 2, page 2, parts b and c.

**21.**     Defendant contends that the questions underlying Civil Rights Removal issue under 28 U.S.C. §1443 take priority and require even more jurisdictional discovery prior to ruling on remand than Bankruptcy Removal under 28 U.S.C. §1452, although the question whether the Disciplinary Board is a "governmental police or regulatory" organ, and if so how it operates, functions as a jurisdictional matter subject to discovery under both §§1443 and 1452.

**7**

*Defendant Charles Edward Lincoln's Preliminary Objections to [July 1, Document 5] Proposed Findings and Recommended Disposition with Demand for Evidentiary Hearing and Motion for 120 Days to Conduct Jurisdictional Discovery*

## DEFENDANT'S RIGHTS TO EQUAL PROTECTION WILL INEVITABLY BE DENIED BY THE VERY ACT OF BRINGING DEFENDANT TO TRIAL IN STATE COURT
## (IF THE DISCIPLINARY BOARD IS REALLY A COURT AT ALL:

22.    DEFENDANT OBJECTS TO THE "PROPOSED FINDINGS AND PROPOSED DISPOSITION" entered July 1 as premature, on the grounds that Jurisdictional Discovery is absolutely essential in this case to explore both bankruptcy and civil rights removal.  Such discovery cannot happen after remand due to the nature of the "state court in question."  Defendant asks for discovery concerning the serious constitutional questions regarding the availability of due process and equal protections of the law in the New Mexico Disciplinary Procedures as a Court before the Disciplinary Board as prosecutor under Disciplinary Board Rules (claimed to be neither criminal nor civil in nature?).

23.    Defendant OBJECTS and submits that he will be denied both due process and the equal protection of the laws before the Disciplinary Board so that this case constitutes one of those:

> **. . . . rare situations where it can be clearly predicted  by reason of operation of pervasive and explicit state  or federal law that these rights will inevitably be denied by very act of bringing defendant to trial in state court. 28 U.S.C.A. § 1443(1).**

*Greenwood v. Peacock*, 384 U.S. 808, 828, 83 S.Ct. 1800, 1812, 16 L.Ed.2d 944 (1966).

24.    The common theme between 24-ap-01011-j and 24-ap-01023-j is that to give any service, or  perform any legal work for another person without a state bar license puts Charles Edward Lincoln, III, or in fact any defendant before the Disciplinary Board, in a special and highly disfavored class.

*Defendant Charles Edward Lincoln's Preliminary Objections to [July 1, Document 5] Proposed Findings and Recommended Disposition with Demand for Evidentiary Hearing and Motion for 120 Days to Conduct Jurisdictional Discovery*

25.     Defendant Lincoln objects that the status of a defendant before the Disciplinary Board as a "non-judicial, non-due process Court" is equivalent to, or worse than, that of a recently emancipated ex-slave in the reconstruction south, see discussion of race and "Whiteness" below), whether under "Unauthorized Practice of Law" statutes or 11 U.S.C. §110, against whom both the U.S. Trustee and the Disciplinary Board as "industry insiders", a pervasive and explicit state and/or federal law that his rights will be denied by the very act of bringing him to trial in a state court.

26.     As for part (a) of the Court's August 29 instructions, even Plaintiff Ilene J. Lashinsky's proposed amended complaint persists in the contention that **11 U.S.C. §110 may be properly defined and constituted as a "core bankruptcy matter"**, and this too is a **JURISDICTION QUESTION OPEN to FACTUAL CHALLENGE and DISCOVERY** under **28 U.S.C.§157**.

### WHAT is the DISCIPLINARY BOARD of the SUPREME COURT of NEW MEXICO?

27.     Defendant Lincoln further OBJECTS TO THE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION ENTERED JULY 1, 2025,  that remand to the Disciplinary Board of the Supreme Court of the State of New Mexico (as a "Court") for Trial by the Disciplinary Board of the State of New Mexico (as Judges and Jury) under charges prosecuted by the Deputy Disciplinary Counsel for the Petitioner Disciplinary Board of the New Mexico Supreme Court will effectively deny him anything but a "show trial" and a farcical, nugatory forum in which he will be utterly denied any real opportunity to defend himself (see *In Matter of Convisser*, 148 N.M. 732, 242 P.3d 299 (July 13, 2010-NMSC-037) and discussion below.

28.     A thoroughgoing examination of the history of Disciplinary Board proceeding is required, and in particular the origins and causal relationship between the Disciplinary Board and the US Trustee Ilene J. Lashinsky---did they plan this case together?

*Defendant Charles Edward Lincoln's Preliminary Objections to [July 1, Document 5] Proposed Findings and Recommended Disposition with Demand for Evidentiary Hearing and Motion for 120 Days to Conduct Jurisdictional Discovery*

29.    Defendant Lincoln OBJECTS to remand or denial of the Motion to Withdraw Reference without a thorough investigate of the relationship between the identical cases filed by different attorney-insider run agencies on April 3 and April 8, 2024..

30.    Defendant OBJECTS that the relationship between the Disciplinary Board and the Supreme Court is entirely incestuous.

31.    Defendant alleges, based on timing, content, and the general circumstances, that counsel for the Disciplinary Board carefully and intentionally planned the dual civil actions for injunction against the Defendant to deny him of both due process and equal protection of the laws.

32.    On its own website [https://nmdisboard.org/about-2/, last consulted Saturday, July 26, 2025], the Disciplinary Board identifies its members and explains that they are appointed, NOT by legislative or executive authority, but by the Supreme Court alone:

**2025 Disciplinary Board Members**

**Our Board is appointed by the Supreme Court of New Mexico.**

- David J. Stout, Esq., Chair
- Gregory Chase, Esq. Vice-Chair
- Elizabeth Travis, Esq. Secretary
- Sam Baca, CPA, Member
- John M. Caraway, Esq., Member
- Heather Cosentino Chavez, Esq. Member
- Leigh Anne Chavez, Esq. Member
- Michael Keedy, Esq., Member
- Hon. Roderick T. Kennedy, (Ret.) Esq., Member

*Defendant Charles Edward Lincoln's Preliminary Objections to [July 1, Document 5] Proposed Findings and Recommended Disposition with Demand for Evidentiary Hearing and Motion for 120 Days to Conduct Jurisdictional Discovery*

- Randy J. Knudson, Esq., Member

- Kim Moore, Member

- Sonya Duke-Noel Esq., Member

- Hon. Julie Vargas, NM Supreme Court Liaison

**33.     All members are either active attorneys or non-attorney "legal industry insiders". There is no legislative or executive or legislative authority identified or involved.**

34.     Defendant has the right to depose all members of the Board, regarding their insider status and relationship to the US Trustee and Bankruptcy matters generally, but he will not be able to exercise this right if the case is remanded to State Court, and the Bankruptcy Court has no plenary jurisdiction over the civil rights involved in procedural and substantive due process before the New Mexico Disciplinary Board, or before any of the antitrust issues to be raised in this case.

35.     One member of the New Mexico Disciplinary Board, Honorable Julie Vargas, in an active Justice, currently sitting on the Supreme Court of the State of New Mexico, which is the only possible avenue of appeal from any adverse decision of the Disciplinary Board.  In other words, the Supreme Court that reviews the conduct of the Disciplinary Board as Prosecutor, Trial Court, Judge and Jury, and the Board itself have overlapping membership.

36.     This is exactly what the Supreme Court of the United States has described as an "insider controlled" monopoly.  ***North Carolina Board of Dental Examiners v. FTC***, 574 U.S. 494, 135 S.Ct. 1101, 191 L.Ed.2d 35 (February 25, 2015)[3].

---

[3]      A nonsovereign actor controlled by active market participants—such as the Board—enjoys *Parker* immunity only if "'the challenged restraint ... [is] clearly articulated and **\*\*1105** affirmatively expressed as state policy,' and ... 'the policy ... [is] actively supervised by the State.'" ***FTC v. Phoebe Putney Health System, Inc***., 568 U.S. 216, 225, 133 S.Ct. 1003, 1010, 185 L.Ed.2d

*Defendant Charles Edward Lincoln's Preliminary Objections to [July 1, Document 5] Proposed Findings and Recommended Disposition with Demand for Evidentiary Hearing and Motion for 120 Days to Conduct Jurisdictional Discovery*

—————————————

43…. Here, the Board did not receive active supervision of its anticompetitive conduct. Pp. 1110 – 1116.

*N. Carolina State Bd. of Dental Examiners v. F.T.C.,* 574 U.S. 494, 495, 135 S. Ct. 1101, 1104–05, 191 L. Ed. 2d 35 (2015)

Limits on state-action immunity are most essential when the State seeks to delegate its regulatory power to active market participants, for established ethical standards may blend with private anticompetitive motives in a way difficult even for market participants to discern. Dual allegiances are not always apparent to an actor. In consequence, active market participants cannot be allowed to regulate their own markets free from antitrust accountability. See ***California Retail Liquor Dealers Assn. v. Midcal Aluminum, Inc.,*** 445 U.S. 97 at 106, 100 S.Ct. 937, 63 L,Ed,2d 233 ( ("The national policy in favor of competition cannot be thwarted by casting ... gauzy cloak of state involvement over what is essentially a private price-fixing arrangement"). Indeed, prohibitions against anticompetitive self-regulation by active market participants are an axiom of federal antitrust policy. See, *e.g.*, ***Allied Tube & Conduit Corp. v. Indian Head, Inc.***, 486 U.S. 492, 501, 108 S.Ct. 1931, 100 L.Ed.2d 497 (1988); ***Hoover, supra,*** at 584, 104 S.Ct. 1989 (Stevens, J., dissenting) ("The risk that private regulation of market entry, prices, or output may be **\*506** designed to confer monopoly profits on members of an industry at the expense of the consuming public has been the central concern of ... our antitrust jurisprudence"); see also Elhauge, The Scope of Antitrust Process, 104 Harv. L.Rev. 667, 672 (1991). So it follows that, under ***Parker*** and the Supremacy Clause, the States' greater power to attain an end does not include the lesser power to negate the congressional judgment embodied in the Sherman Act through unsupervised delegations to active market participants. See Garland, Antitrust and State Action: Economic Efficiency and the Political Process, 96 Yale L.J. 486, 500 (1986).

*Parker* immunity requires that the anticompetitive conduct of nonsovereign actors, especially those authorized by the State to regulate their own profession, result from procedures that suffice to make it the State's own. See *Goldfarb, supra,* at 790, 95 S.Ct. 2004; see also 1A P. Areeda & H. Hovenkamp, Antitrust Law ¶ 226, p. 180 (4th ed. 2013) (Areeda & Hovenkamp). The question is not whether the challenged conduct is efficient, well-functioning, or wise. See *Ticor, 504 U.S.,* at 634–635, 112 S.Ct. 2169. Rather, it is "whether anticompetitive conduct engaged in by [nonsovereign actors] should be deemed state action and thus shielded from the antitrust laws." ***Patrick v. Burget***, 486 U.S. 94, 100, 108 S.Ct. 1658, 100 L.Ed.2d 83 (1988).

To answer this question, the Court applies the two-part test set forth in ***California Retail Liquor Dealers Assn. v. Midcal Aluminum, Inc.,*** 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233, a case arising from California's delegation of price-fixing authority **\*\*1112** to wine merchants. Under ***Midcal***, "[a] state law or regulatory scheme cannot be the basis for antitrust immunity unless, first, the State has articulated a clear ... policy to allow the anticompetitive conduct, and second, the State provides active supervision of [the] anticompetitive conduct." *Ticor, supra,* at 631, 112 S.Ct. 2169 (citing ***Midcal, supra,*** at 105, 100 S.Ct. 937).

*Defendant Charles Edward Lincoln's Preliminary Objections to [July 1, Document 5] Proposed Findings and Recommended Disposition with Demand for Evidentiary Hearing and Motion for 120 Days to Conduct Jurisdictional Discovery*

37.    In proceedings in the Disciplinary Board, brought by counsel appointed and controlled by the Disciplinary Board, with appeal only to Supreme Court of New Mexico, Defendant will certainly NEVER be allowed to conduct fair or thoroughgoing discovery or any examination of the history of Disciplinary Board proceedings against himself, its relationship or collaboration with the US Trustee, the independence (if any) of its procedures from the Supreme Court, much less the procedural history of prosecutions or suits for injunction against any other similarly situated Defendants. In short, if this case is remanded to the Disciplinary Board, discovery will be simply impossible, there are guarantee of any right to conduct discovery in the Rules of the New Mexico Disciplinary Board[4]. So anyone brought before the Disciplinary Board is denied equal protection

---

*N. Carolina State Bd. of Dental Examiners v. F.T.C.,* 574 U.S. 494, 505–06, 135 S. Ct. 1101, 1111–12, 191 L. Ed. 2d 35 (*supra*)

[4]    New Mexico Rule 17-3111 "Discovery" states in full:

> A party may apply to the chair of the hearing committee for permission to conduct discovery prior to a formal hearing.  Upon a showing of good cause, the chair may permit discovery upon such terms as may be appropriate under the circumstances.

The one case showing on Westlaw ever to have address this rule held as follows:
> **Syllabus**:
> 1 rule governing investigation of complaints did not improperly presume misconduct in violation of due process;
> 2 attorney failed to establish improper selective or vindictive prosecution;
> 3 allegation of misrepresentations was required to be proven only by a preponderance of the evidence;
> 4 attorney violated rule prohibiting conduct involving dishonesty, fraud, deceit or misrepresentation;
> 5 attorney failed to establish exemption from the general prohibition against the unauthorized practice of law on grounds that he was admitted to practice law in another state; and

*Defendant Charles Edward Lincoln's Preliminary Objections to [July 1, Document 5] Proposed Findings and Recommended Disposition with Demand for Evidentiary Hearing and Motion for 120 Days to Conduct Jurisdictional Discovery*

of the laws and specifically equal access to the courts and rights to present evidence than any other class of defendant, civil or criminal, and this serves to reinforce the monopolistic power of the insider controlled state bar.

---

6 public reprimand and a deferred one-year suspension from the practice of law was warranted as a sanction.

*In Matter of Convisser*, 148 N.M. 732, 242 P.3d 299 (July 13, 2010-NMSC-037)

In other words, even the presumption of innocence does not apply in Supreme Court Disciplinary Proceedings. And more specifically, with regard to discovery, the New Mexico Supreme Court held:

> Attorney failed to establish that he was deprived of his right to discovery in attorney disciplinary proceedings based on hearing committee's denial of his requests to propound interrogatories, requests for admissions, and requests for the issuance of subpoenas duces tecum, where attorney failed to explain how he was prejudiced by those limitations.

> Hearing committee had good cause to restrict the matters into which attorney could inquire during depositions in attorney disciplinary proceedings, where attorney sought throughout the proceedings to uncover what he perceived to be the mishandling of a probate case and the operation of a certain educational institution, which matters were not relevant to whether attorney engaged in misconduct and which concerns did not justify violations of the rules of professional conduct. NMRA, Rule 17–311.

> Even if Respondent's concerns were valid, a matter on which we express no opinion, such concerns would not justify violating our Rules of Professional Conduct. Accordingly, we conclude that the hearing committee had good cause to limit the manner in which Respondent could conduct his discovery. *See* Rule 17–311 NMRA ("Upon a showing of good cause, the chair may permit discovery upon such terms as may be appropriate under the circumstances.").

*In Matter of Convisser*, ¶ 27, 148 N.M. 732, 742, 242 P.3d 299, 309 (July 13, 2010-NMSC-037),

38.     Defendant contends and asks this Court to decide, declare and hold in this case that NO state monopoly on the exercise of constitutional rights is allowed or permitted under the doctrine of state-action antitrust immunity, as defined and applied in the Supreme Court's decisions beginning with *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943).

39.     So, in order to evaluate Defendant's allegations, in support of civil rights removal, and also in support of Lincoln's contentions that 28 U.S.C. §1443 should be applied in its "plain and natural facial language" (i.e. without reference to race), Lincoln must be allowed to conduct jurisdictional discovery regarding the exercise of the Disciplinary Board's "police power" or "civil power".

40.     If the Disciplinary Board operates an administrative fusion of all three functions, legislative, executive, and judicial, is the Disciplinary Board of the Supreme Court of New Mexico subject to the same constitutional limitations as other state and federal executive/administrative courts, namely the requirements of due process, equal protection, and the guarantee of a right to trial by jury under *SEC v. Jarkesy*?

41.     Also, what are the factual connections between the two cases?  Why did Christine Elizabeth Long incorporate Ilene J. Lashinsky's complaint by reference into her own "State Court" Petition?

42.     What is Kathleen Anne Dudley's role as a Chapter 11 debtor-in-possession in this case?

43.     Does Kathleen Anne Dudley know about the Disciplinary Board's case or approve of it? Or is she *de facto* an "involuntary plaintiff?"  Should she be joined as an involuntary plaintiff in this case under Rule 19 of the Federal Rules of Civil Procedure?

44.     Does Katheleen Anne Dudley's, the original Debtor's, involvement or lack of involvement have any bearing on whether this is really and truly a **"core" bankruptcy case** or not?

45.    And if it is, in response to the Bankruptcy Court's (Judge Jacobvitz') Doc 10, page 2, paragraph 2 part (a), is not the Disciplinary Board's case removable under both 28 U.S.C. §1443 and 1452? [Reference 1:24-ap-01023-j]

46.    In short, Defendant contends that, jurisdictional discovery concerning both civil rights and bankruptcy removal is absolutely necessary to evaluate the ability of the "trans-functional" Disciplinary Board and its relationship in this case, 24-ap-01023-j, to 24-ap-01011-j.

47.    Does the Disciplinary Board have any institutional safeguards to respect Defendant Charles Edward Lincoln's or any Defendant's enumerated and fundamental rights (***Carolene Products***, Footnote 4) to freedom of speech and association regarding and concerning the discussion of the law, said to be the **"core" First Amendment right**?

48.    What are the Disciplinary Board's procedures for ensuring due process of law, including but not limited to the right to raise affirmative defenses and counterclaims?

49.    Defendant Charles Edward Lincoln, III, in this context and connection, asks whether the Constitution of the United States can tolerate the gigantic tangled web of contradictions which the Disciplinary Board of the Supreme Court of New Mexico asserts in its Objections to Removal and Motion to Remand split between Documents 5 (Filed 08/20/2024) and 12 (Filed 09/19/2024).

50.    As suggested above, Christine Elizabeth Long, as Deputy Disciplinary Counsel, argued in her Doc 5 Filed August 20, 2024, that a disciplinary proceeding is something "sui generis," effectively outside the contemplation of the Constitution and Bill of Rights altogether:

> A disciplinary proceeding is neither criminal prosecution nor a civil action. *Matter of Doe,* 801 F.Supp. 478, 483 (D.N.M. 1992). As in *Doe,* the action contemplated regarding Respondent is to "protect the courts and the public from the official ministrations of persons unfit to practice." *Id.* (citing *In re Echeles,* 430 F.2d 347,

*Defendant Charles Edward Lincoln's Preliminary Objections to [July 1, Document 5] Proposed Findings and Recommended Disposition with Demand for Evidentiary Hearing and Motion for 120 Days to Conduct Jurisdictional Discovery*

349 (7th Cir. 1970). Respondent's disciplinary proceeding is, therefore, not a civil action as contemplated by 28 U.S.C §1452.

Defendant asks whether the constitution allows proceedings which are "neither civil nor criminal," especially after the Supreme Court's decision in ***SEC v. Jarkesy***, 144 S.Ct. 2117 (June 27, 2024).

51.    Defendant OBJECTS and submits that the denial of his right to a trial-by-jury in the Supreme Court of New Mexico, and his inability even to file affirmative defenses and a counterclaim concerning that right (or any other right, however fundamental) under the procedures under which the New Mexico Disciplinary Board operates as an adjunct of the Supreme Court, contravenes every aspect of and all doctrines defining both substantive and procedural due process and equal protection under the Fourteenth Amendment.

52.    At the very least, in any just system of adjudication, Defendant should have the right to explore by limited jurisdictional discovery the due process and equal protection policies of the Disciplinary Board whether denominated civil or criminal or ***"something else, though nobody knows exactly what***," Defendant should be able to challenge the constitutionality of the substantive law and procedures of the Disciplinary Board.

53.    Defendant contends it constitutes a constitutional derogation and denial of equal protection that the Defendant in a Disciplinary Proceeding before the Disciplinary Board has no procedural due process even to challenge or object to the rules by which New Mexico denies him the right to trial by jury.

54.    Accordingly, to confirm Civil Rights Removal Jurisdiction, he must be allowed to conduct discovery to prove the historical denial of due process and equal protection in the general history of the Disciplinary Board.

*Defendant Charles Edward Lincoln's Preliminary Objections to [July 1, Document 5] Proposed Findings and Recommended Disposition with Demand for Evidentiary Hearing and Motion for 120 Days to Conduct Jurisdictional Discovery*

55.    And he should further be allowed to conduct jurisdictional discovery concerning the application and construction of how the phrases of both "the practice of law" and "the unauthorized practice of law," under which he is being prosecuted, are being prosecuted.

56.    Defendant has asserted, as a matter of law, that the use of these terms in the Disciplinary Board's Original Petition constitutes a constitutional derogation and a denial of both equal protection and of substantive and procedural due process that Defendant cannot assert any right in Disciplinary Proceedings to challenge these unconstitutionally vague definitions.

57.    But factual discovery into these matters will inform the Court, whether this be decided in the U.S. Bankruptcy Court or, more properly in the U.S. District Court, will enable this Court to decide more justly and fairly how to rule on Lincoln's motion to extend, modify, or reverse existing law, or make new law, concerning Civil Rights Removal on non-racial bases.

58.    Finally, discovery into actual procedural histories will enable either this Court or the U.S. District Court (now given that the Defendant's Motion to Withdraw the Reference stands unopposed after more than one month) most justly to decide the key questions in this case.

59.    Primary among these questions relating to civil rights removal is whether the Disciplinary Board proceedings in fact constitute and pervasively imply, as Defendant contends, a programmatic denial of both equal protection and substantive and procedural due process of law.

60.    It frankly seems constitutionally impossible but factually true that Defendant, in New Mexico Disciplinary Proceedings brought by the Disciplinary Board as prosecutor, before something called "the Disciplinary Board of the Supreme Court of New Mexico" as a judicial unit that the Defendant, will have no right to assert any affirmative defenses or counterclaims.

## ANTITRUST-PARKER DOCTRINE

61.     One of Defendant's chief "federal question" counterclaims involves the "industry insider" nature and authority of the Disciplinary Board in violation of U.S. Antitrust Laws as construed by the United States Supreme Court under the Parker Doctrine in ***North Carolina Board of Dental Examiners v. FTC*** (2015).

62.     Furthermore, does or did the Disciplinary Board cooperate and/or coordinate with the U.S. Trustee Ilene J. Lashinsky as industry insiders to frame this two-front litigation against Charles Edward Lincoln, III?

63.     If so, how does this relate to the Parker Doctrine?  And what is the relationship between state sponsored monopolies over the practice of law and freedom of speech?

64.     These questions are also subjects which will be impossible to investigate if this case is remanded, because the Disciplinary Board is unlikely to supervise a fair investigation of its constitution (membership and officers) as industry insiders or their monopolistic purposes.

65.     The removing Defendant herein, Charles Edward Lincoln, III is the sole defendant in two closely related, essentially identical cases (a first-filed federal complaint and a copycat State Court Petition) arising from the identical set of facts and nearly identical set of allegations.

66.     Christine Elizabeth Long cited Lashinsky's case in her original Disciplinary Board petition but the U.S. Trustee has recently moved to amend her complaint and tried to distance herself from the concept of "Unauthorized Practice of Law"---but is this still a two-pronged coordinated effort of encirclement?

67.     Defendant has moved for consolidation of these two cases in Bankruptcy Court, but it is Christine Elizabeth Long, counsel for the second case brought by the Disciplinary Board and

*Defendant Charles Edward Lincoln's Preliminary Objections to [July 1, Document 5] Proposed Findings and Recommended Disposition with Demand for Evidentiary Hearing and Motion for 120 Days to Conduct Jurisdictional Discovery*

removed from the (nominal) jurisdiction of the Supreme Court of New Mexico (in fact, the Disciplinary Board sits as judge, jury, and executioner), whose arguments confirm agreement that (even only the rules of the District of New Mexico, that require Bankruptcy related removals go FIRST to Bankruptcy Court), ONLY AN ARTICLE III JUDGE CAN HERE THE IMPORTANT NON-BANKRUPTCY FEDERAL QUESTIONS WHICH THIS CASE SO CLEARLY RAISES.

68.     Defendant Charles Edward Lincoln, III, thus OBJECTS and submits that this gravamen is satisfied here, where multiple issues in federal law constitute the full scope of his defense in both cases 24-ap-01011-j and 24-ap-01023-j, so that the order of reference in BOTH must be withdrawn to the United States District Court, which in any case is the original source of all jurisdiction.

69.     The most important Federal questions to be resolved in this case arise from the application of the facts of this case to constitutional law: the First, Fifth, and Ninth Amendments on the one hand, and antitrust-law, specifically Parker-Doctrine state sponsored monopolies, on the other, but also involving administrative questions of the role of the U.S. Trustee, the relationship of the U.S. Trustee to the Bankruptcy Court.

70.     Further, the right to a jury trial in administrative proceedings seeking to impose a civil penalty will be heavily dependent upon fact for which discovery will only be available in U.S. Courts, whether Bankruptcy or District Courts, because no discovery will be allowed before the Disciplinary Board if this case is remanded.

71.     Jurisdictional Discovery is warranted given the legal framework here, but this discovery will concern PRIMARILY non-bankruptcy FEDERAL LAW and strongly militates in favor of withdrawal of the order of reference in this case.

*Defendant Charles Edward Lincoln's Preliminary Objections to [July 1, Document 5] Proposed Findings and Recommended Disposition with Demand for Evidentiary Hearing and Motion for 120 Days to Conduct Jurisdictional Discovery*

## <u>LEGAL ARGUMENT AND AUTHORITIES</u>

72.     The availability of discovery prior to ruling on a Motion for Remand in cases removed under 28 U.S.C. § 1452 and/or 28 U.S.C. § 1443 is generally within the discretion of the district court.  Courts permit jurisdictional discovery where such discovery is required to resolve disputed facts pertinent to jurisdiction. *Fritch v. The Coca Cola Company*, 2023 WL 4681572 (U.S.D.C., Central District of California, May 22, 2023, not reported)(citing *Laub v. U.S. Dept. of Interior*, 342 F.3d 1080, 1093 (9th Cir 2003).

73.     Defendant has, above, outlined some of the grounds for discovery relating to civil rights removal, especially the separation-of-powers structure and due-process-equal-protection operation of the Disciplinary Board of the New Mexico Supreme Court, and whether the "prosecution of a complaint for injunction against a bankruptcy preparer" is really a **"core proceeding.".**

74.     The key civil rights removal issue requiring discovery is whether Defendant will in fact, as he believes, be denied both due process and equal protection of the laws "**by reason of operation of pervasive and explicit state or federal law …. by very act of bringing defendant to trial in state court" (see** *Greenwood v. Peacock*, supra).  The importance of this discovery goes to the urgent need to extend, modify, or reverse the racial focus of 1960s civil rights jurisprudence, as Defendant has argued in his October 10, 2024, Response in Opposition to Motion to Remand.

75.     The facts required to be discovered are the history and procedures of the Disciplinary Board in regard to Petitions to Enjoin the Unauthorized Practice of Law.

76.     Circumstances Warranting Jurisdictional Discovery: Jurisdictional discovery may be warranted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.  *Fritch v. The Coca-Cola Company, Not*

*Defendant Charles Edward Lincoln's Preliminary Objections to [July 1, Document 5] Proposed Findings and Recommended Disposition with Demand for Evidentiary Hearing and Motion for 120 Days to Conduct Jurisdictional Discovery*

*Reported in Fed. Supp*. (2023), *Chapman v. Krutonog*, 256 F.R.D. 645, 2009 WL 364094 (D. Hawaii 2009).

77.     In *Cambridge Place Inv. Management, Inc. v. Morgan Stanley & Co., Inc*. , the court allowed limited jurisdictional discovery to determine whether diversity jurisdiction existed before ruling on the motion to remand. *Cambridge Place Inv. Management, Inc. v. Morgan Stanley & Co., Inc*., 794 F.Supp.2d 265 (D. Massachusetts, May 2, 2011).

78.     *Brophy v. Almanzar* involved jurisdictional discovery to clarify whether the amount in controversy requirement was met.  359 F.Supp.3d 917, 926 (C.D. California 2018).

79.     *These are parallel questions to whether the Disciplinary Board operates according to a pervasive, industry insider, monopolistic program which pervasively denies both due process and equal protection of the laws to Defendants such as Charles Edward Lincoln, III, for purposes of evaluating and justifying the invocation of 28 U.S.C. §1443.*

80.     Defendant Lincoln here OBJECTS and submits that his Motion for Jurisdictional Discovery should be allowed because he has provided a detailed showing of what discovery is sought and what it is expected to uncover that is essential to just adjudication of the law and facts giving rise to his Notice of Removal, compare *Pharos Capital Group, LLC v. Nutmeg Ins. Co.,* 999 F.Supp.2d 947 (N.D. Texas, Dallas Division, February 26, 2014).

81.      Nor is this case in any way, shape or form comparable to *Mittenthal v. Florida Panthers Hockey Club, Ltd.* , where the Southern District of Florida denied jurisdictional discovery post-removal, emphasizing that such discovery should occur before removal to avoid clogging the federal judicial machinery. *Mittenthal v. Florida Panthers Hockey Club, Ltd.,* 472 F.Supp.3d 1211 (S.D. Florida, July 14, 2020).

*Defendant Charles Edward Lincoln's Preliminary Objections to [July 1, Document 5] Proposed Findings and Recommended Disposition with Demand for Evidentiary Hearing and Motion for 120 Days to Conduct Jurisdictional Discovery*

82.     Pre-removal discovery was or post-remand discovery is or would be impossible before the Disciplinary Board, which has no rules allowing for discovery, no genuine procedures for a Defendant to raise affirmative constitutional defenses or any other defenses or counterclaims, but forces all "industry outsiders" to trial before a court of "industry insiders" sitting as judges while a defendant is prosecuted by one of their own number.

83.     Requirement for Detailed Showing: Lincoln seeks jurisdictional discovery by written interrogatories, requests for production and admission, and by deposition of Christine Elizabeth Long and other Disciplinary Board members, and he expects that from such discovery, he will be able to evaluate both the (currently unknown) relationship between 24-ap-01011-j and 24-ap-01023-j and the anticipated total accuracy of his allegations that the Disciplinary Board is devoid of procedural guarantees of equal protection or due process of law. Compare, *In re Fort Totten Metrorail Cases*, 756 F.Supp.2d 132 (District of Columbia, December 23, 2010).

84.     Given all the above details, this Courts should grant his request for jurisdictional discovery.

85.     The specific circumstances of this case (actually, these two cases) are somewhat unique, and the Defendant has done his best to provide a clear and detailed justification for such discovery,

## WHO and WHAT is a "WHITE PERSON" within the MEANING of 42 U.S.C. §§1981-1982?

86.     Chief Magistrate Judge Wormuth, in his Proposed Findings and Recommended Disposition, to which Defendant will file separate "OBJECTIONS" prior to Wednesday, July 30, 2025, focuses on Civil Rights Removal, to the near total exclusion of bankruptcy removal.

87.     To reiterate the historical context stated at the outset of this Motion, which appears necessary since Chief Magistrate Judge Wormuth so completely ignored it in his July 1, 2025, Findings and Recommendations: **this litigation originated in US Bankruptcy Court by the**

**23**

*Defendant Charles Edward Lincoln's Preliminary Objections to [July 1, Document 5] Proposed Findings and Recommended Disposition with Demand for Evidentiary Hearing and Motion for 120 Days to Conduct Jurisdictional Discovery*

filing of US Trustee Ilene J. Lashinsky's Complaint and Amended Complaint insistently alleging a "core" matter of bankruptcy concern (Case 24-ap-01011-j, UST Original Complaint, Doc 1, §5, page 2 of 18, Filed & Entered 04/03/24, "this is a core proceeding under 28 U.S.C. §157(b)," restated in the UST's Amended Complaint, Doc 60, Filed & Entered 03/03/25, 10:06:43 Page 2 of 17, ¶5).

88.    As also stated above, the Disciplinary Board's April 8, 2024, Petition does not add one single fact or legal contention but entirely duplicates the April 3, 2024, Complaint with one exception: the Disciplinary Board omits any reference to 11 U.S.C. §110 or the phrase "bankruptcy preparer."

89.    If the same facts and legal contentions constitute a "core proceeding" in 24-ap-01011-j, then these exact same facts and conclusions must constitute a "core proceeding" for purposes of removal under 28 U.S.C. §1452 of what amounts to the identical lawsuit brought by a (nominally different Plaintiff [a group of industry insiders rather than a single insider] in 24-ap-01023-j.

90.    Remand or Denial of Removal in this case will also constitute a denial of equal protection of the laws, and arguably a violation of 42 U.S.C. §1981:

> **(a) Statement of equal rights**
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
> **(b) "Make and enforce contracts" defined**
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
> **(c) Protection against impairment**

*Defendant Charles Edward Lincoln's Preliminary Objections to [July 1, Document 5] Proposed Findings and Recommended Disposition with Demand for Evidentiary Hearing and Motion for 120 Days to Conduct Jurisdictional Discovery*

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C.A. § 1981 (West)

91.     Defendant Charles Edward Lincoln, III, OBJECTS and submits that remand is improper, and withdrawal of the reference to bankruptcy court is necessary, because the Disciplinary Board of the Supreme Court of the state of New Mexico will deny him equal protection under 42 U.S.C. §1981 because it is structurally and functionally incapable of operating as a legitimate Court.

92.     So Defendant OBJECTS that he is entitled to both removal of the Disciplinary Board Petition and withdrawal of the reference to bankruptcy of BOTH cases together and simultaneously, consolidated or coordinated rather than maintain them as separate or severed litigations, under 28 U.S.C.§1443(1).

93.     Defendant OBJECTS that a proper understanding of whiteness and "White Citizenship" means "Nobility", "High Caste", or fully entitled to enjoy all rights conferred by the constitution, and that Charles Edward Lincoln, III, will be denied full equality as a "White Citizen" (without regard to skin color) in the Disciplinary Board.

94.     Even though Defendant is a white citizen of the United States, he will be denied this equality.  Thus, to construe these statutes as implying a necessary reverse discrimination against non-racial denials of equal protection is simply absurd and manifestly unjust.  See especially *McDonald v. Santa Fe Trail Transport Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (June 25, 1976)(as extensively quoted below).

95.     Defendant thus objects that Chief Magistrate Judge Wormuth, in his "Proposed Findings and Recommend Disposition," stated (basically casting aside all considerations of 28 U.S.C. §1452

*Defendant Charles Edward Lincoln's Preliminary Objections to [July 1, Document 5] Proposed Findings and Recommended Disposition with Demand for Evidentiary Hearing and Motion for 120 Days to Conduct Jurisdictional Discovery*

removal) focused on a narrow and improper application and construction of removal under 28

U.S.C. §1443(1):

> However, the question before the Bankruptcy Court in the remand motion is whether the state disciplinary petition is properly removed to that court. Defendant premises his removal of the Petition on Title 28 U.S.C. § 1443(1). *Disciplinary Bd.*, 24-AP- 01023-j, *doc. 5*, Ex. 6. For removal to be permissible under this statute, a party must demonstrate violation of a "right under any law providing for . . . equal rights." 28 U.S.C. § 1443(1). The Supreme Court has clearly and unambiguously held that this language "must be construed to mean any law providing for specific civil rights stated in terms of racial equality." *Georgia v. Rachel*, 384 U.S. 780, 792 (1966); *see also City of Greenwood v. Peacock*, 384 U.S. 808, 827-28 (1966). Regardless of the strength or weakness of Defendant's attacks on the state disciplinary petition, they are not based on a claim that the petition is racially inequitable.

District Court Case 1:24-cv-00962-DHU-GBW, Document 5, Filed 07/01/25, Page 5 of 8
BK Court Case 24-01023-j, Doc 25, Filed 07/08/25, Entered 07/08/25 11:05:40 Page 5 of 8.

96.    While the Court in Footnote 2 to its "Proposed Findings" recognizes the validity of

Defendant's arguments regarding the changes in jurisprudence regarding "affirmative action" over

the past 59 years since *Georgia v. Rachel* and *Greenwood v. Peacock*, the Honorable Magistrate

Judge dismisses the arguments offhand:

> Defendant argues that, based on more recent Supreme Court precedent, *Rachel* and *Peacock* are primed for reversal. *Disciplinary Bd. v. Lincoln (In re Dudley)*, Ch. 11 Case No. 24-10034-j11, Adv. No. 24-01011-j, *doc. 13* at 4-13 (Bankr. D.N.M. Sep. 26, 2024). Even assuming that presenting a plausible argument that the Supreme Court would completely reverse itself on a settled issue is sufficient to support mandatory withdrawal under Title 28 U.S.C. §157(d), Defendant's argument appears more peculiar than plausible. Defendant points to several Supreme Court cases questioning the constitutionality of affirmative action programs. *Id*. The undersigned does not dispute that more recent Supreme Court opinions have strongly challenged the concept that discrimination in favor of a minority race is generally permissible. Nonetheless, it does not follow that this precedential shift undermines the holding that a removal pursuant to Title 28 U.S.C. § 1443(1) must be based upon some alleged racial inequality, whether that inequality disadvantage a majority or minority racial group.

District Court Case 1:24-cv-00962-DHU-GBW, Document 5, Filed 07/01/25, Page 6 of 8, n.1

*Defendant Charles Edward Lincoln's Preliminary Objections to [July 1, Document 5]*
*Proposed Findings and Recommended Disposition with Demand for Evidentiary*
*Hearing and Motion for 120 Days to Conduct Jurisdictional Discovery*

BK Court Case 24-01023-j, Doc 25, Filed 07/08/25, Entered 07/08/25 11:05:40 Page 6 of 8, n.1

97.    Taking the Chief Magistrate Judge's comments seriously requires taking the "settled law" concerning race and equality seriously: from a functional and structural standpoint, WHAT IS THE PURPOSE OF THE FOURTEENTH AMENDMENT AND RELATED LEGISLATION?  From a functional and structural standpoint WHAT AND WHO IS A "WHITE CITIZEN" FOR PURPOSES OF 42 U.S.C. §§1981-1982 TODAY, IN THE MODERN WORLD?

98.    In *McDonald v. Santa Fe Trail Transportation Co.*, the Supreme Court cited and discussed the relevant legislative history in depth and made it clear in 1976, that, a mere ten years after *Georgia v. Rachel* and *Greenwood v. Peacock* were decided, the guarantees of equality in 42 U.S.C. §§1981-1982, were not meant to be limited to purely racial considerations or definitions:

> While it is, of course, true that the immediate impetus for the bill was the necessity for further relief of the constitutionally emancipated former Negro slaves, the general discussion of the scope of the bill did not circumscribe its broad language to that limited goal. **On the contrary, the bill was routinely viewed, by its opponents and supporters alike, as applying to the civil rights of whites as well as nonwhites.**[20] The point was most directly focused on in the closing debate in the Senate. *290 During that debate, in response to the argument of Senator Davis of Kentucky that by providing for the punishment of racial discrimination in its enforcement section, s 2, the bill extended to Negroes a protection never afforded whites, Senator Trumbull said:
>
> > "Sir, **This bill applies to white men as well as black men. It declares that all persons in the United States shall be entitled to the same civil rights, the right to the fruit of their own labor, the right to make contracts, the right to buy and sell, and enjoy liberty and happiness;** and that is abominable and iniquitous and unconstitutional! **Could anything be more monstrous or more abominable than for a member of the Senate to rise in his place and denounce with such epithets as these a bill, the only object of which is to secure equal rights to all the citizens of the country. A bill that protects a white man just as much as a black**

*Defendant Charles Edward Lincoln's Preliminary Objections to [July 1, Document 5] Proposed Findings and Recommended Disposition with Demand for Evidentiary Hearing and Motion for 120 Days to Conduct Jurisdictional Discovery*

**man?** With what consistency and with what face can a Senator in his place here say to the Senate and the country that this is a bill for the benefit of black men exclusively when there is no such distinction in it, and when the very object of the bill is to break down all discrimination between black men and white men?" Id., at 599 (emphasis supplied).

So advised, the Senate passed the bill shortly thereafter. Id., at 606-607.

It is clear, thus, that the bill, as it passed the Senate, was not limited in scope to discrimination against nonwhites. Accordingly, respondents pitch their legislative history argument largely upon the House's amendment of the Senate bill to add the "as is enjoyed by white citizens" phrase. But the statutory history is equally clear that that phrase was not intended to have the **\*291** effect of eliminating from the bill the prohibition of racial discrimination against whites.

Representative Wilson of Iowa, Chairman of the Judiciary Committee and the bill's floor manager in the House, proposed the addition of the quoted phrase immediately upon the introduction of the bill. The change was offered explicitly to technically **\*\*2584** "perfect" the bill, and was accepted as such without objection or debate. Id., at 1115.

That Wilson's amendment was viewed simply as a technical adjustment without substantive effect is corroborated by the structure of the bill as it then stood. Even as amended the bill still provided that "there shall be no discrimination in civil rights or immunities among citizens of the United States in any State or Territory of the United States on account of race, color, or previous condition of slavery."[21] **To read Wilson's amendment as excluding white persons from the particularly enumerated \*292 civil rights guarantees of the Act would contradict this more general language; and we would be unwilling to conclude, without further evidence, that in adopting the amendment without debate or discussion, the House so regarded it.[22]**

Moreover, Representative Wilson's initial elaboration on the meaning of Senator Trumbull's bill, which immediately followed his securing passage of the foregoing amendment, **fortifies our view that the amended bill was intended to protect whites as well as nonwhites.** As Wilson described it, the purpose of the measure was to provide **"for the equality of citizens . . . in the enjoyment of 'civil rights and immunities.' "** Id., at 1117. Then, speaking in particular of "immunities" as " 'freedom or exemption from obligation,' " he made clear that the bill "secures to citizens of the United States equality in the exemptions of the law. . . . Whatever exemptions there may be shall apply to all citizens alike. . . . . . those

rights might be extended to all citizens, whether male or female, majors or minors." Cong.Globe, App. 157. Thus, the purpose of the amendment was simply "to emphasize the racial character of the rights being protected," ***Georgia v. Rachel***, 384 U.S., at 791, 86 S.Ct. at 1789, not to limit its application to nonwhite persons.[24]

* * * * * * * * * * *

This cumulative evidence of congressional intent makes clear, we think, that the 1866 statute, designed to protect the "same right . . . to make and enforce contracts" of "citizens of every race and color" was not understood or intended to be reduced by Representative Wilson's amendment, or any other provision, to the protection solely of nonwhites.

***McDonald v. Santa Fe Trail Transp. Co.***, 427 U.S. 273, 289–96, 96 S. Ct. 2574, 2583–86, 49 L. Ed. 2d 493 (1976)(bold emphasis added).

99.    The Court should note the Supreme Court's specific reference to ***Georgia v. Rachel*** above.

100.    Defendant Charles Edward Lincoln, III, has articulated (in Exhibit B) the theory that whiteness[5] is a proxy for forbidden titles nobility in reconciling the original constitution of 1787 with the 14th Amendment Constitution of 1868:

---

[5]    See, for example, Jacqueline Battalora, *Birth of a White Nation: the Invention of White People and its Relevance Today* (Second Edition), Routledge, New York & London, 2021; also Cheryl I. Harris, "Whiteness as Property," 106 ***Harvard Law Review*** 1709, June 1993, and Khiara M. Bridges, "Race in the Roberts Court", 136 ***Harvard Law Review*** 23 (November 2022).

Lincoln proposes that, to understand "White Citizen" as a non-racial category requires us to recognize the equivalence of "White Citizen" with the 1935 Nuremberg Laws in National Socialist Germany which defined "full German Citizenship" as available only to "Aryans." Even a small number of Africans, (East, British) Indians, Jews, and Muslims or Turks were awarded "Honorary Aryanship" as a reward for their service to the Third Reich. "Aryan German Citizen" = "White Citizen" = "A Full Citizen" = "Only Lawyers."

The use of the term "White Citizens" in 42 U.S.C. §§1981-1982 equates "White" with "fully enfranchised." The State Bar system simultaneously treats non-lawyers as "non-white," i.e., "not full citizens" and yet strips out even the pretense or semblance of due process or equality for lawyers who somehow run afoul of the system.

The system is barbarous and hypocritical, if opaque and hermeneutic (UNDERSTANDING AVAILABLE AND EXCLUSIVE TO INSIDERS) in its application, and these impossible contradictions        should        be        recognized        as        such.

The best known, and most generally available, treatment of the legal profession as a de facto nobility equivalent to "White Citizenship" and "Aryan Nobility" is Duncan Kennedy's

***Defendant Charles Edward Lincoln's Preliminary Objections to [July 1, Document 5]*** ***Proposed Findings and Recommended Disposition with Demand for Evidentiary*** ***Hearing and Motion for 120 Days to Conduct Jurisdictional Discovery***

## MEMBERSHIP IN THE BAR AMOUNTS STRUCTURALLY
## TO A PEERAGE CLASSIFICATION
## INCONSISTENT WITH THE FOURTEENTH AMENDMENT

(81)    The titles of nobility clause is declaratory a fundamental values and public policy, standing at the rock bottom of the "American Experiment."

(82)    Regarding the nature of "titles of nobility," the ***Dred Scott v. Sanford*** case, 60 U.S. 393, 19 How. 393 (March 6, 1857) discusses the Constitution's restriction on Congress creating privileged classes within the States, which could be interpreted as a commentary on the nature of nobility titles.

(83)    ***Scott v. Sanford*** does not, however, directly address whether such titles have necessary elements other than inequality of power and influence and access to certain rights**.**

(84)    The subject of ***Scott v. Sanford*** of course was slavery, a heritable condition of servitude which stands as the extreme opposite of "nobility."

(85)    The American Civil War brought fully into focus the unamerican nature of classifications which render some people greater than or lesser to others in regard to their tenure and exercise of or their exclusion from certain civil rights, including the rights to vote, hold property, make contracts, and run for office.

(86)    The state bar system limits the rights of certain individuals to discuss or associate in regard to the application, construction, interpretation, or implementation of the law (even though the law is supposed to apply equally to everyone), or even to make contracts for the application, construction, interpretation or implementation of the law.

See Declaration (Attached in Full as Exhibit B) in Support of Jerry O'Neil as Candidate for the Supreme Court of Montana in the U.S. District Court for the District of Montana, Case 9:23-cv-00161-BMM Document 8-5 Filed 01/22/24 Page 20-21 of 24, ¶¶81-86.

101.    Defendant suggests that this Court acknowledge that case raises matters that can only be

decided in a United States District Court---because neither the U.S. Bankruptcy Court nor the

---

famous, ***Legal Education and the Reproduction of Hierarchy: A Polemic Against the System*** (Originally Published 1982; New York University Press 2004). This book is considered foundational to the critical legal studies movement.

***Defendant Charles Edward Lincoln's Preliminary Objections to [July 1, Document 5] Proposed Findings and Recommended Disposition with Demand for Evidentiary Hearing and Motion for 120 Days to Conduct Jurisdictional Discovery***

Disciplinary Board of the Supreme Court of the State of New Mexico have either constitutional or statutory competence to review and evaluate the real issues in this case.

102.    To the extent that membership in and recognition by a state bar be considered as a requirement fully to exercise a citizen's rights under the First, Fifth, and Ninth Amendments, to that extent then, membership in a state bar is "the New White."  Because ONLY members of the State Bar apparently can actually or effectively assemble to petition for redress of grievances. They are like unto a Mediaeval Priesthood in that they are the only ones entitled to "pray" for relief.  Thus, in this sense, the existence of a state bar system is inconsistent with both the Fourteenth Amendment and Article's I of the original constitution, because membership in a state bar is an artificial but full structural and functional equivalent of "whiteness."

103.    And to that extent that Article I prohibits either states or the federal government from granting titles of nobility, and so must prohibit the functional and structural equivalence of nobility or "white superiority" created by the state bar systems (and federal statutes such as 11 U.S.C. §110 which incorporate the state bar system by reference.  (See Lincoln's Declaration in Exhibit B).

104.    To the extent that the Disciplinary Board unironically denies full equality of access to due process of law, to the rights to make contracts, to own property (such as licenses) and present evidence for their enforcement in violation of 42 U.S.C. §§1981-1982, the state bar system also and further violates the rights of its members to both due process and equal protection of the law.

105.    A Hegelian "contradiction inherent in all things" must lead to a dialog of thesis, antithesis and synthesis in order to change the existing system, and to restore the original promise of equality inherent in both the Revolutionary Declaration of Independence and in the alterations of the Constitution following the internecine war of 1861-1865.

*Defendant Charles Edward Lincoln's Preliminary Objections to [July 1, Document 5] Proposed Findings and Recommended Disposition with Demand for Evidentiary Hearing and Motion for 120 Days to Conduct Jurisdictional Discovery*

## PRAYER FOR RELIEF

106.    WHEREFORE, for the reasons set forth herein, Defendant Charles Edward Lincoln, III, tenders his Preliminary Objections to [July 1, Document 5] "Proposed Findings and Recommended Disposition" with his Demand for Evidentiary Hearing and Motion for 120 Days to Conduct Jurisdictional Discovery.

107.    Defendant respectfully requests that this Court enter an order, either immediately granting the Defendant's Motion for Jurisdictional Discovery and allowing **120 days (Until December 1, 2025)** for the completion of such discovery by written interrogatories, requests for production and admission, and depositions of members of the Disciplinary Board, or in the alternative referring this Motion to the U.S. District Court by granting the STILL DEFINITELY UNOPPOSED Motion to Withdraw (the Plaintiff Disciplinary Board being nearly one year in default) the Order Reference of the Petition for Injunctive Relief for the Unauthorized Practice of Law against Charles Edward Lincoln, III, to the Bankruptcy Court and further referring both Defendant's Motion to Consolidate and the Plaintiff's Motion to Remand to U.S. District Court for mandatory, exclusive determination.

108.    Removing Defendant Charles Edward Lincoln, III, still in the alternative asks, moves, and prays this Court to immediately SUSTAIN HIS REMOVAL TO THIS COURT ON NON-RACIAL CIVIL RIGHTS GROUNDS OF DENIAL OF EQUAL PROTECTION OF THE LAWS, and that the Court further grant his previously filed motion to withdraw the reference in Bankruptcy, to consolidate cases 24-01011-j and 24-01023-j, and direct that the Bankruptcy Court Clerk transfer all pleadings related to these proceedings to the Clerk for the District Court.

**32**

*Defendant Charles Edward Lincoln's Preliminary Objections to [July 1, Document 5] Proposed Findings and Recommended Disposition with Demand for Evidentiary Hearing and Motion for 120 Days to Conduct Jurisdictional Discovery*

109.    After allowing at least 120 days for jurisdictional discovery, the Court should set a final evidentiary hearing on Plaintiff/Petitioner Disciplinary Board's Motion to Remand for any time after December 1, 2025.

I certify my electronic signature below.

Respectfully submitted,

Sunday, July 27, 2025

By: */s/Michael L. Tusken/s/*
**U.S. District Court for the
District of New Mexico Bar No. 25-293
Law Offices of Michael Tusken
Michael@TuskenLaw.com
1510 West Whittier Boulevard, #42
La Habra, California 90631
Telephone: 562-365-9465
Facsimile: 562-252-8529**

**33**

*Defendant Charles Edward Lincoln's Preliminary Objections to [July 1, Document 5] Proposed Findings and Recommended Disposition with Demand for Evidentiary Hearing and Motion for 120 Days to Conduct Jurisdictional Discovery*

# <u>Exhibit A:</u>

Case 24-01023-j, Doc, 19, Filed 11/01/24,
Entered 11/01/24 14:02:36 Pages 1-7

**Defendant's Request for Evidentiary Hearing And**

**Motion for Jurisdictional Discovery (Civil Rights & Bankruptcy) in**

**Support of Removal and in Response and Opposition to the**

**Disciplinary Board's Motion to Remand to Disciplinary Board**

*Objection to Removal and Motion to Remand to the New Mexico Supreme Court "for lack of federal jurisdiction"---in part on the grounds that No Discovery will ever be allowed in Disciplinary Board Proceedings!*

<u>UNITED STATES BANKRUPTCY COURT</u>
<u>DISTRICT OF NEW MEXICO</u>

In Re: Kathleen Anne Dudley,                                Case No.: 24-10034-j11
      Debtor.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Disciplinary Board of the Supreme Court**
**of the State of New Mexico,**
      **Petitioner/Plaintiff,**                  **Adversary No. 24-01023-j**

**v.**

                                   **Demand for Trial-by-Jury**

**Charles Edward Lincoln, III,**
      **Respondent/Defendant.**

<u>**DEFENDANT'S REQUEST FOR EVIDENTIARY HEARING**</u>
<u>**and**</u>
<u>**MOTION for JURISDICTIONAL DISCOVERY (CIVIL RIGHTS & BANKRUPTCY)**</u>
<u>**In SUPPORT REMOVAL and in Response and Opposition to**</u>
<u>**THE DISCIPLINARY BOARD'S MOTION to REMAND to DISCIPLINARY BOARD**</u>

1.      Defendant Charles Edward Lincoln, III, moves and requests that this Court schedule an evidentiary hearing and also enter a scheduling order to permit jurisdictional discovery prior to any hearing on remand, in part on the grounds that no discovery will be allowed upon remand.

2.      As a preliminary matter, the Petitioner/Plaintiff Disciplinary Board has still not responded to the Defendant's [Doc 14] Motion to Withdraw the Order of Reference in this case filed September 26, 2024.  Accordingly, the motion to withdraw the order of reference should be granted forthwith and this entire case, including this motion to remand, should be referred to the United States District Court for further briefing, and to supervise the jurisdictional discovery herein.

3.      On August 29, 2024, this Court entered its "Order Resulting from Scheduling Conference" [Doc 10, page 2 of 3, @17:27:28] that same day, whose third and final numbered paragraph read:

                                                                      **1**

*Defendant Charles Edward Lincoln's Request for Evidentiary Hearing and Motion for*
*75 Days to Conduct Jurisdictional Discovery prior to Ruling on the Disciplinary Board*
*of the State of New Mexico's Objection to Removal and Motion to Remand to the New*
*Mexico Supreme Court "for lack of federal jurisdiction"---in part on the grounds that*
*No Discovery will ever be allowed in Disciplinary Board Proceedings!*

**Deadline to Request an Evidentiary Hearing. If either party wishes to present evidence on the Motion for Remand and/or Abstention, the deadline to file a request for evidentiary hearing is November 1, 2024. If such a request is made, the Court will enter a scheduling order setting a final evidentiary hearing and related deadlines. If no request for evidentiary hearing is made timely, the Court will consider the Motion for Remand and/or Abstention under advisement.**

4.      Removal and withdrawal of the order of reference in the two nearly identical cases filed in two different courts against Charles Edward Lincoln, III, (24-ap-01011-j and 24-ap-01023-j) both depend on the evaluation of issues arising under Federal Civil Rights law (especially 14th Amendment Equal Protection and due process guarantees) including but not limited to the right to raise a defense and counterclaim to a complaint which is "neither civil nor criminal."

5.      Paragraph 2 of this Court's same "Order Resulting" [Doc 10, page 2] filed August 29, 2024, mandated briefing "at a minimum"g:

> **a) Whether 28 U.S.C. § 1443 applies to removal of actions to the bankruptcy court;**
> **b) Whether 28 U.S.C. § 1443 is limited to civil rights issues that relate to racial equality or is broader, and, if broader, whether it is broad enough to cover the issues raised in this removed adversary proceeding; and**
> **c) Whether the exception to removal contained in 28 U.S.C. § 1452(a) for "civil action[s] by a governmental unit to enforce such governmental unit's police or regulatory power" applies to the removal resulting in commencement of this adversary proceeding.**

**6.**      Each of these three required issues addresses matters requiring jurisdictional discovery, in particular, starting with discovery concerning the nature and structure of the disciplinary board, and its record of protecting individual rights and civil liberties, which relate to factors arising under this court's order for briefing, starting with Doc 10, paragraph 2, page 2, parts b and c.

2

*Defendant Charles Edward Lincoln's Request for Evidentiary Hearing and Motion for 75 Days to Conduct Jurisdictional Discovery prior to Ruling on the Disciplinary Board of the State of New Mexico's Objection to Removal and Motion to Remand to the New Mexico Supreme Court "for lack of federal jurisdiction"---in part on the grounds that No Discovery will ever be allowed in Disciplinary Board Proceedings!*

**7.**    Defendant submits that substantial discovery should be allowed on all issues in this case, but such discovery concerns primarily non-bankruptcy Federal law except for the sole question of whether the U.S. Trustee's complaint for injunction and administrative sanctions under 11 U.S.C. §110 is really a "core" bankruptcy proceeding or not.

**8.**    Defendant contends that the questions underlying Civil Rights Removal issue under 28 U.S.C. §1443 take priority and require even more jurisdictional discovery prior to ruling on remand than Bankruptcy Removal under 28 U.S.C. §1452, although the question whether the Disciplinary Board is a "governmental police or regulatory" organ, and if so how it operates, functions as a jurisdictional matter subject to discovery under both §§1443 and 1452.

## DEFENDANT'S RIGHTS TO EQUAL PROTECTION WILL INEVITABLY BE DENIED BY THE VERY ACT OF BRINGING DEFENDANT TO TRIAL IN STATE COURT (IF THE DISCIPLINARY BOARD IS REALLY A COURT AT ALL:

9.    Jurisdictional Discovery is absolutely essential in this case to explore both bankruptcy and civil rights removal.  Such discovery cannot happen after remand due to the nature of the "state court in question."  Defendant asks for discovery concerning the serious constitutional questions regarding the availability of due process and equal protections of the law in the New Mexico Disciplinary Procedures as a Court before the Disciplinary Board as prosecutor under Disciplinary Board Rules (claimed to be neither criminal nor civil in nature?).

10.    Defendant submits that he will be denied both due process and the equal protection of the laws before the Disciplinary Board so that this case constitutes one of those:

> **. . . . rare situations where it can be clearly predicted  by reason of operation of pervasive and explicit state  or federal law that these rights will inevitably**

*Defendant Charles Edward Lincoln's Request for Evidentiary Hearing and Motion for 75 Days to Conduct Jurisdictional Discovery prior to Ruling on the Disciplinary Board of the State of New Mexico's Objection to Removal and Motion to Remand to the New Mexico Supreme Court "for lack of federal jurisdiction"---in part on the grounds that No Discovery will ever be allowed in Disciplinary Board Proceedings!*    **3**

be denied by very act of bringing defendant to trial in state court. 28 U.S.C.A.
§ 1443(1).

*Greenwood v. Peacock*, 384 U.S. 808, 828, 83 S.Ct. 1800, 1812, 16 L.Ed.2d 944 (1966).

11.     The common theme between 24-ap-01011-j and 24-ap-01023-j is that to give perform any

legal work for another person without a state bar license puts any defendant in a special and highly

disfavored class, whether under "Unauthorized Practice of Law" statutes or 11 U.S.C. §110,

against whom both the U.S. Trustee and the Disciplinary Board as "industry insiders", a pervasive

and explicit state and/or federal law that his rights will be denied by the very act of bringing him

to trial in a state court.

12.     As for part (a) of the Court's August 29 instructions, even Plaintiff Ilene J. Lashinsky's

proposed amended complaint persists in the contention that 11 U.S.C. §110 constitutes a "core

bankruptcy matter", and this too is a jurisdiction question open to factual challenge and discovery.

## WHAT IS THE DISCIPLINARY BOARD?

13.     Defendant Lincoln submits that remand to the Disciplinary Board of the Supreme Court of

the State of New Mexico (as a "Court") for Trial by the Disciplinary Board of the State of New

Mexico (as Judges and Jury) under charges prosecuted by the Deputy Disciplinary Counsel for the

Petitioner Disciplinary Board of the New Mexico Supreme Court will effectively deny him

anything but a "show trial" and a farcical, nugatory forum in which to defend himself.

14.     A thoroughgoing examination of the history of Disciplinary Board proceeding is required.

15.     Defendant will certainly not be allowed to conduct fair or thoroughgoing discovery or any

examination of the history of Disciplinary Board proceedings against other similarly situated

*Defendant Charles Edward Lincoln's Request for Evidentiary Hearing and Motion for
75 Days to Conduct Jurisdictional Discovery prior to Ruling on the Disciplinary Board
of the State of New Mexico's Objection to Removal and Motion to Remand to the New
Mexico Supreme Court "for lack of federal jurisdiction"---in part on the grounds that
No Discovery will ever be allowed in Disciplinary Board Proceedings!*

**4**

Defendants if this case is remanded to the Disciplinary Board, because there are no procedures for discovery before the Disciplinary Board whatsoever.

16.     So, in order to evaluate Defendant's allegations, in support of civil rights removal, and also in support of Lincoln's contentions that 28 U.S.C. §1443 should be applied in its "plain and natural facial language" (i.e. without reference to race), Lincoln must be allowed to conduct jurisdictional discovery regarding the exercise of the Disciplinary Board's "police power" or "civil power".

17.     If the Disciplinary Board is an administrative fusion of all three functions, legislative, executive, and judicial , is the Disciplinary Board of the Supreme Court of New Mexico subject to the same constitutional limitations as other state and federal executive/administrative courts, namely the requirements of due process, equal protection, and the guarantee of a right to trial by jury under *SEC v. Jarkesy*?

18.     Also, what are the factual connections between the two cases? Why did Christine Elizabeth Long incorporate Ilene J. Lashinsky's complaint by reference into her own "State Court" Petition?

19.     What is Kathleen Dudley's role as a Chapter 11 debtor-in-possession in this case?

20.     Does she know about it or approve of it? Or is she in fact an "involuntary plaintiff?"

21.     Does her involvement or lack of involvement have any bearing on whether this is really and truly a "core" bankruptcy case or not?

22.     And if it is, in response to the Court's Doc 10, page 2, paragraph 2 part (a), is not the Disciplinary Board's case removable under both 28 U.S.C. §1443 and 1452?

**5**

*Defendant Charles Edward Lincoln's Request for Evidentiary Hearing and Motion for 75 Days to Conduct Jurisdictional Discovery prior to Ruling on the Disciplinary Board of the State of New Mexico's Objection to Removal and Motion to Remand to the New Mexico Supreme Court "for lack of federal jurisdiction"---in part on the grounds that No Discovery will ever be allowed in Disciplinary Board Proceedings!*

23.     In short, Defendant contends that, jurisdictional discovery concerning both civil rights and bankruptcy removal is absolutely necessary to evaluate the ability of the "trans-functional" Disciplinary Board and its relationship in this case, 24-ap-01023-j, to 24-ap-01011-j.

24.     Does the Disciplinary Board have any institutional safeguards to respect Defendant Charles Edward Lincoln's or any Defendant's enumerated and fundamental rights (***Carolene Products***, Footnote 4) to freedom of speech and association regarding and concerning the discussion of the law, said to be the "core" First Amendment right?

25.     What are the Disciplinary Board's procedures for ensuring due process of law, including but not limited to the right to raise affirmative defenses and counterclaims?

26.     Defendant Charles Edward Lincoln, III, in this context and connection, asks whether the Constitution of the United States can tolerate the gigantic tangled web of contradictions which the Disciplinary Board of the Supreme Court of New Mexico asserts in its Objections to Removal and Motion to Remand split between Documents 5 (Filed 08/20/2024) and 12 (Filed 09/19/2024).

27.     As suggested above, Christine Elizabeth Long, as Deputy Disciplinary Counsel, argued in her Doc 5 Filed August 20, 2024, that a disciplinary proceeding is something "sui generis," effectively outside the contemplation of the Constitution and Bill of Rights altogether:

> A disciplinary proceeding is neither criminal prosecution nor a civil action. *Matter of Doe,* 801 F.Supp. 478, 483 (D.N.M. 1992). As in *Doe,* the action contemplated regarding Respondent is to "protect the courts and the public from the official ministrations of persons unfit to practice." *Id.* (citing *In re Echeles,* 430 F.2d 347, 349 (7th Cir. 1970). Respondent's disciplinary proceeding is, therefore, not a civil action as contemplated by 28 U.S.C §1452.

**6**

*Defendant Charles Edward Lincoln's Request for Evidentiary Hearing and Motion for 75 Days to Conduct Jurisdictional Discovery prior to Ruling on the Disciplinary Board of the State of New Mexico's Objection to Removal and Motion to Remand to the New Mexico Supreme Court "for lack of federal jurisdiction"---in part on the grounds that No Discovery will ever be allowed in Disciplinary Board Proceedings!*

Defendant asks whether the constitution allows proceedings which are "neither civil nor criminal," especially after the Supreme Court's decision in ***SEC v. Jarkesy***, 144 S.Ct. 2117 (June 27, 2024).

28.    Defendant submits that the denial of his right to a trial-by-jury in the Supreme Court of New Mexico, and his inability even to file affirmative defenses and a counterclaim concerning that right (or any other right, however fundamental) under the procedures under which the New Mexico Disciplinary Board operates as an adjunct of the Supreme Court, contravenes every aspect of and all doctrines defining both substantive and procedural due process and equal protection under the Fourteenth Amendment.

29.    At the very least, in any just system of adjudication, Defendant should have the right to explore by limited jurisdictional discovery the due process and equal protection policies of the Disciplinary Board whether denominated civil or criminal or ***"something else, though nobody knows exactly what***," Defendant should be able to challenge the constitutionality of the substantive law and procedures of the Disciplinary Board.

30.    Defendant contends it constitutes a constitutional derogation and denial of equal protection that the Defendant in a Disciplinary Proceeding before the Disciplinary Board has no procedural due process even to challenge or object to the rules by which New Mexico denies him the right to trial by jury.

31.    Accordingly, to confirm Civil Rights Removal Jurisdiction, he must be allowed to conduct discovery to prove the historical denial of due process and equal protection in the general history of the Disciplinary Board.

7

***Defendant Charles Edward Lincoln's Request for Evidentiary Hearing and Motion for 75 Days to Conduct Jurisdictional Discovery prior to Ruling on the Disciplinary Board of the State of New Mexico's Objection to Removal and Motion to Remand to the New Mexico Supreme Court "for lack of federal jurisdiction"---in part on the grounds that No Discovery will ever be allowed in Disciplinary Board Proceedings!***

32.     And he should further be allowed to conduct jurisdictional discovery concerning the application and construction of how the phrases of both "the practice of law" and "the unauthorized practice of law," under which he is being prosecuted, are being prosecuted.

33.     Defendant has asserted, as a matter of law, that the use of these terms in the Disciplinary Board's Original Petition constitutes a constitutional derogation and a denial of both equal protection and of substantive and procedural due process that Defendant cannot assert any right in Disciplinary Proceedings to challenge these unconstitutionally vague definitions.

34.     But factual discovery into these matters will inform the Court, whether this be decided in the U.S. Bankruptcy Court or, more properly in the U.S. District Court, will enable this Court to decide more justly and fairly how to rule on Lincoln's motion to extend, modify, or reverse existing law, or make new law, concerning Civil Rights Removal on non-racial bases.

35.     Finally, discovery into actual procedural histories will enable either this Court or the U.S. District Court (now given that the Defendant's Motion to Withdraw the Reference stands unopposed after more than one month) most justly to decide the key questions in this case.

36.     Primary among these questions relating to civil rights removal is whether the Disciplinary Board proceedings in fact constitute and pervasively imply, as Defendant contends, a programmatic denial of both equal protection and substantive and procedural due process of law.

37.     It frankly seems constitutionally impossible but factually true that Defendant, in New Mexico Disciplinary Proceedings brought by the Disciplinary Board as prosecutor, before something called "the Disciplinary Board of the Supreme Court of New Mexico" as a judicial unit that the Defendant, will have no right to assert any affirmative defenses or counterclaims.

8

*Defendant Charles Edward Lincoln's Request for Evidentiary Hearing and Motion for 75 Days to Conduct Jurisdictional Discovery prior to Ruling on the Disciplinary Board of the State of New Mexico's Objection to Removal and Motion to Remand to the New Mexico Supreme Court "for lack of federal jurisdiction"---in part on the grounds that No Discovery will ever be allowed in Disciplinary Board Proceedings!*

## ANTITRUST-PARKER DOCTRINE

38.    One of Defendant's chief "federal question" counterclaims involves the "industry insider" nature and authority of the Disciplinary Board in violation of U.S. Antitrust Laws as construed by the United States Supreme Court under the Parker Doctrine in ***North Carolina Board of Dental Examiners v. FTC*** (2015).

39.    Furthermore, does or did the Disciplinary Board cooperate and/or coordinate with the U.S. Trustee Ilene J. Lashinsky as industry insiders to frame this two-front litigation against Charles Edward Lincoln, III?

40.    If so, how does this relate to the Parker Doctrine?  And what is the relationship between state sponsored monopolies over the practice of law and freedom of speech?

41.    These questions are also subjects which will be impossible to investigate if this case is remanded, because the Disciplinary Board is unlikely to supervise a fair investigation of its constitution (membership and officers) as industry insiders or their monopolistic purposes

42.    The removing Defendant herein, Charles Edward Lincoln, III is the sole defendant in two closely related, essentially identical cases (a first-filed federal complaint and a copycat State Court Petition) arising from the identical set of facts and nearly identical set of allegations.

43.    Christine Elizabeth Long cited Lashinsky's case in her original Disciplinary Board petition but the U.S. Trustee has recently moved to amend her complaint and tried to distance herself from the concept of "Unauthorized Practice of Law"---but is this still a two-pronged coordinated effort of encirclement?

**9**

*Defendant Charles Edward Lincoln's Request for Evidentiary Hearing and Motion for 75 Days to Conduct Jurisdictional Discovery prior to Ruling on the Disciplinary Board of the State of New Mexico's Objection to Removal and Motion to Remand to the New Mexico Supreme Court "for lack of federal jurisdiction"---in part on the grounds that No Discovery will ever be allowed in Disciplinary Board Proceedings!*

44.    Defendant has moved for consolidation of these two cases in Bankruptcy Court, but it is Christine Elizabeth Long, counsel for the second case brought by the Disciplinary Board and removed from the (nominal) jurisdiction of the Supreme Court of New Mexico (in fact, the Disciplinary Board sits as judge, jury, and executioner), whose arguments confirm agreement that (even only the rules of the District of New Mexico, that require Bankruptcy related removals go FIRST to Bankruptcy Court), only an article III Judge can hear the important non-bankruptcy Federal questions which this case so clearly raises.

45.    Defendant Charles Edward Lincoln, III, thus submits that this gravamen is satisfied here where multiple issues in federal law constitute the full scope of his defense in both cases.

46.    The most important Federal questions to be resolved in this case arise from the application of the facts of this case to constitutional law: the First, Fifth, and Ninth Amendments on the one hand, and antitrust-law, specifically Parker-Doctrine state sponsored monopolies, on the other, but also involving administrative questions of the role of the U.S. Trustee, the relationship of the U.S. Trustee to the Bankruptcy Court.

47.    Further, the right to a jury trial in administrative proceedings seeking to impose a civil penalty will be heavily dependent upon fact for which discovery will only be available in U.S. Courts, whether Bankruptcy or District Courts, because no discovery will be allowed before the Disciplinary Board if this case is remanded.

48.    Jurisdictional Discovery is warranted given the legal framework here, but this discovery will concern primarily non-bankruptcy federal law and militates in favor of withdrawal of the order of reference in this case

**10**

*Defendant Charles Edward Lincoln's Request for Evidentiary Hearing and Motion for 75 Days to Conduct Jurisdictional Discovery prior to Ruling on the Disciplinary Board of the State of New Mexico's Objection to Removal and Motion to Remand to the New Mexico Supreme Court "for lack of federal jurisdiction"---in part on the grounds that No Discovery will ever be allowed in Disciplinary Board Proceedings!*

## LEGAL ARGUMENT AND AUTHORITIES

49.     The availability of discovery prior to ruling on a Motion for Remand in cases removed under 28 U.S.C. § 1452 and/or 28 U.S.C. § 1443 is generally within the discretion of the district court.  Courts permit jurisdictional discovery where such discovery is required to resolve disputed facts pertinent to jurisdiction. *Fritch v. The Coca Cola Company*, 2023 WL 4681572 (U.S.D.C., Central District of California, May 22, 2023, not reported)(citing *Laub v. U.S. Dept. of Interior*, 342 F.3d 1080, 1093 (9th Cir 2003).

50.     Defendant has, above, outlined some of the grounds for discovery relating to civil rights removal, especially the separation-of-powers structure and due-process-equal-protection operation of the Disciplinary Board of the New Mexico Supreme Court, and whether the "prosecution of an injunction against a bankruptcy preparer" is really a "core proceedings.".

51.     The key civil rights removal issue requiring discovery is whether Defendant will in fact, as he believes, be denied both due process and equal protection of the laws "**by reason of operation of pervasive and explicit state or federal law …. by very act of bringing defendant to trial in state court**" **(see** *Greenwood v. Peacock*, supra).  The importance of this discovery goes to the urgent need to extend, modify, or reverse the racial focus of 1960s civil rights jurisprudence, as Defendant has argued in his October 10, 2024, Response in Opposition to Motion to Remand.

52.     The facts required to be discovered are the history and procedures of the Disciplinary Board in regard to Petitions to Enjoin the Unauthorized Practice of Law.

53.     Circumstances Warranting Jurisdictional Discovery: Jurisdictional discovery may be warranted where pertinent facts bearing on the question of jurisdiction are controverted or where

*Defendant Charles Edward Lincoln's Request for Evidentiary Hearing and Motion for 75 Days to Conduct Jurisdictional Discovery prior to Ruling on the Disciplinary Board of the State of New Mexico's Objection to Removal and Motion to Remand to the New Mexico Supreme Court "for lack of federal jurisdiction"---in part on the grounds that No Discovery will ever be allowed in Disciplinary Board Proceedings!*

a more satisfactory showing of the facts is necessary. *Fritch v. The Coca-Cola Company, Not Reported in Fed. Supp*. (2023), *Chapman v. Krutonog*, 256 F.R.D. 645, 2009 WL 364094 (D. Hawaii 2009).

54.     In *Cambridge Place Inv. Management, Inc. v. Morgan Stanley & Co., Inc*. , the court allowed limited jurisdictional discovery to determine whether diversity jurisdiction existed before ruling on the motion to remand. *Cambridge Place Inv. Management, Inc. v. Morgan Stanley & Co., Inc*., 794 F.Supp.2d 265 (D. Massachusetts, May 2, 2011).

55.     *Brophy v. Almanzar* involved jurisdictional discovery to clarify whether the amount in controversy requirement was met.  359 F.Supp.3d 917, 926 (C.D. California 2018).

56.     *These are parallel questions to whether the Disciplinary Board operates according to a pervasive, industry insider, monopolistic program which pervasively denies both due process and equal protection of the laws to Defendants such as Charles Edward Lincoln, III, for purposes of evaluating and justifying the invocation of 28 U.S.C. §1443.*

57.     Defendant Lincoln here submits that his Motion for Jurisdictional Discovery should be allowe because he has provided a detailed showing of what discovery is sought and what it is expected to uncover that is essential to just adjudication of the law and facts giving rise to his Notice of Removal, compare *Pharos Capital Group, LLC v. Nutmeg Ins. Co.,* 999 F.Supp.2d 947 (N.D. Texas, Dallas Division, February 26, 2014).

58.     Nor is this case in any way, shape or form comparable to *Mittenthal v. Florida Panthers Hockey Club, Ltd.* , where the Southern District of Florida denied jurisdictional discovery post-removal, emphasizing that such discovery should occur before removal to avoid clogging the

*Defendant Charles Edward Lincoln's Request for Evidentiary Hearing and Motion for 75 Days to Conduct Jurisdictional Discovery prior to Ruling on the Disciplinary Board of the State of New Mexico's Objection to Removal and Motion to Remand to the New Mexico Supreme Court "for lack of federal jurisdiction"---in part on the grounds that No Discovery will ever be allowed in Disciplinary Board Proceedings!*

federal judicial machinery. ***Mittenthal v. Florida Panthers Hockey Club, Ltd.,*** 472 F.Supp.3d 1211 (S.D. Florida, July 14, 2020).

59.      Pre-removal discovery was or post-remand discovery is or would be impossible before the Disciplinary Board, which has no rules allowing for discovery, no genuine procedures for a Defendant to raise affirmative constitutional defenses or any other defenses or counterclaims, but forces all "industry outsiders" to trial before a court of "industry insiders" sitting as judges while a defendant is prosecuted by one of their own number.

60.      Requirement for Detailed Showing: Lincoln seeks jurisdictional discovery by written interrogatories, requests for production and admission, and by deposition of Christine Elizabeth Long and other Disciplinary Board members, and he expects that from such discovery, he will be able to evaluate both the (currently unknown) relationship between 24-ap-01011-j and 24-ap-01023-j and the anticipated total accuracy of his allegations  that the Disciplinary Board is devoid of procedural guarantees of equal protection or due process of law. Compare, ***In re Fort Totten Metrorail Cases***, 756 F.Supp.2d 132 (District of Columbia, December 23, 2010).

61.      Given all the above details, this Courts should grant his request for jurisdictional discovery.

62.      The specific circumstances of this case (actually, these two cases) are somewhat unique, and the Defendant has done his best to provide a clear and detailed justification for such discovery,

### PRAYER FOR RELIEF

63.      WHEREFORE, for the reasons set forth herein, Defendant Charles Edward Lincoln, III, respectfully requests that this Court enter an order, either immediately granting the Defendant's Motion for Jurisdictional Discovery and allowing **100 days (Until February 10, 2025)** for the

13

*Defendant Charles Edward Lincoln's Request for Evidentiary Hearing and Motion for 75 Days to Conduct Jurisdictional Discovery prior to Ruling on the Disciplinary Board of the State of New Mexico's Objection to Removal and Motion to Remand to the New Mexico Supreme Court "for lack of federal jurisdiction"---in part on the grounds that No Discovery will ever be allowed in Disciplinary Board Proceedings!*

completion of such discovery by written interrogatories, requests for production and admission, and depositions of members of the Disciplinary Board, or in the alternative referring this Motion to the U.S. District Court by granting the now definitely unopposed Motion to Withdraw the Order Reference of the Petition for Injunctive Relief for the Unauthorized Practice of Law against Charles Edward Lincoln, III, to the Bankruptcy Court and further referring both Defendant's Motion to Consolidate and the Plaintiff's Motion to Remand to U.S. District Court for mandatory, exclusive determination.

64.    Removing Defendant Charles Edward Lincoln, III, still in the alternative asks, moves, and prays this Court to immediately sustain his removal to this Court on non-racial Civil Rights grounds of denial of  equal protection of the laws, and that the Court further grant his previously filed motion to withdraw the reference in Bankruptcy, to consolidate cases 24-01011-j and 24-01023-j, and direct that the Bankruptcy Court Clerk transfer all pleadings related to these proceedings to the Clerk for the District Court.

65.    After allowing at least 100 days for jurisdictional discovery, the Court should set a final evidentiary hearing on Plaintiff/Petitioner Disciplinary Board's Motion to Remand for any time after February 10, 2025.

　　　　I certify my electronic signature below.

　　　　　　　　　　　　　　　　　　　　Respectfully submitted,

Friday, November 1, 2024

　　　　　　　　　　　　　　　　　　**By: _/s/ Yancey N. Burnett/s/_**
　　　　　　　　　　　　　　　　　　**Yancey N. Burnett (BUR101)**
　　　　　　　　　　　　　　　　　　**Attorney for the Defendant**
　　　　　　　　　　　　　　　　　　**Charles Edward Lincoln, III**
　　　　　　　　　　　　　　　　　　**8319 A Spanish Fort Blvd.**

**14**

_Defendant Charles Edward Lincoln's Request for Evidentiary Hearing and Motion for 75 Days to Conduct Jurisdictional Discovery prior to Ruling on the Disciplinary Board of the State of New Mexico's Objection to Removal and Motion to Remand to the New Mexico Supreme Court "for lack of federal jurisdiction"---in part on the grounds that No Discovery will ever be allowed in Disciplinary Board Proceedings!_

**Spanish Fort, AL 36527**
**Telephone: (251) 662-7500**
**Cell Phone: (251) 721-3179**
**Email: ynburnett@yahoo.com**

### CERTIFICATE OF SERVICE

I certify that on Frida, November 1, 2024, I served a true and correct copy of the above-

and-foregoing Defendant Charles Edward Lincoln, III's,

> *Request for Evidentiary Hearing and Motion for Jurisdictional discovery*
> *prior to Ruling on the Disciplinary Board of the State of New Mexico's*
> *Objection to Removal and Motion to Remand to the New Mexico Supreme*
> *Court "for lack of federal jurisdiction"---in part on the grounds that No*
> *Discovery will ever be allowed in Disciplinary Board Proceedings!*

on each of the following:

Daniel A. White, Trial Attorney, at dan.white@usdoj.gov
Mary L. Johnson (USTP), at Mary.L.Johnson@usdoj.gov
and
Christine Elizabeth Long, Deputy Disciplinary Counsel, clong@nmdisboard.org

Friday,
November 1, 2024

**By: */s/ Yancey N. Burnett/s/***
**Yancey N. Burnett (BUR101)**
**Attorney for the Defendant**
**Charles Edward Lincoln, III**
**8319 A Spanish Fort Blvd.**
**Spanish Fort, AL 36527**
**Telephone: (251) 662-7500**
**Cell Phone: (251) 721-3179**
**Email: ynburnett@yahoo.com**

**15**

*Defendant Charles Edward Lincoln's Request for Evidentiary Hearing and Motion for*
*75 Days to Conduct Jurisdictional Discovery prior to Ruling on the Disciplinary Board*
*of the State of New Mexico's Objection to Removal and Motion to Remand to the New*
*Mexico Supreme Court "for lack of federal jurisdiction"---in part on the grounds that*
*No Discovery will ever be allowed in Disciplinary Board Proceedings!*

# __Exhibit A:__
Proposed Order Granting
Motion to Set Evidentiary Hearing and
Allowing 100 Days for Jurisdictional
Discovery concerning
Bankruptcy and Civil Rights Removal

**16**

*Defendant Charles Edward Lincoln's Request for Evidentiary Hearing and Motion for
75 Days to Conduct Jurisdictional Discovery prior to Ruling on the Disciplinary Board
of the State of New Mexico's Objection to Removal and Motion to Remand to the New
Mexico Supreme Court "for lack of federal jurisdiction"---in part on the grounds that
No Discovery will ever be allowed in Disciplinary Board Proceedings!*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

In Re:

Kathleen Anne Dudley,                                     Case No.: 24-10034-j11
     Debtor.
********************************************************************************

**Disciplinary Board of the Supreme Court**
**of the State of New Mexico,**
     **Petitioner/Plaintiff,**

**v.**                                                   **Adversary No. 24-01023-j**

**Charles Edward Lincoln, III,**
     **Defendant.**

### ORDER GRANTING
### DEFENDANT'S REQUEST FOR EVIDENTIARY HEARING and
### MOTION FOR 75 DAYS TO CONDUCT JURISDICTIONAL DISCOVERY

THIS CAUSE CAME BEFORE THE COURT on Defendant Charles Edward Lincoln, III's

Request for Evidentiary Hearing and Motion for 100 Days to Conduct Jurisdictional Discovery, to

be completed by February 10, 2025.

And a final evidentiary hearing on the Disciplinary Board's Motion to Remand is set for

_____, January/February/March 2025.

Done and ordered this _____ day of November, 2024 in the United States Bankruptcy

Court___ District Court____ in and for the District of New Mexico, Albuquerque, New Mexico.

 

 

                          _____
                                        **Judge Presiding**
           **United States Bankruptcy___ Judge or**
                 **United States District ___Judge**
                      **District of New Mexico**

                                                   **17**

*Defendant Charles Edward Lincoln's Request for Evidentiary Hearing and Motion for*
*75 Days to Conduct Jurisdictional Discovery prior to Ruling on the Disciplinary Board*
*of the State of New Mexico's Objection to Removal and Motion to Remand to the New*
*Mexico Supreme Court "for lack of federal jurisdiction"---in part on the grounds that*
*No Discovery will ever be allowed in Disciplinary Board Proceedings!*

# <u>Exhibit B:</u>

**DECLARATION OF OPINION &
QUALIFICATIONS of
CHARLES EDWARD LINCOLN, III
January 18, 2023
Filed in the United States District Court for
the District of Montana
*Eugene Kirschbaum & Jerry O'Neil v.
The Montana Supreme Court,
The State Bar of Montana et al.*
Case 9:23-cv-00161-BMM
Document 8-5
Filed 01/22/24
Page 9-21 of 24**

# DECLARATION OF OPINION & QUALIFICATIONS
## CHARLES EDWARD LINCOLN, III
## January 18, 2023

### Background and Relationship to Parties:

(1)    My name is Charles Edward Lincoln, III.  I am over the age of 18 and otherwise competent to make this affidavit based on my education and experience.

(2)    I have known the Plaintiff Jerry Bryant O'Neil for the past twenty years, and although he has not specifically paid me to produce this affidavit, as required by Rule 26, I acknowledge and confirm that he has donated large sums of money for my research and support over the last two decades, and is definitely among the best friends and patrons I have ever had in my life.

(3)    I am qualified to write this affidavit based on my education.

(4)    I hold a B.A. (1980, Tulane University: College of Arts & Sciences), M.A. (1982, Harvard University: Graduate School of Arts & Sciences), and Ph.D. in the subject of Anthropology (1990, also GSAS).

(5)    I also received a J.D. from the law school of the University of Chicago (1992).

(6)    I served as a judicial extern to the Honorable Stephen Reinhardt in the 9th Circuit Court of Appeals in 1987-88.

(7)    I served as a judicial law clerk to the Honorable Kenneth L. Ryskamp in the Southern District of Florida 1991-1993.

(8)    My doctoral research at Harvard concerned comparative structural and functional study of social and political hierarchies around the world.

(9)    I passed the bar exams and formerly served as a licensed attorney in Florida (1992-2002), California (1994-2003) and Texas (1994-2000), but I have continued active in litigation and legal advocacy my entire life since.

(10) I have specifically been actively involved in civil rights and constitutional litigation for most of the past 30 years, including one case

decided by the Supreme Court of the United States: ***Atwater v. Lago Vista*** (2001) in which I was the original lead counsel.

(11)   I write especially to support Plaintiff Jerry Bryant O'Neil's contentions in ¶¶35-63 of his First Amended Complaint concerning the Structural and Functional Analysis and Equation of the requirements of membership in a state bar as a pre-requisite for holding judicial office and/or the title of an attorney-at-law (who is also an "officer of the court") with constitutionally prohibited titles of nobility.

## Methodology:

(12)   "Participant observation" in studied societies is a standard technique of anthropological and ethnological research.

(13)   My years of involvement in constitutional litigation qualifies me to make as anthropologically valid conclusions from "participant observation" field research into the customs, practices, and policies of the Courts and judicial system of the United States.

## Souvereigntée Magique et Juridique: The First Function of Sovereignty according to Georges Dumézil

(14)   Article I, §9.8 of the Constitution prohibits, but does not specifically define or in any way qualify, "titles of nobility" but states only: "No Title of Nobility shall be granted by the United States: And no Person holding any Office of Profit or Trust under them, shall, without the Consent of the Congress, accept of any present, Emolument, Office, or Title, of any kind whatever, from any King, Prince, or foreign State."

(15)   My doctoral dissertation included a review of the evolution of political specialization according to social function, and developed in particular along the lines of analysis developed by the French student of Classical Mediterranean and Indo-European civilizations, Georges Dumézil, who showed the close structural and operational relationships between magic and religious dialogue on the one hand and "law" and judicial functions on the other.

(16)   Priestly and Judicial roles, in ancient Israel as well as India and Rome, were effectively class-based "castes" of society, but these roles could either

be assigned or inherited, and inheritance of socio-cultural roles was not required.

(17)  Throughout the ancient states of the Classical Mediterranean and Indo-European, judicial and priestly roles were always closely related, as demonstrable through a comparison of the "Judges" who served in Israel according to the laws of Moses with the Brahmins and Flamines of India and Rome.

(18)  My comparative research including but not limited to my participant observation in the legal system (1987-present) has led me to conclude that bar membership is a social construct directly analogous to race, class, or caste, and that discrimination based on bar membership is as inconsistent with the equal protection provisions of the Constitution as discrimination based on status as a Indian Brahmin (at any stage of Vedic, Hindu, or modern caste society and evolution), a Hebrew Levite, or a member of the Roman Senatorial class or caste, from whom the Roman Priesthood was primarily derived.

(19)  For example, Julius Caesar was High Priest of Jupiter---Flamen Major Dialis before entering into either his more famous military or political roles.

(20)  Historically, in Europe, the Mediterranean, Near Eastern, and Indian Civilizations, and even in other complex societies such as the Aztec, Maya, or Natchez Indians of the New World, or the Hawaiians, Maori, or Tahitians of Polynesia, "the Nobility" constitute a special class of individuals imbued by ritual membership in a class or caste with special governmental and political power to interpret, apply, construe, or implement law.

(21)  In Europe, the historical and semiotic, symbolic, equivalence and functional relationship of what Dumézil called "magical and religious sovereignty" can be seen in the traditional robes worn only by traditional Roman Catholic and Anglican/Episcopal Priests with those worn by Judges.

(22)  Among the early modern courts of law were the Courts of Inquisition in continental Europe, and all judges were priests.

### AMERICAN ANTECEDENTS IN ENGLAND & FRANCE

(23)  In the English tradition, judges were representatives of the King, who derived his power from God, and the King ultimately became the head of the English Church, as well as the head of State.

(24)  Archbishop (and later Saint) Thomas à Beckett was King Henry II's Chancellor of the Exchequer (the highest Judge of Equity) before trading judicial for clerical robes.

(25)  The Three Estates of the Ancien Régime in France included three grades of nobility: the clerics and priesthood, the "warrior" nobility, and the town-dwelling landowners or "bourgeois."

(26)  In England, the clerical and warrior nobility sat together in the House of Lords, but the House of Lords included appointed "Law Lords" appointed only for individual lifetimes and not heritable.

(27)  Lifetime peerages (i.e. ranks and titles of nobility, within which "peerage" all knights, baronets, barons, earls, marquises and dukes are all "roughly" equal, even though they may in fact be graded from 1 to infinity in order categorical according to seniority of peerage or other factors) have always existed in England, they existed during the reigns of Queen Elizabeth I, the Stuarts, and the Hanoverians (including King George III), and the UK Life Peerages Act of 1958 simply continued but modernized this method of enoblement.

(28)  The House of Lords acted and operated as the Supreme Court of England and the United Kingdom right up until the Judiciary Act of 2005, and included both the "law lords" and the Lord Chancellor, chief judge of equity as mentioned above in the reference to St. Thomas à Becket and for that matter also St. Thomas More was also Lord Chancellor before his martyrdom under Henry VIII.

(29)  It was this system of Noble, titled, Judges of Law and Equity (sitting as noble, life-tenured members of the House of Lords) which informed the Founding Fathers' understanding and definition of "nobility" in Article I, §9-8 of the Constitution.

(30)  Thus, inheritance of titles is not, and has never been, an essential characteristic of "titles of nobility."

(31)  Moses appointed the original "Judges" of Ancient Israel in Sinai without regard to their lineage (there were certainly no "noble slaves" among the Hebrews in Egypt prior to their Exodus) and membership in the Scribal classes of Biblical society might be achieved either by inheritance or appointment, and this hybrid nature of the scribal or "legal" profession has continued throughout history.

(32)  The lowest level of nobility in England and the United Kingdom has always been the "knighthood"---which is traditionally not an inherited title, but only awarded to an individual for his life (the title of "Dame" is the female equivalent of knighthood or "being knighted", despite the incongruously plebian sound of "dames" and "being damed" to American ears).

## EARLY YEARS OF THE AMERICAN COURTS: 18th-19th Centuries

(33)  Like titles of Nobility, the structure of American Courts was nowhere defined or outlined in the American Constitution, but upon independence, the colonies simply emulated the customs, practices, and policies of "the mother country" for a time, without noble titles, but with a much greater reliance on the democratic process of juries, as so richly described in several chapters of Alexis de Tocqueville's "Democracy in America."

(34)  But judges retained (and still retain, and now enhance) their social isolation, their political secrecy and silence, their robes and ritualized procedures including elevated seats or thrones on a dais as semiotic expressions of their office and power over all "mere mortals" below.

(35)  All of these features, including taboos on social association and other expressive behavior, correlates the modern judge with his ancient antecedents among the Brahmins and Flamines of the Ancient Indo-European peoples from Rome to India.

(36)  Admission to the bar in the early American Republic was effectively democratic and open to all who could read, write, and (most importantly) vote.

(37)  And all voters were, subject to certain age and residence requirements, eligible to serve in all political offices, including the judiciary, law schools not being common, much less required, roads to the practice of law until the early 20th century.

(38) Throughout the 19th century, American Courts borrowed more and more of the practice and procedure of English Courts, in part due to pressures for uniformity of practice resulting from international commerce and trade.

## MODERN AMERICAN BENCH & BAR FORMATION

(39) During the early 20th century, formal education in law school became common enough that membership in the bar was predicated upon graduation from law school and passing a standardized state-wide bar exam and finally, starting in the 1930s, on admission to an "integrated bar."

(40) It was at this stage, in the 1940s and 50s, that membership in the bar effectively began to acquire its highly ritualized status as a class or even caste like structural and functional subset of society.

(41) As lawyers became more "educated" they were more aloof, and at some point, judges could no longer be appointed or elected from the general electorate, but only from the Bar.

(42) On the Supreme Court of the United States, Associate Justice James F. Byrnes, whose short tenure lasted from June 1941 to October 1942, was the last Justice without a law degree to be appointed; Stanley Forman Reed, who served on the Court from 1938 to 1957, was the last sitting Justice from such a background.

(43) States began amending their constitutions to require bar membership for lawyers and that judges could only be elected from the bar.

(44) This modern trend entirely contravenes American Democracy and violates our original Republican Form of Government.

(45) The increasing complexity of the law has grown as a correlate of the number of lawyers, and the ever exploding and inflation of numbers of cases, statutes and practitioners has by a positive feedback system enhanced the mysterious isolation of lawyers and judges from society as a whole.

(46) All of this is fundamentally inconsistent with the constitutional prohibition on titles of nobility in the early constitution, which was the

precursor and predecessor to the later constitutional and statutory guarantees of equality and equal protection under the laws established by and pursuant to the 14th Amendment.

(47)  This Court has the power and obligation, in this case, to adjudicate, make findings, declare and adjudge the structural and functional nature of state bar membership as a structural and functional nobility operating to the injury of cultural norms of communication, social and political equality, and even occupational equality and eligibility for all political offices equally.

(48)  In the early American Republic, all citizens were voters and all voters were equally eligible for office in all three branches of government under the constitution.

(49)  That was the founding fathers original understanding and original intent, and it should now be restored.

(50)  Persons of all educational levels of achievement, and members of all professions, are equally eligible for election to legislative and executive office, and members of all professions and levels of educational achievement should likewise be eligible for election to judicial office or for appointment as "officers of the court" (i.e. "lawyers").

(51)  Otherwise, the American legal system has become an unique occupational caste with disproportionate and unequal political power, and is an anathema to the Democratic-Republican form of government.

## <u>APPLICATION OF HISTORICAL AND LINGUISTIC ANALYSIS TO THE DECISIONMAKING PROCESS IN THIS CASE</u>

(52)  Courts hold the responsibility to decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of any agency action.

(53)  This includes using principles of linguistic structural and functional analysis to interpret ambiguous constitutional or statutory provisions. The foundational interpretive principle that courts adhere to is the ordinary meaning, not literal meaning, when interpreting statutes, applying the meaning that a reasonable reader would derive from the text of the law at the time of its enactment.

(54) There is no serious debate about the foundational interpretive principle that courts adhere to ordinary meaning, not literal meaning, when interpreting statutes. ***Bostock v. Clay County, Georgia***, 590 U.S. ____, 140 S.Ct. 1731 (June 15, 2020).

(55) As Justice Scalia explained, "the good textualist is not a literalist." A. Scalia, A Matter of Interpretation 24 (1997).

(56) Or as Professor Eskridge stated: The "prime directive in statutory interpretation is to apply the meaning that a reasonable reader would derive from the text of the law," so that "for hard cases as well as easy ones, the ordinary meaning (or the 'everyday meaning' or the 'commonsense' reading) of the relevant statutory text is the anchor for statutory interpretation." W. Eskridge, Interpreting Law 33, 34-35 (2016) (footnote omitted).

(57) Or as Professor Manning put it, proper statutory interpretation asks "how a reasonable person, conversant with the relevant social and linguistic conventions, would read the text in context. This approach recognizes that the literal or dictionary definitions of words will often fail to account for settled nuances or background conventions that qualify the literal meaning of language and, in particular, of legal language." Manning, The Absurdity Doctrine, 116 Harv. L. Rev. 2387, 2392-2393 (2003).

(58) Or as Professor Nelson wrote: No "mainstream judge is interested solely in the literal definitions of a statute's words." Nelson, What Is Textualism?, 91 Va. L. Rev. 347, 376 (2005).

(59) The ordinary meaning that counts is the ordinary public meaning at the time of enactment-although in this case, that temporal principle matters little because the ordinary meaning of "discriminate because of sex" was the same in 1964 as it is now...."

(60) The process is not rigid, and courts utilize canons of statutory interpretation as interpretative tools rather than strict rules.

(61) Courts focus on the broader social and political history, and the immediate statutory context rather than merely dissecting statutory phrases into their component words.

(62)  So it should be with this Court's interpretation of titles of nobility: historical reality and the world of the original legislators (i.e. the Founding Fathers) rather than any arbitrary modern definition or prejudice concerning the words.

(63)   When the meaning of a statute's terms is plain, the court's job is at an end. The people are entitled to rely on the law as written, without fear that courts might disregard its plain terms based on extratextual consideration.

(64)  But that is NOT the case with the Titles of Nobility clauses.

(65)  Where a statute or constitutional provision is reasonably susceptible to divergent interpretations, courts adopt the reading that accords with traditional understandings and basic principles such as I have described herein above.

(66)  In cases where a provision is ambiguous, courts may apply accepted legal principles in determining the "better" interpretation.

(67)  In some cases, courts have rejected attempts at an overly narrow interpretation that abandons a plain reading of the statute and focuses more on dissecting immediate phrases than considering the broader statute.

(68)  Any interpretation of the constitutional prohibition on "titles of nobility which focuses only on titles which existed in England or France in 1787 or on such aspects of nobility as the heritability of titles or eligibility to sit in a legislative body or occupy executive positions (such as the Kingship itself) would be examples of such an overly narrow interpretation which would abandon a plain reading of the provision as reflecting an aspiration to a society in which the only peerage was "citizenship" and no ranks of citizens could be maintained or tolerated.

(69)  Membership in the bar has now become an intolerably elite peerage within American society, and accordingly, it must be abolished as a requirement for eligibility to occupy judicial office.

(70)  Even more, membership in the bar must be abolished as an intolerably elite peerage because it limits the ability to APPLY, CONSTRUE and INTERPRET the law to a certain occupation class or caste, even to the exclusion of individuals such as Jerry Bryant O'Neil who have previously

*Declaration of Qualifications and Expert Opinion on the Structure and Function of the Integrated bar as an unconstitutional class or occupational caste amounting to a true "title of nobility."*                                                                   **9**

served as LEGISLATORS and been reelected to multiple terms to MAKE laws which they then LOSE THE ABILITY TO APPLY, CONSTRUE, OR INTERPRET outside the confines of the legislature itself.

(71)   In determining whether constitutional meanings or statutory language might be ambiguous, the court must consider not only the bare meaning of the critical word or phrase but also its placement and purpose in the statutory scheme in historical, linguistic, and original social context. Only when the statute's terms are ambiguous or unclear does the court consider legislative history and other tools of statutory interpretation.

(72)   American courts have, with greater and greater frequency starting in the early 1950s, also expressly allowed and considered the use of "deconstruction methodologies" in the linguistic or functional interpretation of statutes, such as the application of the plain meaning rule, variations of the statutory interpretation maxim of excluding one evidence inclusion of another, and the use of analogies.

(73)   That is what I propose here.  **Rodearmal v. Clinton** is an example of a case where a team of experts in linguistics advised and instructed the court concerning ambiguous constitutional language.  666 F.Supp.2d 123 (2009).

(74)   The application of such methodologies depends on the context and the specific case, but I submit that the interpretation of the Titles of Nobility clause positively screams out for such expert historical and linguistic deconstruction.

(75)   Thus, courts may employ principles of linguistic structural and functional analysis to interpret ambiguous provisions of constitutional or statutory law, the application of these principles is always subject to the overall statutory context, the plain and ordinary meaning of the text, and the traditional understandings and basic principles of statutory interpretation.

(76)   State constitutions, such as those of Indiana and South Carolina, do refer to hereditary distinctions or emoluments in the same provisions that prohibit titles of nobility; by the maxim, *"**expressio unius exclusio alterius**,"* such provisions plainly suggest that the possession of certain traditional European life titles or hereditary distinctions among people are a related, but not integral or essential, aspect of "titles of nobility."

(77) Federal regulations for the naturalization process require applicants who have held any hereditary title or have been of any of the orders of nobility in any foreign state to renounce such title or order of nobility.

(78) This suggests that the U.S. government recognizes the existence of both lifetime and inherited titles of nobility, at least in the context of foreign states.

(79) In conclusion, while the U.S. Constitution prohibits the granting of titles of nobility, it does not provide a specific definition of such titles or specify whether they are necessarily inherited or whether the concept relates only to titles defined or created by "old English" or any sort of European law.

(80) However, some state constitutions and federal regulations suggest that both life-tenured and inherited titles or distinctions can exist, at least in certain contexts.

### MEMBERSHIP IN THE BAR AMOUNTS STRUCTURALLY TO A PEERAGE CLASSIFICATION INCONSISTENT WITH THE FOURTEENTH AMENDMENT

(81) The titles of nobility clause is declaratory a fundamental values and public policy, standing at the rock bottom of the "American Experiment."

(82) Regarding the nature of "titles of nobility," the **Dred Scott v. Sanford** case, 60 U.S. 393, 19 How. 393 (March 6, 1857) discusses the Constitution's restriction on Congress creating privileged classes within the States, which could be interpreted as a commentary on the nature of nobility titles.

(83) **Scott v. Sanford** does not, however, directly address whether such titles have necessary elements other than inequality of power and influence and access to certain rights.

(84) The subject of **Scott v. Sanford** of course was slavery, a heritable condition of servitude which stands as the extreme opposite of "nobility."

(85) The American Civil War brought fully into focus the unamerican nature of classifications which render some people greater than or lesser to

others in regard to their tenure and exercise of or their exclusion from certain civil rights, including the rights to vote, hold property, make contracts, and run for office.

(86)  The state bar system limits the rights of certain individuals to discuss or associate in regard to the application, construction, interpretation, or implementation of the law (even though the law is supposed to apply equally to everyone), or even to make contracts for the application, construction, interpretation or implementation of the law.

### JERRY BRYANT O'NEIL SHOULD BE ALLOWED TO RUN FOR JUSTICE OF THE SUPREME COURT OF MONTANA

(87)  The profession of an attorney amounts to little more than dedication to freedom of speech and all other forms of symbolic expression relating to life, liberty or property, the right to assemble or associate freely with others, and the right to petition for redress of grievances.

(88)  Legislators debate the existence or desirability of certain rights or duties, meaning of words and write the law.

(89)  Executive officers apply, construe and enforce the law, effectively judging how rights and duties should be protected or curtailed.

(90)  The judiciary decides disputes which arise concerning the rights or duties created and worded by legislators and applied or construed by executive officers.

(91)  Law is language.  Legislation and litigation involve the use and application of language.

(92)  Historical custom, practice, and policy, and the historical experience of language, lies at the essential structure and function of law.

(93)  Without ever going to law school or taking any state bar exam, Jerry Bryant O'Neil has operated as an attorney in the Blackfeet Nation for nearly 40 years.

(94)  Jerry Bryant O'Neil has been elected four times to the Montana State Legislature (both House and Senate), and served on the judiciary committees of both legislative houses.

(95)  It is simply preposterous to bar a man of Jerry Bryant O'Neil's experience and stature from presenting himself as a candidate for the elective office of justice of the Supreme Court of Montana.

(96)  To bar a former legislator who has dedicated his life to the law from the judiciary represents to culminating zenith of surreal absurdity.

(97)  I am available for oral examination concerning my qualifications and opinions and my relationship to and employment by Jerry Bryant O'Neil as required by Rule 26 of the Federal Rules of Civil Procedure and Rules 702-704 of the Federal Rules of Evidence at any time.

(98)  I make the above and foregoing declaration, pursuant to 28 U.S.C. §1746, concerning my qualifications and opinions in New Orleans, Louisiana under penalty of perjury on this Thursday the 18th day of January 2024.

(99)  Further affiant sayeth naught.

*/s/ Charles Edward Lincoln, III /s/*

**Charles Edward Lincoln, III**
**1507 St. Ann Street**
**New Orleans, Louisiana 70116**
**(504) 777-5021/(504) 777-5023**

# <u>Exhibit C:</u>
Proposed Order Granting
Motion to Set Evidentiary Hearing and
Allowing 100 Days for Jurisdictional
Discovery until December 1, 2025,
concerning
Bankruptcy and Civil Rights Removal

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW MEXICO

In Re: Kathleen Anne Dudley,                    Bankruptcy Case No.: 24-10034-j11
      Debtor.
*************************************************************************

**Disciplinary Board of the Supreme Court of the**
**State of New Mexico,**                         **United States Bankruptcy Case #**
    **Petitioner/Plaintiff,**                 **Adversary No. 24-01023-j**

**v.**                                           **United States District Court Case**
                                     **No. 24-cv-00962-DHU-GBW**

**Charles Edward Lincoln, III,**
    **Respondent/Defendant.**                 **Demand for Trial-by-Jury**

### ORDER GRANTING
### DEFENDANT'S REQUEST FOR EVIDENTIARY HEARING and
### MOTION FOR 100 DAYS TO CONDUCT JURISDICTIONAL DISCOVERY

THIS CAUSE CAME BEFORE THE COURT on Defendant Charles Edward Lincoln, III's

PRELIMINARY OBJECTIONS TO PROPOSED FINDINGS AND RECOMMENDED

DISPOSITION with Demand for Evidentiary Hearing and Motion for 120 Days to Conduct

Jurisdictional Discovery, to be completed by Monday, December 1, 2025.

And a final evidentiary hearing on the Disciplinary Board's Motion to Remand is set for

_____, December 2025/January 2026.

Done and ordered this _____ day of August/September, 2025 in the United States

Bankruptcy Court___ District Court____ in and for the District of New Mexico, Albuquerque,

New Mexico.

 

_____

**Judge Presiding**
**United States Bankruptcy_____ Judge or**
**United States District____ Judge**
**District of New Mexico**

## CERTIFICATE OF SERVICE

I certify that on Sunday, July 27, 2025, I served a true and correct copy of the above-and-foregoing Defendant Charles Edward Lincoln, III's,

**Defendant Charles Edward Lincoln's Preliminary Objections to [July 1, Document 5] Proposed Findings and Recommended Disposition with Demand for Evidentiary Hearing and Motion for 120 Days to Conduct Jurisdictional Discovery**

on each of the following:

Daniel A. White, Trial Attorney, at dan.white@usdoj.gov
Mary L. Johnson (USTP), at Mary.L.Johnson@usdoj.gov
and
Christine Elizabeth Long, Deputy Disciplinary Counsel,
clong@nmdisboard.org
And
Joseph Gonzales, Deputy Disciplinary Counsel,
jgonzales@nmdisboard.org

Sunday,
July 27, 2025

By: */s/Michael L. Tusken/s/*
**Michael L. Tusken**
**U.S. District Court for the**
**District of New Mexico Bar No. 25-293**
**Law Offices of Michael Tusken**
**Michael@TuskenLaw.com**
**1510 West Whittier Boulevard, #42**
**La Habra, California 90631**
**Telephone: 562-365-9465**
**Facsimile: 562-252-8529**

*Defendant Charles Edward Lincoln's Preliminary Objections to [July 1, Document 5]* **34**
*Proposed Findings and Recommended Disposition with Demand for Evidentiary*
*Hearing and Motion for 120 Days to Conduct Jurisdictional Discovery*

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW MEXICO

In Re: Kathleen Anne Dudley,                    Bankruptcy Case No.: 24-10034-j11
     Debtor.
*************************************************************************

**Disciplinary Board of the Supreme Court of the**
**State of New Mexico,**                         **United States Bankruptcy Case #**
    **Petitioner/Plaintiff,**                   **Adversary No. 24-01023-j**

**v.**                                          **United States District Court Case**
                                        **No. 24-cv-00962-DHU-GBW**

**Charles Edward Lincoln, III,**
    **Respondent/Defendant.**                   **Demand for Trial-by-Jury**

### ORDER GRANTING
### DEFENDANT'S REQUEST FOR EVIDENTIARY HEARING and
### MOTION FOR 100 DAYS TO CONDUCT JURISDICTIONAL DISCOVERY

THIS CAUSE CAME BEFORE THE COURT on Defendant Charles Edward Lincoln, III's PRELIMINARY OBJECTIONS TO PROPOSED FINDINGS AND RECOMMENDED DISPOSITION with Demand for Evidentiary Hearing and Motion for 120 Days to Conduct Jurisdictional Discovery, to be completed by Monday, December 1, 2025.

And a final evidentiary hearing on the Disciplinary Board's Motion to Remand is set for _____, December 2025/January 2026.

Done and ordered this _____ day of August/September, 2025 in the United States Bankruptcy Court___ District Court____ in and for the District of New Mexico, Albuquerque, New Mexico.

                                    **_____**
                                    **Judge Presiding**
              **United States Bankruptcy_____ Judge or**
                    **United States District____ Judge**
                              **District of New Mexico**

**38**